

**ORDERED in the Southern District of Florida on July 24, 2012.**

Robert A. Mark, Judge
United States Bankruptcy Court

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| MAGUIRE GROUP HOLDINGS, INC., *et al.*, [1] | Case No. 11-39347-BKC-RAM (Jointly Administered) |
| Debtors. | |

_____/

### ORDER CONFIRMING PLAN PROPONENTS' THIRD AMENDED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, DATED APRIL 12, 2012, AS AMENDED

**THIS MATTER** came before the Court (the "Bankruptcy Court" or "Court") on the 11th

day of July, 2012 at 2:00 p.m. in Miami, Florida to consider confirmation of the Plan

Proponents' Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code,

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Maguire Group Holdings, Inc. (3582); (ii) The Maguire Corporation (0930); (iii) Maguire Group Inc. (8211); (iv) East Atlantic Casualty Company, Ltd. (7441); and (v) Maguire Group, Architects, Engineers, Planners, Ltd. (1520). The address for all of the Debtors is 13940 S.W. 136th Street, Suite 100, Miami, Florida 33186.

dated April 12, 2012, As Amended [D.E. No. 300], and all amendments, modifications, and

supplements thereto (collectively, as amended, the "Plan") filed by Maguire Group Holdings,

Inc. ("Maguire Holdings"), The Maguire Corporation ("Maguire Corp."), Maguire Group Inc.

("MGI"), East Atlantic Casualty Company, Ltd. ("East Atlantic"), and Maguire Group,

Architects, Engineers, Planners, Ltd. ("Maguire AEP", and together with Maguire Holdings,

Maguire Corp., MGI, and East Atlantic, collectively, the "Debtors" or "Debtors in Possession")

and Carlos Duart ("Duart", together with the Debtors, the "Plan Proponents"); and the

Bankruptcy Court having entered, after due notice and a hearing, the Order (I) Approving

Disclosure Statement; (II) Setting Date For Hearing On Confirmation Of Plan; (III) Setting

Hearing on Fee Applications; (IV) Setting Various Deadlines; (V) Approving Solicitation and

Voting Procedures; (VI) Approving Ballots and Solicitation Letter; and (VII) Describing Plan

Proponent's' Obligations, dated April 16, 2012 [D.E. No. 308] (the "Disclosure Statement

Order"); and the Third Amended Disclosure Statement for the Plan Proponents' Plan of

Reorganization Under Chapter 11 of the Bankruptcy Code [D.E. No. 299] (as amended, and

including all exhibits, the "Disclosure Statement") having been approved by this Court and the

Plan and the Solicitation Package (as defined below) having been duly transmitted to holders of

Claims[2] entitled to vote thereon as provided in the Disclosure Statement Order; and due notice of

(i) entry of the Disclosure Statement Order, (ii) the Confirmation Hearing (as defined below),

and (iii) the deadline for voting on, and/or objecting to the Plan having been provided to holders

of Claims against and Equity Interests in the Debtors and other parties in interest, in accordance

with the Disclosure Statement Order, the Bankruptcy Code, the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), and the Local Bankruptcy Rules for the Southern District of

---

[2]    Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to such terms in the Plan.

Florida (the "Local Rules"); and such notice being sufficient under the circumstances and no other or further notice being required; and objections (the "Objections") to the Plan having been interposed; and the Debtors having filed the Plan Supplement (as defined below) on April 18, 2012 [D.E. No. 450] and July 8, 2012 [D.E. No. 664] in accordance with the provisions of the Plan and such filing and notice thereof being sufficient under the circumstances and no further notice being required; and upon consideration of the: (i) Memorandum of Law in Support of Confirmation of Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Confirmation Brief") [D.E. No. 668]; (ii) the Declaration of Robert Q. Klamser With Respect to the Solicitation of Votes With Respect to the Third Amended Plan of Reorganization Under Chapter 11 of the United States Code, dated July 6, 2012 [D.E. No. 663] (describing the methodology for the solicitation of votes with respect to the Plan) (the "KCC Declaration"); (iii) the Preliminary Certificate of Debtors and Debtors-in-Possession Setting Forth the Preliminary Tabulation of Votes with Respect to the Third Amended Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code, dated June 20, 2012 [D.E. No. 606] (the "First Debtor Certificate") (describing, among other things, the methodology for the preliminary tabulation and results of voting with respect to the Plan and evidencing that the Debtors have received the requisite acceptances of the Plan in both number and amount as required by section 1126 of the Bankruptcy Code); (iv) the Certificate of Proponent of Plan on Acceptance of Plan, Report on Amount to be Deposited, Certificate of Amount Deposited and Payment of Fees, dated July 9, 2012 [D.E. No. 666] (describing, among other things, the final tabulation and results of voting with respect to the Plan and evidencing that the Debtors have received the requisite acceptances of the Plan in both number and amount as required by section 1126 of the Bankruptcy Code) (the "Final Debtor Certificate," and together with the First Debtor Certificate, collectively, the

"Debtors' Certificate"); (v) the Confirmation Affidavit of Carlos Duart, dated July 9, 2012 [D.E. No. 669] (the "Duart Affidavit"); and (vi) the Confirmation Affidavit of Scott Bouchner (the "Bouchner Affidavit," and together with the KCC Declaration, the Debtors' Certificate and the Duart Affidavit, collectively, the "Declarations"); and the hearing to consider confirmation of the Plan having been held before the Bankruptcy Court on July 11, 2012 (the "Confirmation Hearing"); and the Bankruptcy Court having reviewed and considered the Plan, the Plan Supplement, the Disclosure Statement, the Disclosure Statement Order, the Confirmation Brief, the Declarations, each of the Objections which has not been withdrawn or otherwise mooted, the Debtors' responses thereto and all related documents; and the appearance of all interested parties having been duly noted in the record of the Confirmation Hearing, including the Declarations filed and any testimony therein and the exhibits admitted into evidence; and upon all of the proceedings had before the Bankruptcy Court and upon the entire record of the Confirmation Hearing; and the Bankruptcy Court having determined based upon all of the foregoing that the Plan should be confirmed, as reflected by the Bankruptcy Court's rulings made herein and on the record of the Confirmation Hearing; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY FOUND, DETERMINED, ORDERED, ADJUDGED, AND DECREED, AS FOLLOWS:

## FINDINGS OF FACT

A.    Findings and Conclusions.  The findings and conclusions set forth herein and on the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following

findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

           B.      Jurisdiction. The Court has jurisdiction over the Debtors' Chapter 11 Cases (as defined below), confirmation of the Plan and the Objections pursuant to 28 U.S.C. § 1334. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b) and this Court has jurisdiction to enter a final order with respect thereto. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

           C.      Commencement and Joint Administration of the Debtors' Chapter 11 Cases. On October 24, 2011 (the "Petition Date") each of the above-captioned Debtors commenced a case under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). By prior order of the Court, the Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015. The Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, official committee of unsecured creditors or examiner has been appointed in the Chapter 11 Cases.

           D.      Judicial Notice. The Bankruptcy Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Cases.

           E.      Burden of Proof. The Debtors have met their burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

4453754-6

5

F.     Resolution of Objections.  As presented at the Confirmation Hearing, the consensual resolutions of certain Objections satisfy all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules and are in the best interests of the Debtors and are hereby approved.  All Objections that were not resolved by agreement at the Confirmation Hearing are hereby overruled.

G.     Solicitation and Notice.  On April 16, 2012, the Bankruptcy Court entered the Disclosure Statement Order, which, among other things, approved the Disclosure Statement, finding that it contained "adequate information" within the meaning of section 1125 of the Bankruptcy Code, and established procedures for the Debtors' solicitation and tabulation of votes on the Plan.  The (a) Disclosure Statement Order (without attachments), (b) Disclosure Statement (with a copy of the Plan attached thereto), (c) appropriate ballots (Class 4 or Class 5) for voting on the Plan (the "Ballots"), and (d) Court-approved solicitation letter from the Debtors (collectively, the "Solicitation Package"), were served in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order (the "Solicitation").  As described in the Disclosure Statement Order, and as set forth in the KCC Declaration, and the affidavit of service by Kurtzman Carson Consultants LLC ("KCC"), filed at D.E. No. 353, (i) the service of the Solicitation Packages was adequate and sufficient under the circumstances of these Chapter 11 Cases, and (ii) adequate and sufficient notice of the Confirmation Hearing and other requirements, deadlines, hearings and matters described in the Disclosure Statement Order was timely provided in compliance with the Bankruptcy Rules and provided due process to all parties in interest.  No other or further notice is required.

H.     Voting.  Votes on the Plan were solicited after disclosure of "adequate information" as defined in section 1125 of the Bankruptcy Code.  As evidenced by the KCC

Declaration and the Debtors' Certificate, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith and in a manner consistent with the Disclosure Statement Order, the Bankruptcy Code, and the Bankruptcy Rules.

I.  Plan Supplement. On May 18, 2012, the Debtors filed that certain supplement to the Plan [D.E. No. 450], and on July 8, 2012, the Debtors filed an update to the supplement to the Plan [D.E. No. 664] (collectively, the "Plan Supplement"). All materials included in the Plan Supplement and the amendments thereto are integral to, part of and incorporated by reference into the Plan. The Plan Supplement and the amendments thereto comply with the terms of the Plan, and the filing and notice of such documents is good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Order and no other or further notice is necessary. Pursuant to a settlement announced at the Confirmation Hearing, a certain prepetition Amended and Restated Operating Agreement of 200 Main Street Associates, LLC, dated December 19, 1995, entered into between MGI and Newstone LLC [appearing at D.E. No. 664, Tab B, p. 31 of 44] is removed from the schedule of executory contracts to be assumed by the Debtors under the Plan. The Debtors reserve their right to alter, amend, update or modify the Plan Supplement before the Effective Date to be consistent with the Plan.

## MODIFICATIONS TO THE PLAN

J.  Modification. Subsequent to Solicitation, on July 11, 2012 at the Confirmation Hearing, the Debtors described amendments to the Plan which includes several modifications to the Plan that address objections raised by various parties (the "Modifications"). The Modifications are reflected in the Plan attached hereto as Exhibit "A". Pursuant to section 1127(a) of the Bankruptcy Code, the Modifications are hereby made a part of the Plan.

K.     Notice of Modifications.  The description of the Modifications on the record at the Confirmation Hearing constitute due and sufficient notice thereof under the circumstances of these Chapter 11 Cases.  The Plan, as modified by the Modifications, constitutes the "Plan."

L.     Deemed Acceptance of Plan as Modified.  The modifications to the Plan reflected by the Modifications are either (i) immaterial or do not adversely affect the treatment of any Claim against or Equity Interest in the Debtors under the Plan, or (ii) the adversely affected parties have consented to the Modifications.  Therefore, in accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan, as modified by the Modification.  No holder of a Claim or Equity Interest that has voted to accept the Plan shall be permitted to change its acceptance to a rejection as a consequence of the Modification.  The Modifications neither require additional disclosure under section 1125 of the Bankruptcy Code nor re-solicitation of votes on the Plan under section 1126 of the Bankruptcy Code.

M.     Compliance with 1127.  The Modifications incorporated into the Plan comply with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

**COMPLIANCE WITH SECTION 1129 OF THE BANKRUPTCY CODE**

N.     Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).  The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

O.     Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)).  In addition to Administrative Expense Claims and Priority Tax Claims, which need not be classified, Article III

of the Plan designates the following six classes of Claims and one class of Equity Interests: Class 1 (Priority Claims), Class 2 (Secured Claim of Regions Bank), Class 3 (Other Secured Claims), Class 4 (General Unsecured Claims Necessary for the Continued Operation of the Reorganized Debtors), Class 5 (General Unsecured Claims Not Necessary for the Continued Operation of the Reorganized Debtors), Class 6 (Subordinated Unsecured Claims) and Class 7 (Equity Interests). Each of the Claims or Equity Interests, as the case may be, in each particular Class is substantially similar to the other Claims or Equity Interests within such Class. Valid business, legal and factual reasons exist for separately classifying the various Claims and Equity Interests pursuant to the Plan, and such Classes do not unfairly discriminate between holders of Claims and Equity Interests. The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

P.    Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)). Articles III and IV of the Plan specify that Class 1 (Priority Claims), Class 2 (Secured Claim of Regions Bank) and Class 3 (Other Secured Claims) are unimpaired under the Plan, thereby complying with section 1123(a)(2) of the Bankruptcy Code. The Plan therefore satisfies section 1123(a)(2) of the Bankruptcy Code.

Q.    Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). Articles III and IV of the Plan designate Class 4 (General Unsecured Claims Necessary for the Continued Operation of the Reorganized Debtors), Class 5 (General Unsecured Claims Not Necessary for the Continued Operation of the Reorganized Debtors), Class 6 (Subordinated Unsecured Claims) and Class 7 (Equity Interests) as impaired, and Sections 4.4, 4.5, 4.6, and 4.7 of the Plan specify the treatment of Claims and Equity Interests in such Classes, thereby

complying with section 1123(a)(3) of the Bankruptcy Code.  The Plan therefore satisfies section 1123(a)(3) of the Bankruptcy Code.

           R.        Originally, the Debtors classified seven Claims in Class 6 (Subordinated Unsecured Claims).  Pursuant to the terms of the Plan, the two Class 6 Claims listed for Duart in the combined amount of $338,500 have been waived by Duart.  Under the terms of a Court-approved settlement between the Debtors and Metric Engineering, Inc. ("Metric") [D.E. No 474 (motion) and D.E. No. 554 (order)), the four Claims of Metric classified in Class 6 were either waived by Metric, or with respect to one Claim, separately classified in Class 3.  On July 6, 2012, Victor Benitez filed a *Notice of Waiver of Scheduled and Class 6 General Unsecured Claim of Victor M. Benitez Under the Third Amended Plan [D.E. No. 300]* [D.E. No. 656] by which Victor Benitez waived the sole remaining Claim existing in Class 6.  Thus, the Court finds that there are no remaining Claims in Class 6, and therefore, the Class is a nullity with respect to the issue of impairment.

           S.        No Discrimination (11 U.S.C. § 1123(a)(4)).  The Plan provides for the same treatment for each Claim or Equity Interest in each respective Class unless the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment on account of such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.  The Plan therefore satisfies section 1123(a)(4) of the Bankruptcy Code.

           T.        Implementation of the Plan (11 U.S.C. § 1123(a)(5)).  The Plan and the various documents set forth in the Plan Supplement provide adequate and proper means for the implementation of the Plan as required by section 1123(a)(5) of the Bankruptcy Code.  The Plan therefore satisfies section 1123(a)(5) of the Bankruptcy Code.

U.     Non-Voting Equity Securities/Allocation of Voting Power (11 U.S.C.

§ 1123(a)(6)). The Plan provides for, in Sections 6.8 and 6.10, among other things, (i)

cancellation of all existing Equity Interests in the Debtors and on the Effective Date, (ii) issuance

by the Reorganized Debtors of 100% of their equity interests to the Plan Proponents or their

designee, and (iii) amending the Debtors' articles of incorporation and bylaws (or other

governance documents) to prohibit the issuance of nonvoting equity securities. As such, the Plan

does not provide for the issuance of nonvoting equity securities, and the Plan satisfies section

1123(a)(6) of the Bankruptcy Code.

V.     Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)). The

identity and affiliation of any individuals proposed to serve, after confirmation of the Plan, as

directors, officers, partners, members, and managers of each of the Reorganized Debtors have

been disclosed in the Disclosure Statement and Plan. Accordingly, the selection of directors,

officers, partners, members, and managers are consistent with the interests of creditors, equity

security holders, and public policy. As such, the Plan satisfies section 1123(a)(7) of the

Bankruptcy Code.

W.     Additional Plan Provisions (11 U.S.C. § 1123(b)). The other provisions of

the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code,

thereby satisfying section 1123(b) of the Bankruptcy Code. The failure to specifically address a

provision of the Bankruptcy Code in this Order shall not diminish or impair the effectiveness of

this Order.

X.     Impairment/Unimpairment of Classes of Claims and Equity Interests (11

U.S.C. § 1123(b)(1)). As contemplated by section 1123(b)(1) of the Bankruptcy Code, (a) Class

4 (General Unsecured Claims Necessary for the Continued Operation of the Reorganized

Debtors), (b) Class 5 (General Unsecured Claims Not Necessary for the Continued Operation of the Reorganized Debtors), and Class 7 (Equity Interests) are impaired by the Plan. As there are no creditors in Class 6 (Subordinated Unsecured Claims), Class 6 is a nullity with respect to the issue of impairment.

Y.    Assumption and Rejection of Executory Contracts (11 U.S.C. §

1123(b)(2)). In accordance with section 1123(b)(2) of the Bankruptcy Code, Sections 9.1 and 9.2 of the Plan provide that, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases that exist between the Debtors and any person or entity that is listed in the relevant exhibit to the Plan Supplement or that have not been rejected by the Debtors with the approval of the Bankruptcy Court and that are not subject of pending motions to reject on the Confirmation Date, shall be deemed to have been assumed by the applicable Debtor (or assumed and assigned), as of the Effective Date. Section 9.1 of the Plan further provides that all other executory contracts and unexpired leases shall be deemed rejected as of the Confirmation Date. Accordingly, the Plan satisfies the requirements of section 1123(b)(2) of the Bankruptcy Code.

Z.    Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Plan Proponents have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, including having complied with section 1125 of the Bankruptcy Code with respect to the Disclosure Statement and the Plan.

AA.    Plan Proposed in Good Faith (11 U.S.C. §1129(a)(3)). The Debtors and Duart are the proponents of the Plan (as defined, the Plan Proponents). The Plan Proponents have proposed the Plan (including all documents necessary to effectuate the Plan) in good faith and not by any means forbidden by law, thereby complying with section 1129(a)(3) of the

Bankruptcy Code. The Plan Proponents' good faith is evident from the record of these Chapter 11 Cases, including the Declarations and the record of the hearing to approve the Disclosure Statement, the record of the Confirmation Hearing, and other proceedings held in these Chapter 11 Cases. The Plan and related settlements are based upon extensive, arms-length negotiations between and among the Debtors and parties-in-interest, and represent the culmination of months of intensive negotiations and discussions among all parties in interest. Moreover, the Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' estates and effectuating a successful reorganization of the Debtors. The Plan accomplishes maximization of the Debtors' estates and equitable distribution of the Debtors' assets by providing the means through which the Debtors may effectuate distributions to the Creditors. Both of the impaired classes of Claims entitled to vote to accept or reject the Plan have voted to accept the Plan and all of the Debtors' significant creditors support the Plan. Further, the indemnification, exculpation, release, and injunction provisions of the Plan have been negotiated in good faith and at arms-length with, among other persons, representatives of the Debtors, parties in interest, and their respective advisors, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each necessary to the Debtors' successful emergence from chapter 11. Accordingly, the Plan and the related documents have been filed in good faith and the Debtors have satisfied their obligations under section 1129(a)(3) of the Bankruptcy Code.

BB.     Payment for Services or Cost and Expenses (11 U.S.C. § 1129(a)(4)).

Pursuant to the interim compensation procedures previously approved by this Court and established in these Chapter 11 Cases pursuant to section 331 of the Bankruptcy Code, all payments made or to be made by the Debtors for services or for costs and expenses in connection

4453754-6                                  13

with these Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, have been approved by, or are subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

CC.    <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>. The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. The identity and affiliation of any individuals proposed to serve, after confirmation of the Plan, as directors, officers and members of the Reorganized Debtors on the Effective Date have been disclosed in the Plan and Disclosure Statement. As such, the Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

DD.    <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>. No governmental regulatory commission has jurisdiction, after confirmation of the Plan, over the rates of the Debtors. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in these Chapter 11 Cases.

EE.    <u>Best Interests of Creditors (11 U.S.C. § 1129(a)(7))</u>. As demonstrated by the Duart Affidavit, the Bouchner Affidavit, the KCC Declaration and the Debtors' Certificate, and the liquidation analysis contained in the Disclosure Statement, which employed commonly accepted methodologies and reasonable assumptions, with respect to each impaired class of Claims against or Equity Interests in the Debtors, each holder of a Claim or Equity Interest in such Class has accepted the Plan or will receive or retain pursuant to the Plan on account of such Claim or Equity Interest property of a value, as of the Effective Date, that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date. Accordingly, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

FF.    <u>Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))</u>. Class 1 (Priority Claims), Class 2 (Secured Claim of Regions Bank), and Class 3 (Other Secured Claims) are

14

unimpaired under the Plan and are, therefore, conclusively deemed to have accepted the Plan

pursuant to section 1126(f) of the Bankruptcy Code. Class 4 (General Unsecured Claims

Necessary for the Continued Operation of the Reorganized Debtors) and Class 5 (General

Unsecured Claims Not Necessary for the Continued Operation of the Reorganized Debtors),

which are impaired Classes of Claims eligible to vote, have affirmatively voted to accept the

Plan. As such, section 1129(a)(8) is satisfied with respect to these Classes of Claims. Class 6

(Subordinated Unsecured Claims) has no creditors in it, and therefore, Class 6 is a nullity for

purposes of acceptance of the Plan. Class 7 (Equity Interests) is deemed to reject the Plan

pursuant to section 1126(g) of the Bankruptcy Code, because the holders of interests in Class 7

will not receive or retain any property on account of their interests in the Debtors. The Plan may

nevertheless be confirmed because the Plan satisfies section 1129(b) of the Bankruptcy Code

with respect to Class 7.

GG.    Treatment of Administrative Expense Claims and Priority Tax Claims (11

U.S.C. § 1129(a)(9)). The treatment of Administrative Expense Claims and Priority Tax Claims

pursuant to Article II of the Plan satisfies the requirements of sections 1129(a)(9)(A), (B), (C)

and (D) of the Bankruptcy Code.

HH.    Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10)). Classes 4 and

5, each of which is impaired under the Plan and entitled to vote, voted to accept the Plan by the

requisite majorities, determined without including any acceptance of the Plan by any insider,

thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code. Specifically,

as set forth in the Debtors' Certificate, 100% of the Creditors in Class 4, in number and in dollar

amount, voted to accept the Plan. With respect to Class 5, creditors holding 60% in number and

approximately 75% in dollar amount voted to accept the Plan. Therefore, the requirements of section 1129(a)(10) of the Bankruptcy Code have been satisfied.

II.      Feasibility (11 U.S.C. § 1129 (a)(11)). The information in the Disclosure Statement and the evidence proffered or adduced at the Confirmation Hearing and in the Duart Affidavit and Bouchner Affidavit: (i) is persuasive and credible; (ii) has not been controverted by other evidence; and (iii) establishes that the Plan is feasible, there is a reasonable likelihood that the Reorganized Debtors will meet their financial obligations under the Plan in the ordinary course of business, and confirmation of the Plan is not likely to be followed by the liquidation or need for further financial reorganization of the Reorganized Debtors, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

JJ.      Payment of Fees (11 U.S.C. § 1129(a)(12)). As required pursuant to Section 2.4 of the Plan, all fees payable under section 1930 of title 28 of the United States Code have been or will be paid on the Effective Date, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code. In particular, as set forth in Section 2.4 of the Plan, within ten (10) days of the Confirmation Date, the Debtors shall pay the U.S. Trustee the appropriate sums required pursuant to 28 U.S.C. § 1930(a)(6) for the relevant period and provide an appropriate affidavit indicating cash disbursements for the relevant period. Until the earlier of the closing of the applicable Chapter 11 Case by the issuance of a final decree by the Bankruptcy Court, or upon entry of an order of the Bankruptcy Court dismissing the applicable Chapter 11 Case, or converting the applicable Chapter 11 Case to another chapter under the Bankruptcy Code, and notwithstanding anything contained herein to the contrary, the Reorganized Debtors shall (i) pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) for post-confirmation periods for each Reorganized Debtor within the time periods set forth in 28

U.S.C. § 1930(a)(6) and (ii) within 30 days of the end of each fiscal quarter, file with the Bankruptcy Court and submit to the U.S. Trustee quarterly reports and affidavits setting forth all receipts and disbursements of the Reorganized Debtors as required by the U.S. Trustee guidelines.

KK.    The statutory fees paid by each Debtor to the U.S. Trustee and any fees paid by any Debtor to the Clerk of the Bankruptcy Court from the Petition Date through the Effective Date shall not be affected by the substantive consolidation under the Plan. The substantive consolidation provided by the Plan (i) shall not be retroactive to the Petition Date for the purpose of payment of statutory fees to the U.S. Trustee, and (ii) shall not affect the obligation of the separate Reorganized Debtors to continue to file their respective operating and Quarterly Reports and pay U.S. Trustees fees until the earlier of the closing of the Debtors' cases by the issuance of a final decree by the Court, or upon the entry of an Order by the Court dismissing the Debtors' chapter 11 cases or converting the Debtors' chapter 11 cases to another chapter under the United States Bankruptcy Code.

LL.    The Debtors' monthly operating report for July, 2012 will cover the period inclusive of July 1-31, 2012.

MM.    Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)). The Debtors have no obligations with respect to retiree benefits. Accordingly, section 1129(a)(13) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

NN.    No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)). The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation. Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

OO.    Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15)). The Debtors are not individuals, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

PP.    No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16)). The Debtors are moneyed, business, or commercial corporations, and/or partnerships, as the case may be, and, accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

QQ.    No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)). The Debtors have satisfied the requirements of sections 1129(b)(1) and (b)(2) of the Bankruptcy Code with respect to Class 7 (Equity Interests) (the "Rejecting Class"). Based on the evidence proffered or adduced at the Confirmation Hearing and in the Duart Affidavit and Bouchner Affidavit, the Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting Class, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code, because the Rejecting Class consists of certain Equity Interests in the Debtors, and no holders of similar Equity Interests are treated differently. The Plan does not discriminate unfairly with respect to the holders of Equity Interests in Class 7 because the legal rights of such interests are substantially dissimilar from the Classes of Claims receiving distributions under the Plan as well as substantially similar to each other within Class 7. The Plan is "fair and equitable" as to the Rejecting Class because no interests junior to the interests of the Rejecting Class will receive or retain any property under the Plan on account of such junior interests. Because there are no Claims in Class 6, it is a nullity for purposes of section 1129(b) of the Bankruptcy Code. Based on the foregoing, the requirements of section 1129(b) of the Bankruptcy Code are met with

respect to the Rejecting Class, and the Plan may be confirmed notwithstanding the deemed rejection by the Rejecting Class.

RR. Only One Plan (11 U.S.C. § 1129(c)). The Plan is the only plan filed in these cases, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

SS. Principal Purpose of the Plan (11 U.S.C. § 1129(d)). The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, thereby satisfying the requirements of section 1129(d) of the Bankruptcy Code.

TT. Small Business Case (11 U.S.C. § 1129(e)). None of the Chapter 11 Cases are "small business case[s]," as that term is defined in the Bankruptcy Code, and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable.

### Additional Findings

UU. Good-Faith Solicitation (11 U.S.C. § 1125(e)). Based on the record before the Court in these Chapter 11 Cases and the KCC Declaration, the Debtors have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with such solicitation.

VV. Satisfaction of Confirmation Requirements. Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

WW.    Implementation.  All documents necessary to implement the Plan,
including, without limitation, those contained in the Plan Supplement, and all other relevant and
necessary documents have been negotiated in good faith and at arms-length and shall, upon
completion of documentation and execution, be valid, binding, and enforceable agreements and
not be in conflict with any federal or state law.

XX.    Good Faith of the Debtors.  The Debtors, and all of their respective current
directors, managers, officers, members, equity holders, employees, agents, financial advisors,
partners, attorneys, other professional advisors and representatives (i) have acted in good faith in
negotiating, formulating, and proposing the Plan and agreements, compromises, settlements,
transactions and transfers contemplated thereby, and (ii) will be acting in good faith in
proceeding to (a) consummate the Plan and the agreements, compromises, settlements,
transactions, and transfers contemplated thereby and (b) take the actions authorized and directed
or contemplated by this Order.

YY.    Executory Contracts and Unexpired Leases.  The Debtors have satisfied
the provisions of section 365 of the Bankruptcy Code with respect to the assumption, assumption
and assignment and rejection of executory contracts and unexpired leases pursuant to Sections
9.1, 9.2, 9.3 and 9.4 of the Plan.

ZZ.    Transfers by Debtors.  All transfers of property and assets of the Debtors'
estates, shall be free and clear of all Claims, Liens, encumbrances, charges, and other interests,
except as provided in the Plan, the Plan Supplement or this Order.

AAA.  Vesting of Assets.  Except as provided in the Plan, pursuant to sections
1141(b) and (c) of the Bankruptcy Code, all property of the Debtors shall vest in the Reorganized
Debtors free and clear of all Claims, Liens, liabilities, encumbrances, charges and other interests,

including, without limitation, any and all claims, liens, encumbrances and any and all right, title, and interests related thereto of governmental entities relating to any tax liabilities or similar liabilities. Such vesting does not constitute a voidable transfer under the Bankruptcy Code or applicable nonbankruptcy law.

BBB.    Injunction, Exculpation, and Releases. The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the injunction, exculpation, and releases set forth in Article XI of the Plan, because, *inter alia*, these provisions are an integral part of the Debtors' reorganization plan. Section 105(a) of the Bankruptcy Code permits issuance of the injunction and approval of the releases set forth in Article XI of the Plan if, as has been established here based upon the record in the Chapter 11 Cases, the Duart Affidavit, and the evidence presented at the Confirmation Hearing, such provisions (i) were integral to the agreement among the various parties in interest and are important and necessary to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (ii) confer substantial benefits on the Debtors' estates and creditors, (iii) are fair and reasonable and/or are justified based upon the unusual circumstances of these Chapter 11 Cases, and (iv) are in the best interests of the Debtors, their estates, and parties in interest. Further, the release and exculpation provisions in the Plan do not relieve any party of liability for an act or omission to the extent such act or omission is determined by a final order by a court of competent jurisdiction to have constituted willful misconduct or gross negligence or the other exceptions set forth therein, and do not release any Causes of Action retained by the Debtors or the Reorganized Debtors. Based upon the record of these Chapter 11 Cases and the evidence proffered or adduced in support of confirmation of the Plan, this Court finds that the injunction, exculpation, and releases set forth in Article XI of the Plan are consistent with the Bankruptcy

Code and applicable law. Pursuant to section 1123(b)(3) of the Bankruptcy Code and

Bankruptcy Rule 9019(a), the releases, exculpations, and injunctions set forth in Article XI of the

Plan and implemented by this Order are fair, equitable, reasonable, and in the best interests of the

Debtors, the Reorganized Debtors and their estates, creditors and equity holders. The failure to

include such provisions would seriously impair the Debtors' ability to confirm a consensual Plan

in these Chapter 11 Cases. Accordingly, this Court finds that the releases, exculpations, and

injunctions set forth in Article XI of the Plan are consistent with the Bankruptcy Code and

applicable law.

CCC.    Preservation of Causes of Action. It is in the best interests of the Debtors

and their creditors and holders of Equity Interests that the Debtors preserve the Causes of Action

as set forth in Section 6.14 of the Plan.

DDD.    Reorganized Debtors Not Successors of the Debtors. Except with respect

to administrative expense claims of the type specified in Section 1.2(d)(iii)(1) of the Plan as

expressly provided for in Section 2.1 of the Plan, (i) the Reorganized Debtors shall not be a

successor to any of the debtors in the Chapter 11 Cases by reason of any theory of law or equity,

(ii) the Reorganized Debtors shall not assume, incur or be responsible for any claims or liabilities

of the Debtors or any of their affiliates, and (iii) the Reorganized Debtors shall not be successors

or successors in interest of the Debtors nor incur any successor or transferee liability of any kind,

nature or character, including, without limitation, in relation to (a) any and all liabilities arising

or resulting from or relating to the transactions contemplated by the Plan, (b) any and all Claims,

Liens, liabilities, encumbrances, charges and other interests arising from or relating to any

conduct, liabilities, or obligations of the Debtors, and (c) any and all Claims, Liens, liabilities,

encumbrances, charges and other interests and any and all right, title, and interests related thereto, of governmental entities relating to any tax or similar liabilities.

## CONCLUSIONS OF LAW

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.    Confirmation. All requirements for confirmation of the Plan have been satisfied. Accordingly, the Plan in its entirety is CONFIRMED pursuant to section 1129 of the Bankruptcy Code. A copy of the confirmed Plan is attached as "Exhibit A" to this Order. The terms of the Plan and the Plan Supplement are incorporated by reference into, and are an integral part of, this Order.

2.    Objections. All parties have had a full and fair opportunity to litigate all issues raised by the Objections, or which might have been raised, and the Objections have been fully and fairly litigated. All Objections, responses, statements, and comments in opposition to the Plan, other than those withdrawn with prejudice in their entirety prior to the Confirmation Hearing or otherwise resolved on the record of the Confirmation Hearing and/or herein are overruled for the reasons stated on the record.

3.    Findings of Fact and Conclusions of Law. The findings of fact and the conclusions of law stated in the Confirmation Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to the proceeding by Bankruptcy Rule 9014. To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

4.      Plan Supplement.  The documents contained in the Plan Supplement, and

any amendments, modifications, and supplements thereto, and any other documents and

agreements provided by the Debtors in support of confirmation of the Plan (including all exhibits

and attachments thereto and documents referred to therein), and the execution, delivery, and

performance thereof by the Reorganized Debtors, are authorized and approved when they are

finalized, executed and delivered, and are integral to, part of and are incorporated by reference

into the Plan.  Without further order or authorization of this Court, the Debtors, and the

Reorganized Debtors and their successors, in consultation with the Plan Proponents, are

authorized and empowered to make all modifications to all documents included as part of the

Plan Supplement that are consistent with the Plan.  Execution versions of the documents

comprising the Plan Supplement shall constitute legal, valid, binding, and authorized obligations

of the respective parties thereto, enforceable in accordance with their terms and, to the extent

applicable, shall create, as of the Effective Date, all liens and security interests purported to be

created thereby.

5.      Solicitation and Notice.  Notice of the Confirmation Hearing complied

with the terms of the Disclosure Statement Order, was appropriate and satisfactory based on the

circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the

Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.  The solicitation of

votes on the Plan and the Solicitation Materials complied with the solicitation procedures in the

Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of

these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the

Bankruptcy Rules, and the Local Bankruptcy Rules.  Notice of the Plan Supplement, and all

related documents, was appropriate and satisfactory based upon the circumstances of these

Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the

Bankruptcy Rules, and the Local Bankruptcy Rules.

6.      Omission of Reference to Particular Plan Provisions.  The failure to

specifically describe or include any particular provision of the Plan in this Order shall not

diminish or impair the effectiveness of such provision, it being the intent of this Court that the

Plan be approved and confirmed in its entirety.

7.      Plan Classification Controlling.  The classifications of Claims and Equity

Interests for purposes of the distributions to be made under the Plan shall be governed solely by

the terms of the Plan.  The classification set forth on the Ballots tendered or returned by the

Debtors' creditors in connection with voting on the Plan were set forth on the Ballots solely for

purposes of voting to accept or reject the Plan.

8.      Binding Effect.  Except as otherwise provided in section 1141(d)(3) of the

Bankruptcy Code, upon entry of this Confirmation Order and subject to the occurrence of the

Effective Date, the provisions of the Plan shall bind (i) any holder of a Claim against or Equity

Interest in the Debtors and their respective successors and assigns, whether or not such Claim or

Equity Interest of such holder is impaired under the Plan and whether or not such holder has

accepted the Plan, (ii) any and all non-debtor parties to assumed executory contracts and

unexpired leases with the Debtors, (iii) those parties who filed Objections to the Plan, (iv) every

other party in interest in these Chapter 11 Cases, and (v) all parties receiving property under the

Plan, and their respective heirs, executors, administrators, successors, or assigns.

9.      Continued Corporate Existence of the Reorganized Debtors.  Pursuant to

and in accordance with Article VI of the Plan, on or as soon as practicable after the Effective

Date, the Debtors and/or the Reorganized Debtors, as applicable, shall take such actions as may

be or become necessary, without further action being required under applicable law, regulation, order or rule (including, without limitation, any action by the board of directors, stockholders, partners, members or managers of any Debtor or members of the Reorganized Debtors), and cause, (i) cancellation of all existing Equity Interests in the Debtors and on the Effective Date, (ii) issuance by the Reorganized Debtors of 100% of their equity interests to the Plan Proponents or their designee, and (iii) amendments to the Debtors' articles of incorporation and bylaws (or other governance documents) to prohibit the issuance of nonvoting equity securities. Pursuant to, under and in accordance with the Plan, the Debtors, and/or the Reorganized Debtors may, without any further order of the Court, effectuate some, all or none of the means of implementing the Plan pursuant to Article VI of the Plan. In addition, as of the Effective Date or as soon as practicable thereafter and without the need for any further action by this Court or any other court or governmental unit, or by the board of directors, stockholders, partners, members or managers of any Reorganized Debtors, the Reorganized Debtors may, pursuant to and in accordance with the Plan, engage in any other transaction in furtherance of the Plan.

10.    Subject to Section 6.7 of the Plan, on the Effective Date (except to the extent otherwise provided in the Plan), each note, instrument, certificate or other document evidencing a Claim or Equity Interest shall be cancelled and the obligations of the Debtors discharged in accordance with section 1141(d)(1) of the Bankruptcy Code.

11.    Issuance of New Equity. The Reorganized Debtors' issuance of 100% of the equity in the Reorganized Debtors per the terms of Article VI of the Plan, is authorized without the need for any further corporate action and without any further action by holders of Claims or Equity Interests.

12.    <u>Substantive Consolidation for Plan Purposes Only</u>.  Entry of this Order

shall constitute the approval, pursuant to section 105(a) of the Bankruptcy Code, effective as of

the Effective Date, of the substantive consolidation of the Debtors solely for the purpose of

voting, confirmation and distribution as provided in section 6.1 of the Plan.  On and after the

Effective Date, (i) all assets and liabilities of the Debtors shall be treated for purposes of the Plan

as though they were merged, (ii) all guarantees of the Debtors of payment, performance or

collection of obligations of any other of the Debtors shall be eliminated and cancelled, (iii) all

joint obligations of two or more of the Debtors and all multiple Claims against such entities on

account of such joint obligations, shall be considered a single Claim against the Debtors, (iv) all

intercompany claims and obligations between one Debtor and any of the other Debtors, including

as a result of the rejection of any executory contract or unexpired lease, shall be eliminated,

extinguished and cancelled, except for such intercompany claims and obligations necessary to

pursue Causes of Action, and (v) any Claim filed against any of the Debtors shall be deemed

filed against the consolidated Debtors and shall be one Claim against and a single obligation of

the consolidated Debtors.  Except as otherwise provided in the Plan, (a) all property of each

Debtor shall vest in each respective Reorganized Debtor, free and clear of all Claims, Liens,

liabilities, encumbrances, charges and other interests and (b) each Debtor shall continue to exist

after the Effective Date as a separate corporate entity, limited liability company, partnership or

other form, as the case may be, with all the powers of a corporation, limited liability company,

partnership or other form, as the case may be, pursuant to the applicable law in the jurisdiction in

which each applicable Debtor is incorporated or formed and pursuant to the respective certificate

of incorporation and bylaws (or other formation documents) in effect before the Effective Date.

13.     The Causes of Action.  On the Effective Date, the Debtors shall be deemed to have automatically transferred to the Reorganized Debtors all of their right, title, and interest in and to all of the Causes of Action, and in accordance with section 1141 of the Bankruptcy Code, all such Causes of Action shall automatically vest in the Reorganized Debtors free and clear of all Claims, Liens, liabilities, encumbrances, charges and other interests subject only to the Allowed Claims of the holders of Allowed Class 5 Claims as set forth in the Plan.  In connection with the vesting and transfer of the Causes of Action, including rights and causes of action, any attorney-client, work-product protection or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Reorganized Debtors shall vest in the Reorganized Debtors.  The Debtors are authorized to take all necessary actions to effectuate the transfer of such privileges, protections and immunities.

14.     Distributions Under the Plan.  All distributions under the Plan shall be made in accordance with Article VII of the Plan and such methods of distribution are approved.

15.     Disputed Claims.  The provisions of Article VIII of the Plan, including, without limitation, the provisions governing procedures for resolving Disputed Claims, are found to be fair and reasonable and are approved.  In connection with distributions on account of Administrative Expense Claims, Priority Claims, and General Unsecured Claims, Distributions on account of such Disputed Claims shall be made in accordance with Section 8.2 of the Plan to the extent such Disputed Claims become Allowed.

16.     Treatment is in Full Satisfaction.  All distributions under the Plan shall be made in accordance with the Plan.  The treatment set forth in the Plan is in full satisfaction of the legal, contractual and equitable rights (including any liens) that each entity holding a Claim or Equity Interest may have in or against the Debtors, the Estates, or their respective property.  This

treatment supersedes and replaces any agreements or rights those entities may have in or against the Debtors, the Estates, or their respective property.

           17.     Assumption or Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)). Pursuant to Sections 9.1 and 9.2 of the Plan, as of the Effective Date all executory contracts and unexpired leases that exist between the Debtors and any person or entity that are listed in the relevant exhibit to the Plan Supplement or that have not been rejected by the Debtors with the approval of the Bankruptcy Court and that are not subject of pending motions to reject on the Confirmation Date, shall be deemed to have been assumed by the applicable Debtor (or assumed and assigned), as of the Effective Date. Any executory contracts or unexpired leases of any Debtor that are not set forth in the relevant exhibit to the Plan Supplement shall be deemed to have been rejected by the applicable Debtor.

           18.     Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases. Entry of this Order shall, subject to and upon the occurrence of the Effective Date, constitute the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption, assignment, or rejection of the executory contracts and unexpired leases pursuant to Sections 9.1, 9.2, 9.3 or 9.4 of the Plan. The effect of confirmation of the Plan, the results thereof, and the transactions resulting therefrom or any other effect of these Chapter 11 Cases, including specifically the changes to the Debtors' boards of directors and equity interests, shall not be and are not a "change of control" and shall not trigger any such or similar provision of any of the executory contracts and unexpired leases assumed pursuant to the Plan.

           19.     Inclusiveness. Unless otherwise specified in the Plan Supplement, each executory contract and unexpired lease listed or to be listed therein shall include any and all modifications, amendments, supplements, restatements or other agreements made directly or

indirectly by any agreement, instrument or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on the Plan Supplement.

20.    Cure of Defaults.  Upon entry of this Order, and except as otherwise provided in the Plan, the cure costs in connection with each executory contract and unexpired lease assumed pursuant to Section 9.1 of the Plan has been fixed at $0.00.  The applicable contract or lease counterparty is **BARRED** and **PERMANENTLY ENJOINED** from asserting against the applicable Debtor any default, claim or liability existing, accrued or arising, or relating to the applicable assumed contract or assumed lease for the period prior to the entry of this Order, except any obligations arising under such contract or lease from and after the Petition Date but not yet due and payable under the terms of the applicable contract or lease.

21.    Bar Date for Filing Proofs of Claim Relating to Executory Contacts and Unexpired Leases Rejected Pursuant to the Plan.  **Claims created by the rejection of executory contracts or unexpired leases (including, without limitation, the rejection provided in Section 9.2 of the Plan) or the expiration or termination of any executory contract or unexpired lease prior to the Confirmation Date must be filed with the Bankruptcy Court and served on the Debtors no later than thirty (30) days after: (a) *the Confirmation Date*, with respect to any executory contract or unexpired lease that was terminated or expired by its own terms prior to the Confirmation Date, (b) *the date of the entry of any order of the Bankruptcy Court authorizing rejection*, with respect to any executory contract or unexpired lease rejected by the Debtors, or (c) *the Confirmation Date*, with respect to any executory contract or unexpired lease that is deemed rejected pursuant to Section 9.1 of the Plan. Any rejection claim for which a proof of claim is not filed and served within the time**

**deadlines provided in the Plan and this Order will be forever barred from assertion and shall not be enforceable against the Debtors, their assets, properties, or interests in property, or the Reorganized Debtors or their estates, assets, properties, or interests in property.** Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims in Class 5 under the Plan and shall be subject to the provisions of Article VIII of the Plan.

22. <u>Vesting of Assets</u>. Pursuant to Section 11.1 of the Plan, upon the Effective Date, all property and assets of the Debtors shall vest in the Reorganized Debtors, free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as provided in the Plan, including, without limitation, any and all Claims, Liens, liabilities, encumbrances, charges and other interests and any and all right, title and interests related thereto of governmental entities relating to any tax liabilities or similar liabilities. Such vesting does not constitute a voidable transfer under the Bankruptcy Code or applicable nonbankruptcy law. From and after the Effective Date, the Reorganized Debtors may operate the Debtors' business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code.

23. <u>Title to Assets</u>. Except as otherwise provided in the Plan, on the Effective Date, title to all assets and properties and interests in property dealt with by the Plan shall vest in the Reorganized Debtors, as provided in the Plan, free and clear of all Claims, Equity Interests, Encumbrances, and other interests, and this Order shall be a judicial determination of discharge of the liabilities of the Debtors arising prior to the Effective Date, except as may be otherwise provided in the Plan.

24.     Discharge of Claims and Termination of Equity Interests.  Except as

provided in the Plan, in consideration of the rights afforded in the Plan and the payments and

distributions to be made under the Plan, all existing debts, Claims, and Equity Interests, of any

kind, nature, or description whatsoever against or in the Debtors or any of their assets or

properties, shall be and hereby are discharged and terminated to the fullest extent permitted by

section 1141 of the Bankruptcy Code.  Except as provided in the Plan, upon the Effective Date,

all existing Claims against the Debtors and Equity Interests in the Debtors shall be, and shall be

deemed to be, and hereby are, discharged and terminated, and all holders of Claims and Equity

Interests shall be precluded and enjoined from asserting against the Reorganized Debtors, their

respective successors or assignees, or any of their respective assets or properties, any other or

further Claim or Equity Interest based upon any act or omission, transaction, or other activity of

any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed

a proof of Claim or proof of Equity Interest, and whether or not the facts or legal bases therefore

were known or existed prior to the Effective Date.  Upon the Effective Date, all such persons

shall be and hereby are forever precluded and enjoined, pursuant to section 524 of the

Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or

terminated Equity Interest in the Debtors.

25.     Injunction.  Pursuant to Section 11.6 of the Plan, except as otherwise

provided in the Plan, all Persons who have held, hold or may hold Claims or Equity Interests and

all Persons who have held, hold or may hold claims or causes of action that have been released

pursuant to Section 11.10 of the Plan or are subject to exculpation pursuant to Section 11.9 of the

Plan, and all other parties in interest, along with their respective present or former employees,

agents, officers, managers, directors, principals and Affiliates, are permanently enjoined, from

and after the Effective Date, from (a) commencing, conducting or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Equity Interest, or such released or exculpated claim or cause of action, against the Debtors, the Reorganized Debtors, or the Released Parties or any of their respective property or assets or any interest therein, (b) the enforcement, attachment, levying, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors, the Reorganized Debtors, or the Released Parties or any of their respective property or assets or any interest therein, (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against the Debtors, the Reorganized Debtors, or the Released Parties or any of their respective property or assets or any interest therein, or (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors, the Reorganized Debtors, the Released Parties or against any of their respective property or assets, or any interest therein, with respect to any such Claim or Equity Interest, or such released or exculpated claim or cause of action. Such injunction extends to any successors of the Debtors, the Reorganized Debtors, and the Released Parties and their respective properties and interest in properties.

26.    Injunction Against Interference With Plan of Reorganization. Upon the entry of this Order, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, managers, directors, principals and Affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

27.    Terms of Injunction. Unless otherwise provided in this Order, all injunctions or stays arising under or entered during these Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, that are in existence on the Confirmation Date, other

than injunctions issued pursuant to the Plan (including injunctions under Section 11.6 of the Plan) shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

28.    Exculpation.  **As provided for in Section 11.9 of the Plan, notwithstanding anything herein to the contrary, as of the Effective Date, none of (a) the Debtors or the Reorganized Debtors, (b) the Plan Proponents, and (c) any present director, manager, officer, member, equity holder, employee, agent, financial advisor, partner, attorney, other professional advisor or representative of the persons or parties described in clauses (a) through (c) of Section 11.9 of the Plan (but solely in their capacities as such) shall have or incur any liability for any claim, cause of action or other assertion of liability for any act taken or omitted to be taken since the Petition Date in connection with, related to, or otherwise arising out of, the Chapter 11 Cases, the formulation, negotiation, preparation, dissemination, implementation, confirmation, consummation, or administration of the Plan, property to be distributed under the Plan, or any other act or omission in connection with the Chapter 11 Cases, the Plan, the Disclosure Statement or, in each case, any contract, instrument, document or other agreement related thereto, including; provided, however, that the foregoing shall not affect the liability of any person that otherwise would result from any such act or omission to the extent such act or omission is determined by a final order of a court of competent jurisdiction to have constituted willful misconduct or gross negligence; provided, further, that each Released Party shall be entitled to rely upon the advice of counsel concerning its duties pursuant to, or in connection with, the above referenced documents, actions or inactions.**

29.    Releases. **Pursuant to Section 11.10 of the Plan, as of the Effective Date, and in consideration of (a) the services provided by the present directors, managers, officers, employees, agents, financial advisors, attorneys, and representatives of the Debtors to the Debtors who acted in such capacities after the Petition Date; and (b) the substantial contribution of the Plan Proponents: (i) the Debtors or the Reorganized Debtors; and (ii) each holder of a Claim or Equity Interest that votes to accept the Plan, or accepts a Distribution under the Plan, or is deemed to accept the Plan, or abstains from voting on the Plan, shall release unconditionally and forever each Released Party from any and all Claims, demands, causes of action and the like, relating to the Debtors existing as of the Effective Date or thereafter arising from any act, omission, event or other occurrence that occurred on or prior to the Effective Date; provided, however, that (i) nothing in Section 11.10 of the Plan shall be construed as a release of any claims against any such Released Party resulting from an act or omission determined by a final order of a court of competent jurisdiction to have constituted willful misconduct or gross negligence, provided that each such Released Party shall be entitled to rely upon the advice of counsel concerning its duties pursuant to, or in connection with, its actions or inactions, and (ii) there are no personal guarantee obligations subject to the releases.**

30.    Government Releases. Except for the Claims described in Articles II, III and IV of the Plan (including, but not limited to Exhibits 4.4, 4.5 and 4.6) that are discharged and released under the Plan, or that are discharged in any settlement approved by the Court, nothing in the Plan or this Order shall (i) effect a release of any other claim by the United States Government or any of its agencies or any state and local authority whatsoever against the Released Parties, including without limitation any claim arising under the Internal Revenue

Code, securities laws, the environmental laws or any criminal laws of the United States or any

state and local authority, (ii) enjoin the United States Government or any of its agencies or any

state and local authority whatsoever from bringing any claim, suit, action or other proceedings

against the Released Parties asserting any other liability, including without limitation any claim,

suit or action arising under the Internal Revenue Code, securities laws, environmental laws or

any criminal laws of the United States or any state or local authority, and (iii) exculpate any of

the Released Parties from any other liability to the United States Government or any of its

agencies or any state and local authority whatsoever, including any liabilities arising under the

Internal Revenue Code, securities laws, environmental laws or any criminal laws of the United

States or any state and local authority.

      31.     Limitations on Exculpation and Releases of Representatives.  Nothing in

Sections 11.9 or 11.10 of the Plan shall (i) be construed to release or exculpate any person from,

or require indemnification of any Person against losses arising from, the fraud, malpractice,

criminal conduct, intentional unauthorized misuse of confidential information that causes

damages, or ultra vires acts of such Person, or (ii) limit the liability of the professionals of the

Debtors, the Reorganized Debtors, to their respective clients pursuant to Rule 4-1.8(f) of the

Florida Rules of Professional Conduct ("Limiting Liability for Malpractice").

      32.     Retention of Causes of Action/Reservation of Rights.  Except as provided

in Section 11.10 of the Plan, nothing contained in the Plan or this Order shall be deemed to be a

waiver or the relinquishment of any rights or causes of action that the Debtors or the

Reorganized Debtors may have or which the Reorganized Debtors may choose to assert on

behalf of the Debtors' estates under any provision of the Bankruptcy Code or any applicable

nonbankruptcy law, including, without limitation, (i) any and all Claims against any person or

entity, to the extent such person or entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtors, the Reorganized Debtors, their officers, directors, managers or representatives and (ii) the turnover of any property of the Debtors' estates.

33.     Nothing contained in the Plan or this Order shall be deemed to be a waiver or relinquishment of any claim, cause of action, right of setoff, or other legal or equitable defense which the Debtors had immediately prior to the Petition Date, against or with respect to any Claim left Unimpaired by the Plan. The Reorganized Debtors shall have, retain, reserve, and be entitled to assert all such claims, causes of action, rights of setoff, and other legal or equitable defenses which the Debtors had immediately prior to the Petition Date fully as if the Bankruptcy Cases had not been commenced, and all of the legal and equitable rights of the Reorganized Debtors respecting any Claim left Unimpaired by the Plan may be asserted after the Confirmation Date to the same extent as if the Bankruptcy Cases had not been commenced.

34.     Transfer Free and Clear of Liens. Except with respect to any fund established pursuant to the Plan, all right, title and interest in and to any and all assets, property, unexpired leases and executory contracts of every kind and nature to be sold, assigned, transferred or otherwise disposed of under the Plan shall be sold, assigned, transferred and disposed of free and clear of any and all Claims, Liens, liabilities, encumbrances, charges and other interests of any entity (as such term is defined in section 101(15) of the Bankruptcy Code) including, without limitation, any and all claims, liens, encumbrances and any and all right, title and interests related thereto arising or resulting from or relating to the transactions contemplated hereby and by the Plan.

35.    Reorganized Debtors are Not Successors of the Debtors.  Except with respect to administrative expense claims of the type specified in Section 1.2(d)(iii)(1) of the Plan as expressly provided for in Section 2.1 of the Plan, (i) the Reorganized Debtors shall not be a successor to any of the debtors in the Chapter 11 Cases by reason of any theory of law or equity, (ii) the Reorganized Debtors shall not assume, incur or be responsible for any claims or liabilities of the Debtors or any of their affiliates, and (iii) the Reorganized Debtors shall not be successors or successors in interest of the Debtors nor incur any successor or transferee Liability of any kind, nature or character, including, without limitation, in relation to (a) any and all liabilities arising or resulting from or relating to the transactions contemplated by the Plan, (b) any and all Claims, Liens, liabilities, encumbrances, charges and other interests arising from or relating to any conduct, liabilities, or obligations of the Debtors, and (c) any and all Claims, Liens, liabilities, encumbrances, charges and other interests and any and all right, title, and interests related thereto, of governmental entities relating to any tax or similar liabilities.

36.    Authorization to Consummate Plan Transactions.  The Debtors and the Reorganized Debtors are all authorized to consummate the transactions contemplated in the Plan and to enter into, execute and deliver all necessary documents, including those required in connection with the Plan.

37.    Conditions to Effective Date.  The Plan shall not become effective unless and until the conditions set forth in Section 10.1 of the Plan have been satisfied or waived pursuant to Section 10.2 of the Plan.

38.    Retention of Jurisdiction.  Pursuant to Article XII of the Plan, this Court shall retain and have exclusive jurisdiction over any matter arising under the Bankruptcy Code

and arising in or related to these Chapter 11 Cases or the Plan, to the fullest extent as is legally permissible.

39.    Effectuating Documents and Further Transactions.  On or before the Effective Date, and without the need for any further order or authority, the Debtors shall file with this Court or execute, as appropriate, such agreements and other documents that are in form and substance satisfactory to the Plan Proponents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. Each of the officers of the Debtors, the Reorganized Debtors is authorized, without the need for any further order or authority, to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any notes or securities issued pursuant to the Plan. The Reorganized Debtors are authorized to execute all documents and enter into all agreements as may be necessary and appropriate in connection with the Plan.

40.    Compliance with Tax Requirements.  In connection with the Plan, the Debtors will comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities, and all distributions under the Plan shall be subject to such withholding and reporting requirements.

41.    Modifications.  Pursuant to Section 13.1 of the Plan, the Plan may be altered, amended or modified by the Debtors, after the Confirmation Date, as provided in section 1127 of the Bankruptcy Code; provided, however, that no such alterations, amendments or modifications that are material shall be made without the consent of the Plan Proponents; provided further, however that the Plan Proponents may, with the approval of the Bankruptcy Court and without notice to holders of Claims and Equity Interests, correct any nonmaterial

defect, omission, or inconsistency herein in such manner and to such extent as may be necessary or desirable. A holder of an Allowed Claim that has accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim of such holder. The Plan, as altered, amended or modified must satisfy the conditions of sections 1122, 1123 and 1129 of the Bankruptcy Code, and the Debtors shall have compiled with section 1125 of the Bankruptcy Code. A holder of an Allowed Claim that has accepted the Plan shall be deemed to have accepted the Plan as altered, amended or modified if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder. Prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan, without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Equity Interests.

42.    Payment of Statutory Fees. All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Debtors on or before the Effective Date.

43.    Post-Confirmation Date Professional Fees and Expenses. From and after the Confirmation Date, the Reorganized Debtors, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professional persons thereafter incurred by them.

44.    Exemption from Transfer Taxes. Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment

of any lease or sublease, or the making or delivery of any deed or other instrument of transfer, merger or consolidation under, in furtherance of, or in connection with the Plan, shall not be subject to any sales and use, stamp, real estate transfer, mortgage recording, or other similar tax. The Reorganized Debtors are hereby authorized to deliver a notice of this Confirmation Order, with the Plan annexed, to any state or local recording officer, and such officer is hereby directed to accept for filing the above documents or instruments without charging any sales and use, stamp, real estate transfer, mortgage recording, or other similar tax. Such notice (a) shall have the effect of an Order of this Court, (b) shall constitute sufficient notice of the entry of this Confirmation Order to such filing and recording officers and (c) shall be a reasonable instrument notwithstanding any contrary provision of non-bankruptcy law. The Bankruptcy Court specifically retains jurisdiction to enforce the foregoing direction, by contempt or otherwise.

45. _Governmental Approvals Not Required_. This Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement and any amendments or modifications thereto.

46. _Professional Compensation and Reimbursement_. The Allowed Amount of all Administrative Expense Claims arising under section 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5), or 503(b)(6) of the Bankruptcy Code shall, in full satisfaction, settlement, discharge and release thereof, and in exchange therefore, be paid in full, in Cash, from the Administrative/Priority Claims Reserve (a) upon the later of (i) the Effective Date and (ii) the date upon which any such Administrative Expense Claim becomes Allowed or (b) at such later

date or upon such other less favorable terms as may be mutually agreed upon between each such Administrative Expense Creditor and the Plan Administrator.

47.    Notice of Effective Date.  As soon as practicable after the occurrence of the Effective Date, the Reorganized Debtors shall file notice of the occurrence of the Effective Date and shall serve a copy of same on all parties entitled to receive notice in these Chapter 11 Cases.

48.    Substantial Consummation.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

49.    Revocation or Withdrawal of the Plan of Reorganization.  The Plan Proponents reserve the right to revoke or withdraw the Plan prior to the Effective Date, in their sole discretion.  If the Plan is revoked or withdrawn prior to the Effective Date, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims or defenses or any admission or statement against interest by any Debtor or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving any Debtor.

50.    Reversal.  If any of the provisions of this Order are hereafter reversed, modified or vacated by a subsequent order of the Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under, or in connection with, the Plan prior to receipt of written notice of such order by the Debtors.  Notwithstanding any such reversal, modification or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by

4453754-6                                        42

the provisions of this Order, the Plan, all documents relating to the Plan and any amendments or modifications to any of the foregoing.

51.     Conflicts Between Order and Plan.  The provisions of the Plan and this Order shall be construed in a manner consistent with each other so as to effect the purpose of each; provided, however, that if there is determined to be any inconsistency between any Plan provision and any provision of this Order that cannot be so reconciled, then solely to the extent of such inconsistency, the provisions of this Order shall govern and any provision of this Order shall be deemed a modification of the Plan and shall control and take precedence.  The provisions of this Order are integrated with each other and are non-severable and mutually dependent.

52.     Final Order; Waiver of Stay.  This Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.  Any stay of this Order provided by any Bankruptcy Rule (including Bankruptcy Rule 3020(e)) is hereby waived, and this Order shall be effective and enforceable immediately upon its entry by the Court.

53.     Post-Confirmation Status Conference.  **The Court will conduct a post-confirmation status conference on October 18, 2012 at 2:30 p.m., U.S. Bankruptcy Court, 51 S.W. First Avenue, Courtroom 1406, Miami, Florida 33130**.

# # #

Submitted by:
Christopher A. Jarvinen, Esq.
James D. Gassenheimer, Esq.
Berger Singerman LLP
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Tel. (305) 755-9500
Fax (305) 714-4340
cjarvinen@bergersingerman.com
jgassenheimer@bergersingerman.com

# EXHIBIT "A"

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

In re:                                          Chapter 11 Cases

MAGUIRE GROUP HOLDINGS, INC.,          Case No. 11-39347-BKC-RAM
*et al.*,[1]                                  (Jointly Administered)

                    Debtors.
_____/


**THIRD AMENDED**
**PLAN OF REORGANIZATION UNDER**
**CHAPTER 11 OF THE BANKRUPTCY CODE, AS AMENDED**


Dated:  April 12, 2012


BERGER SINGERMAN LLP
James D. Gassenheimer, Esq.
Christopher A. Jarvinen, Esq.
1450 Brickell Avenue, Suite 1900
Miami, Florida 33131
Tel: (305) 755-9500
Fax: (305) 714-4340

Counsel for Debtors and
Debtors-in-Possession

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Maguire Group Holdings, Inc. (3582); (ii) The Maguire Corporation (0930); (iii) Maguire Group Inc. (8211); (iv) East Atlantic Casualty Company, Ltd. (7441); and (v) Maguire Group, Architects, Engineers, Planners, Ltd. (1520). The address for all of the Debtors is 13940 S.W. 136th Street, Suite 100, Miami, Florida 33186.

# TABLE OF CONTENTS

ARTICLE I    DEFINITIONS; RULES OF INTERPRETATION ............................................... 1

    1.1.    Scope of Definitions .............................................................................. 1

    1.2.    Definitions.............................................................................................. 1

    1.3.    Interpretation......................................................................................... 12

    1.4.    Exhibits ................................................................................................. 12

ARTICLE II    PROVISIONS FOR PAYMENT OF ALLOWED ADMINISTRATIVE
    EXPENSE CLAIMS, PRIORITY TAX CLAIMS AND STATUTORY
    FEES ...................................................................................................... 13

    2.1.    Payment of Allowed Administrative Expense Claims; Administrative
    Expense Claims Bar Date ...................................................................... 13

    2.2.    Professional Claims Bar Date ............................................................... 13

    2.3.    Priority Tax Claims................................................................................ 13

    2.4.    U.S. Trustee; Claims for Statutory Fees; Quarterly Reports ................ 13

ARTICLE III    CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ...................... 14

    3.1.    Generally............................................................................................... 14

    3.2.    Summary ................................................................................................ 14

ARTICLE IV    IMPAIRMENT AND TREATMENT OF CLAIMS AND EQUITY
    INTERESTS ........................................................................................... 15

    4.1.    Class 1 ................................................................................................... 15

    4.2.    Class 2................................................................................................... 15

    4.3.    Class 3 ................................................................................................... 16

    4.4.    Class 4................................................................................................... 16

    4.5.    Class 5................................................................................................... 17

    4.6.    Class 6................................................................................................... 19

    4.7.    Class 7................................................................................................... 19

ARTICLE V    ACCEPTANCE, REJECTION, AMENDMENT AND REVOCATION
    OR WITHDRAWAL OF THE PLAN..................................................... 19

    5.1.    Classes Entitled to Vote........................................................................ 19

    5.2.    Acceptance by Class of Claims............................................................. 19

    5.3.    Nonconsensual Confirmation................................................................ 20

    5.4.    Revocation or Withdrawal; No Admissions ......................................... 20

    5.5.    Amendment of Plan Documents............................................................ 20

# TABLE OF CONTENTS
## (continued)

Page

| | | |
|---|---|---|
| 5.6. | Removal of Debtors | 20 |
| ARTICLE VI | MEANS OF IMPLEMENTING THE PLAN | 20 |
| 6.1. | Procedural Substantive Consolidation | 20 |
| 6.2. | Source of Funding for Plan Distributions | 22 |
| 6.3. | Section 1146 Exemption | 22 |
| 6.4. | Corporate Action | 22 |
| 6.5. | Vesting of Assets in the Reorganized Debtors | 23 |
| 6.6. | Distributions | 23 |
| 6.7. | Surrender and Cancellation of Notes, Instruments, Certificates and Other Documents Evidencing Claims or Equity Interests | 23 |
| 6.8. | Issuance of New Equity | 23 |
| 6.9. | Continued Corporate Existence of the Reorganized Debtors | 23 |
| 6.10. | Amendment of the Reorganized Debtors' Governance Documents | 24 |
| 6.11. | Directors, Officers, Members and Managers of the Reorganized Debtors | 24 |
| 6.12. | Effectuating Documents and Further Transactions | 25 |
| 6.13. | Section 1145 Determination | 25 |
| 6.14. | Preservation of Causes of Action | 25 |
| 6.15. | Prosecution and Settlement of Causes of Action | 26 |
| ARTICLE VII | DISTRIBUTIONS | 27 |
| 7.1. | Manner of Distributions Under the Plan | 27 |
| 7.2. | Timing of Distributions | 27 |
| 7.3. | Entity Making Distributions | 27 |
| 7.4. | Record Date | 27 |
| 7.5. | Delivery of Distributions | 27 |
| 7.6. | No Interest Unless Otherwise Provided | 28 |
| 7.7. | De Minimis Distributions | 28 |
| 7.8. | Fractional Cents | 28 |
| 7.9. | Taxpayer Identification Number | 28 |
| 7.10. | Compliance with Tax Requirements | 28 |
| 7.11. | Effect of Pre-Confirmation Distributions | 28 |
| 7.12. | Setoffs and Recoupments | 29 |

# TABLE OF CONTENTS
## (continued)

| | | |
|---|---|---|
| 7.13. | Distributions in Satisfaction; Allocation | 29 |
| 7.14. | Unclaimed Property | 29 |
| ARTICLE VIII | PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS | 29 |
| 8.1. | Objections to Claims; Prosecution of Disputed Claims | 29 |
| 8.2. | Administration of Disputed Claims; Disputed Claims Reserve | 30 |
| 8.3. | Estimation | 31 |
| 8.4. | Objections to Impaired Claims | 31 |
| 8.5. | Disallowance of Claims | 31 |
| ARTICLE IX | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 32 |
| 9.1. | General Treatment: Rejected if not Previously Assumed | 32 |
| 9.2. | Bar to Claims Arising from Rejection, Termination or Expiration | 32 |
| 9.3. | Assumption of Executory Contracts and Unexpired Leases | 32 |
| 9.4. | Insurance Policies and Agreements | 34 |
| ARTICLE X | CONDITIONS PRECEDENT | 34 |
| 10.1. | Conditions Precedent to Effectiveness of Plan | 34 |
| 10.2. | Effect of Failure of Conditions to Effective Date | 35 |
| 10.3. | Notice of Confirmation of the Plan | 35 |
| ARTICLE XI | EFFECT OF CONFIRMATION | 35 |
| 11.1. | Vesting of Assets | 35 |
| 11.2. | Title to Assets; Discharge of Liabilities | 35 |
| 11.3. | Binding Effect | 36 |
| 11.4. | Discharge of Claims and Termination of Equity Interests | 36 |
| 11.5. | Discharge of the Debtors | 36 |
| 11.6. | Injunction | 36 |
| 11.7. | Term of Injunctions or Stays | 37 |
| 11.8. | Injunction Against Interference With Plan of Reorganization | 37 |
| 11.9. | Exculpation | 37 |
| 11.10. | Releases | 38 |
| 11.11. | Government Releases | 38 |

# TABLE OF CONTENTS
## (continued)

11.12. Limitations on Exculpation and Releases of and Releases of Representatives ................................................................................. 38

ARTICLE XII RETENTION OF JURISDICTION ....................................................... 39

12.1.　Retention of Jurisdiction ..................................................................... 39

12.2.　Abstention and Other Courts .............................................................. 41

ARTICLE XIII　MISCELLANEOUS PROVISIONS ............................................... 41

13.1.　Modification of the Plan ...................................................................... 41

13.2.　Rights of Action ................................................................................... 41

13.3.　Notices ................................................................................................. 41

13.4.　Severability .......................................................................................... 42

13.5.　Headings .............................................................................................. 42

13.6.　Governing Law .................................................................................... 42

13.7.　Plan Documents .................................................................................. 42

13.8.　Compliance with Tax Requirements.................................................... 42

13.9.　Expedited Determination of Postpetition Taxes ................................. 42

13.10. Sections 1125 and 1126 of the Bankruptcy Code ............................... 43

13.11. Time ..................................................................................................... 43

13.12. Binding Effect....................................................................................... 43

13.13. No Res Judicata Effect.......................................................................... 43

13.14. Bankruptcy Rule 9019 Request; Impact ............................................. 43

13.15. Cramdown............................................................................................. 44

13.16. Successors and Assigns......................................................................... 45

## TABLE OF CONTENTS
### (continued)

Page

### EXHIBIT LIST

Exhibit 4.4: Class 4 - List of Allowed General Unsecured Claims Necessary for the Continued Operation of the Reorganized Debtors.

Exhibit 4.5: Class 5 - List of General Unsecured Claims Not Necessary for the Continued Operation of the Reorganized Debtors.

Exhibit 4.6: Class 6 - List of Subordinated Unsecured Claims.

## INTRODUCTION

Maguire Group Holdings, Inc. ("Maguire Holdings"), The Maguire Corporation ("Maguire Corp."), Maguire Group Inc. ("MGI"), East Atlantic Casualty Company, Ltd. ("East Atlantic"), and Maguire Group, Architects, Engineers, Planners, Ltd. ("Maguire AEP"), debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") and Carlos Duart ("Duart" and together with the Debtors, collectively, the "Plan Proponents"), propose this Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as amended from time to time, and including all Plan Documents and other attachments hereto, as any of the same may be amended from time to time, all of which are incorporated herein by reference and are a part of, the "Plan"), pursuant to the provisions of chapter 11 of the Bankruptcy Code (as defined in Section 1.2 herein ("Definitions")).

For a discussion of the Debtors' history, business, operations, assets and liabilities, for a summary and analysis of the Plan, preservation of Causes of Action, risk factors, liquidation analysis, tax implications and alternatives to the Plan, reference should be made to the Third Amended Disclosure Statement for the Plan Proponents' Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated April 12, 2012, filed with and approved by the Bankruptcy Court [D.E. No. 299], as such disclosure statement may be amended, modified or supplemented (the "Disclosure Statement").

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3018 AND IN THIS PLAN, THE DEBTORS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

## ARTICLE I

## DEFINITIONS; RULES OF INTERPRETATION

1.1.    ***Scope of Definitions***.    Except as expressly provided in Section 1.3 herein ("Interpretation"), all capitalized terms used in the Plan, but not otherwise defined, shall have the meanings specified in Section 1.2 herein ("Definitions").

1.2.    ***Definitions***.

(a)    "Administrative Expense Claim" means any Claim constituting a cost or expense of administration in the Debtors' Chapter 11 Cases under section 503 of the Bankruptcy Code, including, without express or implied limitation, any actual and necessary costs and expenses of preserving the Estate of any Debtor, any Professional Claim, any actual and necessary costs and expenses of operating the businesses of any Debtor, any indebtedness or obligations incurred or assumed by any Debtor, as Debtor in Possession, in connection with the conduct of its business or for the acquisition or lease of property or the rendition of services, any

other allowed compensation or reimbursement of expenses under section 503(b)(2)-(6) of the Bankruptcy Code, and any fees or charges assessed against any Estate under section 1930, chapter 123, title 28, United States Code.

(b)     "Administrative Expense Claims Bar Date" means the date to be fixed by the Bankruptcy Court as the last date for filing Administrative Expense Claims; provided, however, that the Administrative Expense Claims Bar Date shall not apply to (a) Professional Claims or other Persons requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code for services rendered on or before the Effective Date (including any compensation requested by any Professional or any other Person for making a substantial contribution in the Chapter 11 Case), and (b) liabilities incurred by the Debtors in the ordinary course of business after the Administrative Expense Claims Bar Date but before the Effective Date.

(c)     "Affiliate" means any Person that is an "affiliate" of any Debtor within the meaning of section 101(2) of the Bankruptcy Code.

(d)     "Allowed" means:

(i)     With respect to any Claim (other than an Administrative Expense Claim), of which a proof of claim was properly and timely filed within the applicable period of limitation fixed in accordance with Bankruptcy Rule 3003(c)(3) by the Bankruptcy Court: (1) as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order, such Claim to the extent asserted in the proof of such Claim; or (2) as to which an objection has been interposed, such Claim to the extent that it has been allowed in whole or in part by a Final Order, or (3) which has been allowed under the terms of the Plan.

(ii)     With respect to any Claim (other than an Administrative Expense Claim), as to which no proof of claim was filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, such Claim to the extent that it has been listed in the Schedules as liquidated in amount and not disputed, contingent or unliquidated and not otherwise Disputed under the terms of the Plan.

(iii)     With respect to any Claim that is asserted to constitute an Administrative Expense Claim:

(1)     that (y) represents an actual or necessary cost or expense of preserving an Estate or operating the business of any Debtor, including for payment of goods, services, wages, or benefits or for credit extended to any Debtor, as a Debtor in Possession, and (z) to the extent that such claim is reflected as a postpetition liability of any Debtor on such Debtor's books and records maintained in the ordinary course of business as of the Effective Date;

(2)    in an action against any Debtor pending as of the Confirmation Date, any such Claim to the extent it is allowed by a final order of a court of competent jurisdiction or by agreement between the Reorganized Debtor and the holder of such Administrative Expense Claim, and if any Debtor disputes that such claim is a cost or expense of administration under sections 503(b) and 507(a) of the Bankruptcy Code, to the extent the Bankruptcy Court determines by a Final Order that it constitutes a cost or expense of administration under sections 503(b) and 507(a) of the Bankruptcy Code;

(3)    any such Claim filed to the extent (y) no objection is interposed by the applicable objection deadline, or (z) if an objection is interposed by the applicable objection deadline, is allowed in whole or in part by a Final Order and only to the extent that such allowed portion is deemed, pursuant to a Final Order, to constitute a cost or expense of administration under sections 503(b) and 507(a) of the Bankruptcy Code;

(4)    that represents a Professional Claim, to the extent it is allowed by a Final Order; or

(5)    any such Claim that has been otherwise allowed under the terms of the Plan.

(e)    "Avoidance Action" means a Cause of Action assertable by the Debtors or their Estates, including without limitation, any action brought under sections 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code, other than those Causes of Action barred pursuant to: (i) the releases under Article XI hereof ("Effect of Confirmation"), and (ii) any other release or agreement approved by the Bankruptcy Court prior to the Effective Date.

(f)    "Ballot" means the form or forms approved by the Bankruptcy Court and distributed to holders of Impaired Claims on which the acceptance or rejection of the Plan is to be indicated.

(g)    "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended, and as codified in title 11 of the United States Code, as applicable to the Chapter 11 Cases.

(h)    "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Florida, or such other court having jurisdiction over the Chapter 11 Cases.

(i)    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended, as applicable to the Chapter 11 Cases, including the Local Rules of the Bankruptcy Court.

(j)    "Bar Date" means, as applicable, (1) February 27, 2012 as to non-Governmental Units and April 23, 2012 as to Governmental Units (the dates established by the Bankruptcy Court as the last date for filing proofs of claim against the Debtors), and (2) any

other date(s) established by the Bankruptcy Court as the last date(s) for filing Administrative Expense Claims or other Claims against the Debtors.

(k)    "Business Day" means any day that is not (1) a Saturday, (2) a Sunday, (3) any other day on which commercial banks in Miami, Florida are required or authorized to close by law or executive order, or (4) any other day that is a "legal holiday" in the State of Florida, as such term is defined in Bankruptcy Rule 9006(a).

(l)    "Cash" means lawful currency of the United States of America and its equivalents, including but not limited to, wire transfers and checks.

(m)    "Cash Flow" means the Debtors' or the Reorganized Debtors', as the case may be, earnings before interest, taxes, depreciation and amortization (EBITDA).

(n)    "Causes of Action" means any and all claims (including third party claims and Avoidance Actions), choses in action, causes of action, suits, accounts, debts, dues, sums of money, bonds, bills, covenants, contracts, damages, judgments, remedies, rights of setoff, motions, subrogation claims, contribution claims, reimbursement claims, indemnity claims, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payments and claims, counter-claims and cross claims (including all claims and any avoidance, recovery, subordination or other actions against any Person under the Bankruptcy Code), whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether assertable directly or derivatively, in law, equity or otherwise (including under the Bankruptcy Code), which are owned or held by, or have accrued to, any Debtor, Debtor in Possession and/or any Estate, whether arising before or after the Petition Date (and whether asserted or unasserted as of the Confirmation Date), or instituted by the Debtors or the Reorganized Debtors, as the case may be (after the Petition Date or Effective Date, as applicable), against any Person, including, without limitation, those which are: (i) property of any Estate under and pursuant to section 541 of the Bankruptcy Code; (ii) for subrogation and contribution; (iii) for turnover; (iv) for avoidable transfers and preferences under and pursuant to sections 542 through 550 and 553 of the Bankruptcy Code and applicable state law; (v) to determine the extent, validity and priority of liens and encumbrances; (vi) for surcharge under section 506(c) of the Bankruptcy Code; (vii) for subordination under section 510 of the Bankruptcy Code; (viii) related to federal or state securities laws; (ix) direct or derivative claims or causes of action of any type or kind; (x) for professional malpractice against professionals employed by any Debtor; (xi) against any and all current and/or former officers and directors of any Debtor or any legal predecessor in interest of any Debtor for any reason, including for fraudulent transfer and/or breach of fiduciary duty; (xii) under and pursuant to any policies of insurance maintained by any Debtor; (xiii) for theft of corporate opportunity; (xiv) for collection on accounts, accounts receivables, loans, notes receivables or other rights to payment; (xv) for the right to seek a determination by the Bankruptcy Court of any tax, fine or penalty relating to a tax, or any addition to a tax, under section 505 of the Bankruptcy Code; (xvi) which arise under or as a result of any section of the Bankruptcy Code, including section 362; (xvii) or may be available to any Debtor against any third party(ies) under any legal or equitable theory, whether or not specifically identified or described herein or in the Disclosure Statement; and (xviii) to the extent not otherwise set forth above, as described in the Disclosure Statement. Under the Plan,

all Causes of Action will remain with the Debtors or vest in the Reorganized Debtors, as applicable.

(o)     "Chapter 11 Cases" means, collectively, the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on October 24, 2011 and pending in the Bankruptcy Court as "In re Maguire Group Holdings, Inc., et al.", Case No. 11-39347-BKC-RAM (Jointly Administered).

(p)     "Claim" means a "claim", as defined in section 101(5) of the Bankruptcy Code against any Debtor.

(q)     "Class" means any group of Claims or Equity Interests classified by the Plan pursuant to section 1123(a)(1) of the Bankruptcy Code.

(r)     "Class 4 Distribution Period" means the nine (9) month period immediately following the Effective Date.

(s)     "Class 4 Payment Date" means the last Business Day of each month; provided, however, that the Reorganized Debtors, in their absolute discretion, may make a Distribution prior to the last Business Day of each month.

(t)     "Class 5 Claims Distribution" means $250,000 in Cash funded by the Duart Contribution.

(u)     "Committee" means any committee of unsecured creditors that may be appointed in these Chapter 11 Cases, as such Committee may be reconstituted from time to time. As of the date of the filing of the Plan, no Committee has been appointed in the Chapter 11 Cases.

(v)     "Confirmation" means the entry of an order of the Bankruptcy Court confirming the Plan in accordance with section 1129 of the Bankruptcy Code.

(w)     "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket.

(x)     "Confirmation Hearing" means the hearing(s) before the Bankruptcy Court in respect of the confirmation of the Plan.

(y)     "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

(z)     "Creditor" means any Person that holds an Allowed Claim.

(aa)    "Cure" means a Claim for all unpaid monetary obligations, or adequate assurance of cure or compensation, or other amounts as may be agreed upon by the parties (including the amounts proposed to be made as distributions pursuant to Section 4.4 of this Plan ("General Unsecured Claims Necessary for the Continued Operation of the Reorganized

Debtors")), under an executory contract or unexpired lease (or assumed or assumed and assigned) by any Debtor pursuant to section 365 of the Bankruptcy Code or the Plan.

(bb)    "Cure Claim" means a Claim for a Cure.

(cc)    "Debtors" has the meaning set forth in the preamble hereof.

(dd)    "Debtor in Possession" means each Debtor in its capacity as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

(ee)    "Disallowed" or "Disallowed Claim" means a Claim, or any portion of a Claim that (a) is scheduled in the Debtors' Schedules in the amount of zero ($0) U.S. dollars or as contingent, unliquidated or disputed and as to which a Bar Date has been established but no proof of claim has been filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law; (b) is not scheduled in the Debtors' Schedules and as to which a Bar Date has been established but no proof of claim has been filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law; or (c) has been disallowed by order of the Bankruptcy Court or such other court of competent jurisdiction.

(ff)    "Disclosure Statement" has the meaning set forth in the preamble hereof.

(gg)    "Disputed" or "Disputed Claim" means any Claim (including any Administrative Expense Claim) against any Debtor:

1.    If no proof of claim was timely and properly filed by the applicable Bar Date: (a) a Claim that has been or hereafter is listed on the Schedules as unliquidated in amount or is shown as disputed, contingent or unliquidated; or (b) a Claim that has been or hereafter is listed on the Schedules as liquidated in amount and not disputed, contingent or unliquidated, but as to which the Debtors or any other party in interest has interposed an objection or request for estimation which has not been withdrawn or determined by Final Order; or (c) a Claim that has been or hereafter is listed on Exhibits 4.4, 4.5 or 4.6 attached to this Plan and shown as "Disputed", but only to the extent of the amount shown as disputed; or

2.    If a proof of claim was timely and properly filed by the applicable Bar Date, a Claim (a) for which no corresponding Claim has been or hereafter is listed on the Schedules; or (b) that has been or hereafter is listed on the Schedules as unliquidated in amount or is shown as disputed, contingent or unliquidated; or (d) for which a corresponding Claim has been or hereafter is listed on the Schedules as liquidated in amount and not shown as disputed, contingent or unliquidated, but the nature and amount of the Claim as asserted in the proof of claim varies from the nature and amount of such claim listed on the Schedules; or (e) a Claim that has been or hereafter is listed on Exhibits 4.4, 4.5 or 4.6 attached to this Plan and shown as disputed, but only to the extent of the amount shown as disputed; or (f) which is otherwise disputed under the Plan or as to which the Debtors have interposed a timely objection and/or request for estimation in

accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, which objection and/or request for estimation has not been withdrawn or determined by a Final Order.

A Claim that is disputed by the Debtors as to its amount only shall be deemed Allowed in the amount the Debtors admit owing in writing, if any, and disputed as to the excess.

(hh)    "Disputed Claims Reserve" means a reserve to be established by the Debtors or the Reorganized Debtors (or their respective agent(s)), as the case may be, to receive and hold, in a segregated account, Cash in an amount equal to the aggregate of amounts thereof or such other amounts as the parties may agree or the Bankruptcy Court may order, that would have been distributed on the Effective Date on account of such Disputed Claims against the Debtors or their property (had they been Allowed Claims on the Effective Date).

(ii)    "Distribution" means each payment or distribution under the Plan of property or interests in property to the holders of Allowed Claims.

(jj)    "Distribution Agent" means the Person or Entity responsible for making Distributions under the Plan, as identified in the Plan Supplement, and which may be Reorganized Debtors.

(kk)    "Duart" means Carlos Duart, the alleged principal (95% equity holder of Maguire Holdings, the direct or indirect parent of all of the Debtors) and an alleged creditor of the Debtors.

(ll)    "Duart Contribution" means a contribution in Cash to be funded on the Effective Date by Duart, in an amount of $350,000, to be used by the Reorganized Debtors to fund the Class 5 Claims Distribution ($250,000) and partially to pay the operating expenses of the Reorganized Debtors ($100,000), including, but not limited to Allowed Administrative Expense Claims (including Allowed Professional Claims).

(mm)    "Duart Guaranty" means the personal guarantee to be executed by Duart, and filed with the Plan Supplement, to secure the payments to holders of certain Allowed Claims under the Plan, including Allowed (i) the Administrative Expense Claims (including Professional Claims), (ii) Priority Tax Claims, (iii) Claims for Statutory Fees, (iv) Class 4 Claims ("General Unsecured Claims Necessary for the Continued Operation of the Reorganized Debtors") and (v) Class 5 Claims ("General Unsecured Claims Not Necessary for the Continued Operation of the Reorganized Debtors"), but only to the extent of the Class 5 Claims Distribution (i.e., the $250,000 to be provided by the Duart Contribution) earmarked for Distributions to holders of Allowed Class 5 Claims on or about the Effective Date of the Plan, and not for any other Distributions to the holders of Allowed Claims in Class 5.

(nn)    "Effective Date" means a Business Day on or after the Confirmation Date selected by the Plan Proponents on which (a) all of the conditions precedent to the effectiveness of the Plan specified in Section 10.1 hereof ("Conditions Precedent to Effectiveness of Plan") have been satisfied or waived and (b) no stay of the Confirmation Order is in effect.

(oo)    "Entity" has the meaning set forth in section 101(15) of the Bankruptcy Code.

(pp)    "Equity Interest" means the interests of any holder of an equity security of any of the Debtors represented by any issued and outstanding shares of common stock or preferred stock, or any membership interest, partnership interest or other instrument evidencing a present ownership interest in any of the Debtors, including any option, warrant, or right, contractual or otherwise, to acquire any such interest.

(qq)    "Estate" means the estate of each Debtor creating under section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

(rr)    "File, Filed or Filing" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

(ss)    "Financial Projections" means the financial projections of the Debtors' operations attached as an exhibit to the Disclosure Statement, as may be amended from time to time.

(tt)    "Final Order" means an order or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Cases, which has not been reversed, vacated, or stayed, and as to which: (i) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired, and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending; or (ii) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument, or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not cause such order to not be a Final Order.

(uu)    "General Unsecured Claim" means a Claim as of the Petition Date that is not an Administrative Expense Claim (including, a Professional Claim), a Priority Tax Claim, a Priority Claim, a Secured Claim of Regions Bank, an Other Secured Claim or a Subordinated Unsecured Claim. In the Plan, there are two separate and distinct Classes of General Unsecured Claims, as follows; (i) Class 4 ("General Unsecured Claims Necessary for the Continued Operation of the Reorganized Debtors") and (ii) Class 5 ("General Unsecured Claims Not Necessary for the Continued Operation of the Reorganized Debtors"), and shall have the meanings provided herein, as further described in Section 4.4 (Class 4 - "General Unsecured Claims Necessary for the Continued Operation of the Reorganized Debtors") and Section 4.5 (Class 5 - "General Unsecured Claims Not Necessary for the Continued Operation of the Reorganized Debtors").

(vv)    "Governmental Unit" has the meaning set forth in section 101(27) of the Bankruptcy Code.

(ww)    "Impaired" means, with respect to any Class of Claims or Equity Interests, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

(xx)    "Internal Revenue Code" means the Internal Revenue Code of 1986, as amended from time to time, and any applicable rulings, Treasury Regulations, judicial decisions, and notices, announcements, and other releases of the United States.

(yy)    "Lien" means any: (i) judicial lien contemplated in section 101(36) of the Bankruptcy Code; (ii) mortgage, lien, pledge, security interest or other charge or encumbrance or security device of any kind affecting any asset or any property of the Debtors contemplated by section 101(37) of the Bankruptcy Code; (iii) security interest contemplated in section 101(51) of the Bankruptcy Code; (iv) statutory lien contemplated in section 101(53) of the Bankruptcy Code; and (v) other lien, interest, charge or encumbrance.

(zz)    "MEI" means non-debtor Metric Engineering, Inc.

(aaa)    "Notice Agent" means Kurtzman Carson Consultants, LLC, or such other firm retained pursuant to 28 U.S.C. § 156(c) in connection with the Chapter 11 Cases.

(bbb)    "Other Secured Claim" means any Secured Claim other than the Secured Claim of Regions Bank.

(ccc)    "Person" means an individual, corporation, partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organizations, financial institution government or any political subdivision thereof, or any other entity (as defined in section 101(15) of the Bankruptcy Code) or group.

(ddd)    "Petition Date" means October 24, 2011, the date on which each Debtor commenced its Chapter 11 Case by filing a petition for relief under chapter 11 of the Bankruptcy Code.

(eee)    "Plan" has the meaning set forth in the preamble hereof.

(fff)    "Plan Documents" means all documents that aid in effectuating the Plan, including, without limitation, all addenda, exhibits, schedules, and the Plan Supplement, which documents (as may be amended, modified or supplemented from time to time) shall be in form and substance acceptable to the Plan Proponents.

(ggg)    "Plan Proponents" has the meaning set forth in the preamble hereof.

(hhh)    "Plan Supplement" means the compilation of documents and forms of documents, schedules and exhibits, each in form and substance reasonably acceptable to the Debtors and the Plan Proponents, to be filed on or before the date that is three (3) days prior to

the last day on which votes to accept or reject the plan are accepted, and which may be amended from time to time prior to the Confirmation Date.

(iii)    "Priority Claim" means any Claim to the extent that it is of the kind described in, and entitled to priority under section 507(a) of the Bankruptcy Code, other than an Administrative Expense Claim and a Priority Tax Claim.

(jjj)    "Priority Tax Claim" means an unsecured Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

(kkk)    "Professional" means any professional employed or to be compensated pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

(lll)    "Professional Claim" means a Claim for compensation and/or reimbursement of expenses pursuant to sections 327, 328, 330, 331 or 503(b) of the Bankruptcy Code in connection with an application made to the Bankruptcy Court in the Chapter 11 Cases.

(mmm)  "Project" means any undertaking by the Debtors that generates any revenues for the Debtors, including, but not limited to, the fee-based professional and technical services provided by the Debtors to private clients and federal, state and local governmental agencies.

(nnn)  "Project Authority" means any Person or Entity that provides revenues to the Debtors for any portion of a Project, including, but not limited to, private clients and federal, state and local governmental agencies.

(ooo)  "Pro Rata Share" means with respect to Allowed Claims, the ratio (expressed as a percentage) of (a) the amount of an Allowed Claim in the Class to (b) the aggregate amount of the sum of (i) all Allowed Claims in the same Class and (ii) the aggregate maximum allowable amount of all Disputed Claims in the same Class for which a reserve must be established under the Plan.

(ppp)    "Record Date" means the date to be established by the Bankruptcy Court for purposes of determining those holders of Allowed Claims that are entitled to vote to accept or reject the Plan.

(qqq)   "Regions Bank" means Regions Bank.

(rrr)    "Regions Loan" means the loan from Regions Bank to the Debtor Maguire Corp. and non-debtor MEI as evidenced by the Regions Loan Documents.

(sss)    "Regions Loan Documents" means the following: (i) a Loan Agreement, dated July 31, 2009, between and among Regions Bank, the Maguire Corp. (as co-borrowers), MEI (as co-borrower) and Duart (as Guarantor), as amended by an Amended and Restated Revolving Loan Agreement, dated January 28, 2011, and as may be further amended; (ii) a Promissory Note, dated July 31, 2009, by the Maguire Corp. and MEI in favor of Regions Bank; (iii) a Security Agreement, dated July 31, 2009, between and among Regions Bank, the Maguire Corp. and MEI; (iv) a Continuing Guaranty, dated July 31, 2009 by Carlos A. Duart, reaffirmed

by a Reaffirmation of Continuing Guaranty of the Guarantor, dated January 28, 2011; (v) a Promissory Note, dated January 28, 2011, by the Maguire Corp. and MEI in favor of Regions Bank; (vi) a Security Agreement, dated January 28, 2011, between and among Regions Bank, the Maguire Corp. and MEI; and (vii) any related document evidencing the Regions Loan.

(ttt)    "Released Parties" means (i) the Debtors, (ii) the Plan Proponents, (iii) Duart, (iv) the Reorganized Debtors, (v) MEI, and (vi) any present director, manager, officer, member, equity holder, employee, agent, financial advisor, partner, attorney, other professional advisor or representative of the persons or parties described in clauses (i) through (v) hereof.

(uuu)    "Reorganized Debtors" means the Debtors, as reorganized as of the Effective Date in accordance with the Plan, and their successors.

(vvv)    "Schedules" means each of the Debtor's schedules of assets and liabilities and statement of financial affairs filed with the Clerk of the Bankruptcy Court pursuant to Bankruptcy Rule 1007 on November 22-23, 2011, as they have been or may be amended or supplemented from time to time through the Effective Date in accordance with Bankruptcy Rule 1009.

(www) "Schedule of Assumed Executory Contracts and Unexpired Leases" means the schedule to be included in the Plan Supplement and identifying (i) the executory contracts and unexpired leases to be assumed by the Debtors; and (ii) the amount of Cure Claims with respect to each executory contract or unexpired lease proposed to be assumed.

(xxx)    "Secured Claim" means any Claim: (i) secured by collateral, to the extent of the value of such collateral (a) as set forth in the Plan, (b) as agreed to by the holder of such Claim and the Debtors, (c) as determined by a Final Order in accordance with section 506 of the Bankruptcy Code; or (ii) in the event that such Claim is subject to a permissible setoff under section 553 of the Bankruptcy Code, to the extent of such permissible setoff.

(yyy)    "Secured Claim of Regions Bank" means the Secured Claim arising from, or related in any way to, the Regions Loan.

(zzz)    "Statutory Fees" means the fees due the United States Trustee pursuant to 28 U.S.C. § 1930.

(aaaa) "Subordinated Unsecured Claim" shall have the meaning provided in Section 4.6 herein ("Subordinated Unsecured Claims").

(bbbb) "Unclaimed Property" means any Distribution of Cash or any other property made to the holder of an Allowed Claim pursuant to the Plan that (i) is returned to the Reorganized Debtors or the Distribution Agent, as the case may be, as undeliverable and no appropriate forwarding address is received within the later of (a) 90 days after the Effective Date and (b) 90 days after such attempted Distribution by the Reorganized Debtors or the Distribution Agent, as the case may be, is made to such holder, or (ii) in the case of a Distribution made in the form of a check, is not negotiated within 90 days and no request for re-issuance is made within such 90-day period. The Debtors, the Reorganized Debtors, and the Distribution Agent, as the case may be, are under no affirmative obligation to attempt to locate any holder of an Allowed

Claim and may rely upon the procedure set forth in <u>Section 7.5</u> herein ("Delivery of Distributions").

(cccc) "Unimpaired" means, with respect to a Class of Claims, a Claim that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

(dddd) "Unliquidated Claim" means any claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law, or otherwise, as of the date on which such Claim is sought to be estimated.

(eeee) "U.S. Trustee" or "United States Trustee" shall mean the Office of the United States Trustee, 51 S.W. 1st Avenue, Suite 1204, Miami, FL 33130, Attn:  Steven D. Schneiderman.

1.3.    **_Interpretation_.**  For purposes of the Plan: (i) any reference herein to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (ii) any reference herein to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (iii) unless otherwise specified, all references herein to Articles, Sections, Schedules and Exhibits are references to Articles, Sections, Schedules and Exhibits of, or to, the Plan; (iv) the words "herein", "hereof" and "hereto" and others of similar import refer to the Plan in their entirety rather than to a particular portion of the Plan; (v) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (vi) any term used herein that is not defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be, unless the context shall otherwise require; (vii) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply; and (viii) wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, the feminine, and the neuter.

1.4.    **_Exhibits_.**  All exhibits to the Plan are annexed hereto.  The Debtors reserve the right to amend the exhibits.  All Plan Documents to be included as exhibits to the Plan Supplement (if any) shall be contained in a separate Plan Supplement exhibit volume, which shall be filed with the Clerk of the Bankruptcy Court not later than the date that is three (3) days prior to the last date on which votes to accept or reject the Plan are accepted.  Such Plan Supplement exhibit volume may be inspected in the office of the Clerk of the Bankruptcy Court during normal hours of operation of the Bankruptcy Court.  Such Plan Supplement exhibit volume shall also be available for download from the following website: http://www.kccllc.net/maguire.

## ARTICLE II

## PROVISIONS FOR PAYMENT OF ALLOWED ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS AND STATUTORY FEES

2.1.  ***Payment of Allowed Administrative Expense Claims; Administrative Expense Claims Bar Date***.  Each holder an Allowed Administrative Expense Claim (including Professional Claims) shall, in full satisfaction, settlement, discharge and release thereof, and in exchange thereof, be paid the Allowed amount of its Administrative Expense Claim, in full, in Cash, on the earlier of: (i) the Effective Date or five (5) Business Days after the date of a Final Order allowing such Administrative Expense Claim (or as soon as practicable thereafter); (ii) for Allowed Administrative Expense Claims that represent liabilities incurred by a Debtor in the ordinary course of business after the Petition Date, the date on which each such Claim becomes due in the ordinary course of such Debtor's business and in accordance with the terms and conditions of any agreement relating thereto; or (iii) at such later date or upon such other less favorable terms as may be mutually agreed upon between each such Creditor entitled to payment of an Allowed Administrative Expense Claim and the Reorganized Debtors.

With the exception of Professionals seeking the allowance and payment of Professional Claims, all requests for payment of Administrative Expense Claims shall be filed by the Administrative Expense Claims Bar Date established by the Bankruptcy Court; and if such requests for payment of Administrative Expense Claims are not so timely filed, the Claims will be Disallowed automatically and deemed forever barred and the holders of such Claims shall be forever barred, estopped and enjoined from asserting such Claims in any manner against the Debtors, the Estates or the Reorganized Debtors, and without the need for any objection by the Debtors or the Reorganized Debtors, as the case may be, and without any further notice or action, order or approval of the Bankruptcy Court.

2.2.  ***Professional Claims Bar Date***.  All requests for final allowances of Professional Claims shall be filed by the Bar Date for Professional Claims established by the Bankruptcy Court.

2.3.  ***Priority Tax Claims***.  Each holder an Allowed Priority Tax Claim shall, in full satisfaction, settlement, discharge and release thereof, and in exchange thereof, be paid the Allowed amount of its Priority Tax Claim, in full, in Cash, including statutory interest, on the later of: (i) the Effective Date (or as soon as practicable thereafter) or five (5) Business Days after the date of a Final Order allowing such Priority Tax Claim; or (ii) upon such other dates and terms as may be agreed upon by the holder of any such Allowed Priority Tax Claim and the Reorganized Debtors.

2.4.  ***U.S. Trustee; Claims for Statutory Fees; Quarterly Reports***.  Within ten (10) days of the Confirmation Date, the Debtors shall pay the U.S. Trustee the appropriate sums required pursuant to 28 U.S.C. § 1930(a)(6) for the relevant period and provide an appropriate affidavit indicating cash disbursements for the relevant period. Until the earlier of the closing of the applicable Chapter 11 Case by the issuance of a final decree by the Bankruptcy Court, or upon entry of an order of the Bankruptcy Court dismissing the applicable Chapter 11 Case, or converting the applicable Chapter 11 Case to another chapter under the Bankruptcy Code, and

notwithstanding anything contained herein to the contrary, the Reorganized Debtors shall (i) pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) for post-confirmation periods for each Reorganized Debtor within the time periods set forth in 28 U.S.C. § 1930(a)(6) and (ii) within 45 days of the end of each fiscal quarter, file with the Bankruptcy Court and submit to the U.S. Trustee quarterly reports and affidavits setting forth all receipts and disbursements of the Reorganized Debtors as required by the U.S. Trustee guidelines. To date, the Debtors have paid all fees due and owing to the U.S. Trustee, and the Reorganized Debtors anticipate paying all such fees through confirmation of the Plan and thereafter as provided herein.

The Statutory Fees paid by each Debtor to the U.S. Trustee and any fees paid by any Debtor to the Clerk of the Bankruptcy Court from the Petition Date through the Effective Date shall not be affected by the substantive consolidation proposed hereunder. In the event the Plan is confirmed and the Debtors are substantively consolidated as described herein, then such substantive consolidation (i) shall not be retroactive to the Petition Date for the purpose of payment of Statutory Fees, and (ii) shall not affect the obligation of the separate Reorganized Debtors to continue to file their respective operating and Quarterly Reports and pay U.S. Trustees fees until the earlier of the closing of the Debtors' cases by the issuance of a final decree by the Court, or upon the entry of an Order by the Court dismissing the Debtors' chapter 11 cases or converting the Debtors' chapter 11 cases to another chapter under the United States Bankruptcy Code.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

3.1.    **_Generally_**.    All Claims and Equity Interests, except Administrative Expense Claims (including Professional Claims), Priority Tax Claims and Claims for Statutory Fees, are placed in Classes as summarized below in Section 3.2 ("Summary") and described in Article IV hereof ("Impairment and Treatment of Claims and Equity Interests"). A Claim or Equity Interest is placed in a particular Class only to the extent that such Claim or Equity Interest is an Allowed Claim or Equity Interest in that Class and such Claim or Equity Interest has not been paid, released, or otherwise settled or paid prior to the Effective Date, and is classified in other Classes to the extent that any remainder of the Claim or Equity Interest qualifies within the description of such other Classes.

3.2.    **_Summary_**.    The following table designates the Classes of Claims against and Equity Interests in the Debtors and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan and (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code.

| CLASS | DESIGNATION | STATUS | ENTITLED TO VOTE? |
|-------|-------------|--------|-------------------|
| Class 1 | Priority Claims | Unimpaired | No; Deemed to Accept the Plan |
| Class 2 | Secured Claim of Regions Bank | Unimpaired | No; Deemed to |

| | | | Accept the Plan |
|---|---|---|---|
| Class 3 | Other Secured Claims | Unimpaired | No; Deemed to Accept the Plan |
| Class 4 | General Unsecured Claims Necessary for the Continued Operation of the Reorganized Debtors | Impaired | Yes |
| Class 5 | General Unsecured Claims Not Necessary for the Continued Operation of the Reorganized Debtors | Impaired | Yes |
| Class 6 | Subordinated Unsecured Claims | Impaired | No; Deemed to Reject the Plan |
| Class 7 | Equity Interests | Impaired | No; Deemed to Reject the Plan |

## ARTICLE IV

## IMPAIRMENT AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

4.1.    **_Class 1._** _Priority Claims._

(a)    _Classification._ Class 1 consists of the Allowed Priority Claims.

(b)    _Treatment._ Each holder of an Allowed Priority Claim shall be paid in full, in Cash, on the later of the Effective Date or as soon as practicable after the date on which such Priority Claim becomes Allowed, in full settlement, satisfaction, release and discharge of an Allowed Priority Claim.

(c)    _Voting._ Class 1 is Unimpaired. The holders of Claims in Class 1 are deemed to accept the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

4.2.    **_Class 2._** _Secured Claim of Regions Bank._

(a)    _Classification._ Class 2 consists of the Allowed Secured Claim of Regions Bank.

(b)    _Treatment._ The holder of the Secured Claim of Regions Bank has been satisfied in full during the Chapter 11 Cases, in full settlement, satisfaction, release and discharge of the Allowed Secured Claim of Regions Bank. As of the Effective Date, the Regions Loan Documents (including, any notes and any obligations of the Debtors thereunder) shall be discharged and be of no further forced or effect against the Debtors or any property that secured the Regions Loan, and the holder thereof shall have no rights against the Debtors or the property that secured the Regions Loan; provided, however, that this Section shall not affect the pursuit of any Cause of Action by the Debtors or the Reorganized Debtors, as the case may be.

(c)    _Voting._ Class 2 is Unimpaired. The holder of the Claim in Class 2 is deemed to accept the Plan and, accordingly, is not entitled to vote to accept or reject the Plan.

4.3.    ***Class 3.***  *Other Secured Claims.*

      (a)    *Classification.*  Class 3 consists of the Allowed Other Secured Claims.

      (b)    *Treatment.*  On the Effective Date, or as soon thereafter as practicable, each holder of an Allowed Other Secured Claim, except to the extent that the holder of such Claim agrees to a less favorable treatment, shall receive, on account of its Claim against the Debtors, one of the following Distributions in full settlement, satisfaction, release and discharge of an Allowed Other Secured Claim: (i) the payment of such holder's Allowed Other Secured Claim in full in Cash; (ii) the sale or disposition proceeds of the property securing any Allowed Other Secured Claim to the extent of the value of its interest in such property; (iii) the surrender to the holder of any Allowed Other Secured Claim of the property securing such Claim; or (iv) such other Distributions as shall be necessary to satisfy the requirements of chapter 11 of the Bankruptcy Code.  The manner and treatment of each Allowed Other Secured Claim (if any) shall be determined by the Debtors and transmitted in writing to the holder of such Allowed Other Secured Claim prior to the Effective Date of the Plan.

      (c)    *Voting.*  Class 3 is Unimpaired.  The holders of Claims in Class 3 are deemed to accept the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

4.4.    ***Class 4.***  *General Unsecured Claims Necessary for the Continued Operation of the Reorganized Debtors.*

      (a)    *Classification.*  Class 4 consists of the Allowed General Unsecured Claims Necessary for the Continued Operation of the Reorganized Debtors and are set forth on Exhibit 4.4 to the Plan.

      (b)    *Treatment.*  On the Effective Date, or as soon thereafter as practicable, each holder of an Allowed General Unsecured Claim Necessary for the Continued Operation of the Reorganized Debtors, except to the extent that the holder of such Claim agrees to a less favorable treatment, shall receive, on account of its Claim against the Debtors, the following Distributions, in full settlement, satisfaction, release and discharge of an Allowed General Unsecured Claim Necessary for the Continued Operation of the Reorganized Debtors:

      (i)    100% of the Allowed Class 4 Claim paid in Cash, without interest from the Effective Date until paid, payable by the Reorganized Debtors on the Class 4 Payment Dates during the Class 4 Distribution Period until paid in full. The Reorganized Debtors will begin to make Distributions to the holders of Allowed Class 4 Claims only after the Debtors or the Reorganized Debtors, as the case may be, have received payment from the relevant Project Authority for the Project on which a particular Allowed Class 4 Claim arose and which pertains to the particular Allowed Class 4 Claim. The Debtors will make their best efforts to make the monthly Distributions to holders of Allowed Class 4 Claims in line with the Financial Projections; provided, however, the Debtors reserve the right to modify the timing of the Distributions to holders of Allowed Class 4 Claims during the Class 4 Distribution Period (but all such Distributions will be made prior to the expiration of the Class 4 Distribution Period) based upon the Debtors'

actual cash flow, including accelerating payments to the holders of Allowed Class 4 Claims. Distributions in respect of Allowed Class 4 Claims may be made from the Duart Contribution and the Cash Flow, but are not limited to those sources of payment, and are personally guaranteed by Duart pursuant to the Duart Guaranty.

(ii)    If a Class 4 Claim is Disputed, then on any Class 4 Payment Date (on and after the Effective Date), the Distribution to which such Disputed Class 4 Claim would be entitled if it were Allowed at such time shall be deposited in the Disputed Claims Reserve and held until such time as the claim is Allowed and thereafter paid by the Reorganized Debtors from the Disputed Claims Reserve. If any alleged Class 4 Claim remains Disputed on the next succeeding Class 4 Payment Date(s), then the additional payments that would otherwise be due on such Class 4 Payment Date(s) if such Claim was an Allowed Class 4 Claim shall also be deposited in the Disputed Claims Reserve and held until such time as the claim is Allowed and thereafter paid by the Reorganized Debtors from the Disputed Claims Reserve or otherwise distributed pursuant to the terms of the Plan.

(c)    *Net Recoveries from Causes of Action.* Holders of Allowed Claims in Class 4 will not be entitled to any net recoveries obtained from Causes of Action.

(d)    *Avoidance Actions.* Holders of Claims in Class 4 shall be released from any liability in respect of Avoidance Actions.

(e)    *Non-Consensual Confirmation.* In the event that Class 4 rejects the Plan, the Debtors reserve the right to seek to confirm the Plan under section 1129(b) of the Bankruptcy Code, and, in such event, the Debtors reserve the right, pursuant to Sections 5.3 ("Nonconsensual Confirmation") and 13.1 ("Modification of the Plan") hereof, to alter, amend or modify the Plan, with the consent of the Plan Proponents, such consents not to be unreasonably withheld, to offer different treatment to Class 4, to the extent that the Debtors determine that such modifications are necessary to comply with the requirements of section 1129(b) of the Bankruptcy Code.

(f)    *Voting.* Class 4 is Impaired. The holders of Claims in Class 4 are entitled to vote to accept or reject the Plan.

4.5.    **Class 5.** *General Unsecured Claims Not Necessary for the Continued Operation of the Reorganized Debtors.*

(a)    *Classification.* Class 5 consists of the Allowed General Unsecured Claims Not Necessary for the Continued Operation of the Reorganized Debtors, and includes all Allowed General Unsecured Claims not otherwise included in Class 4 of the Plan, including, but not limited to, any Claims set forth on Exhibit 4.5 to the Plan that are Allowed Claims and any Allowed General Unsecured Claim that is a deficiency Claim related to any Allowed Secured Claim (if any), whether or not such Claim is set forth on Exhibit 4.5 of the Plan.

(b)    *Treatment.* Each holder of a General Unsecured Claim Not Necessary for the Continued Operation of the Reorganized Debtors, except to the extent that the holder of such Claim agrees to a less favorable treatment, shall receive, on account of its Claim against the

Debtors, the following Distribution, in full settlement, satisfaction, release and discharge of an Allowed General Unsecured Claim Not Necessary for the Continued Operation of the Reorganized Debtors:

      (i)      Each holder of an Allowed Class 5 Claim as of the Effective Date shall receive from the Reorganized Debtors a Pro-Rata Share of a combined Distribution totaling $925,000 in Cash over a four-year period comprised of: (i) the Class 5 Claims Distribution in the amount of $250,000 within 30 days of the Effective Date of the Plan (the Class 5 Claims Distribution will be funded by the Duart Contribution and is personally guaranteed by Duart pursuant to the Duart Guaranty); (ii) $150,000, within 14 days of the first anniversary of the Effective Date of the Plan; and (iii) $175,000, within 14 days of each of the second, third and fourth anniversaries of the Effective Date of the Plan.

      (ii)      If a Class 5 Claim is Disputed on or after the Effective Date, the Reorganized Debtors shall deposit in the Disputed Claims Reserve the amount of such Disputed Class 5 Claim's Pro-Rata Share of the Class 5 Claims Distribution and/or other potential Distribution in Class 5 (e.g., the Disputed Class 5 Claim's Pro-Rata Share of the total $925,000 to be Distributed to holders of Allowed Class 5 Claims), and such amounts shall be held in the Disputed Claims Reserve until such time as the claim is Allowed and thereafter paid by the Reorganized Debtors from the Disputed Claims Reserve or otherwise distributed pursuant to the terms of the Plan. Once a Class 5 Claim becomes Allowed by Final Order or otherwise pursuant to the terms of the Plan, the holder of the Allowed Class 5 Claim shall receive a Distribution or Distributions in Cash from the Reorganized Debtors representing such holder's Pro-Rata Share of the Class 5 Claims Distribution and/or other Distribution(s) pursuant to the terms of Class 5 of the Plan.

**No presently identified Class 5 Claim may be reclassified as a Class 4 Claim after the Confirmation Hearing commences. Additionally, no presently identified Class 5 Claim may be reclassified as a Class 4 Claim prior to the Confirmation Hearing without the consent of the Plan Proponents.**

      (c)    *Net Recoveries from Causes of Action.*  Holders of Allowed Claims in Class 5 will be entitled to Pro Rata Shares of net recoveries, if any, obtained from Causes of Action.

      (d)    *Non-Consensual Confirmation.*  In the event that Class 5 rejects the Plan, the Debtors reserve the right to seek to confirm the Plan under section 1129(b) of the Bankruptcy Code, and, in such event, the Debtors reserve the right, pursuant to Sections 5.3 ("Nonconsensual Confirmation") and 13.1 ("Modification of the Plan") hereof, to alter, amend or modify the Plan, with the consent of the Plan Proponents, such consents not to be unreasonably withheld, to offer different treatment to Class 5, to the extent that the Debtors determine that such modifications are necessary to comply with the requirements of section 1129(b) of the Bankruptcy Code.

(e)    *Voting*. Class 5 is Impaired. The holders of Claims in Class 5 are entitled to vote to accept or reject the Plan.

4.6.    ***Class 6***. *Subordinated Unsecured Claims*.

(a)    *Classification*. Class 6 consists of the Allowed Subordinated Unsecured Claims and are set forth on Exhibit 4.6 to the Plan.

(b)    *Treatment*. It is expected that each Allowed Subordinated Unsecured Claim shall receive nothing under the Plan. However, in the event that holders of Allowed Claims in Class 5 of the Plan are paid in full through Distributions from a combination of the Class 5 Claims Distribution ($250,000), additional Distributions to Class 5 described in the Plan ($675,000) and the net recoveries, if any, obtained from Causes of Action, then the holders of Allowed Claims in Class 6 will be entitled to Pro Rata Shares of net recoveries, if any, obtained from Causes of Action.

(c)    *Voting*. Class 6 is Impaired. The holders of Claims in Class 6 are deemed to reject the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

4.7.    ***Class 7***. *Equity Interests*.

(a)    *Classification*. Class 7 consists of Equity Interests in each of the Debtors.

(b)    *Treatment*. No Distribution shall be made under the Plan from the Estates in respect of the Equity Interests. On the Effective Date, the certificates that previously evidenced ownership of the Equity Interests shall be cancelled and shall be null and void, the holder(s) thereof shall no longer have any rights in respect of the Equity Interests, and such certificates shall not evidence any rights under the Plan.

(c)    *Voting*. Class 7 is Impaired. The holders of Equity Interests in Class 7 are deemed to reject the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

## ARTICLE V

### ACCEPTANCE, REJECTION, AMENDMENT AND REVOCATION OR WITHDRAWAL OF THE PLAN

5.1.    ***Classes Entitled to Vote***. Each holder of a Claim, as of the Record Date, in an Impaired Class, other than those Classes that are deemed to reject the Plan, shall be entitled to vote to accept or reject the Plan, in its sole and absolute discretion, subject to applicable law. Classes 1 2 and 3 are deemed to have accepted the Plan, and Classes 6 and 7 are deemed to have rejected the Plan. Votes from holders of Claims in Classes 4 and 5 will be solicited.

5.2.    ***Acceptance by Class of Claims***. An Impaired Class of Claims shall be deemed to accept the Plan if (a) holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the holders (other than any holder designated

under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

5.3.    ***Nonconsensual Confirmation***.  In the event that any Class of Claims entitled to vote shall not accept the Plan by the requisite statutory majority required by section 1129(a) of the Bankruptcy Code, the Debtors reserve the right to (a) request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code with respect to such non-accepting Class, in which case the Plan shall constitute a motion for such relief, or (b) alter, amend or modify the Plan in accordance with Sections 13.1 ("Modification of the Plan"). The Debtors shall exercise the right to seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code.

5.4.    ***Revocation or Withdrawal; No Admissions***.

(a)    *Right to Revoke or Withdraw*.  The Plan may be revoked or withdrawn prior to the Confirmation Date by the Debtors in their sole discretion.

(b)    *Effect of Withdrawal or Revocation; No Admissions*.  If the Plan is revoked or withdrawn prior to the Confirmation Date, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims or defenses or any admission or statement against interest by any Debtor or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving any Debtor.

5.5.    ***Amendment of Plan Documents***.  From and after the Effective Date, the authority to amend, modify, or supplement the Plan Supplement, the Exhibits to the Plan Supplement and the Exhibits to the Plan and any documents attached to such Plan Supplement, Exhibits to the Plan Supplement and Exhibits to the Plan shall be as provided in such Plan Supplement, Exhibits to the Plan Supplement and Exhibits to the Plan and their respective attachments.

5.6.    ***Removal of Debtors***.  At the sole discretion of the Debtors, a Debtor may be removed from the Plan.  In such event, the Plan will omit any treatment of the assets and liabilities of such Debtor, unless otherwise agreed.  The removal of any Debtor from the Plan will not affect the Plan with respect to any other Debtor.

## ARTICLE VI

## MEANS OF IMPLEMENTING THE PLAN

6.1.    ***Procedural Substantive Consolidation***.    The Plan is premised upon the substantive consolidation of the Debtors solely for purposes of voting, confirmation and Distribution.  On and after the Effective Date (i) all assets and liabilities of the Debtors shall be treated for purposes of the Plan as though they were merged, (ii) all guarantees of the Debtors of payment, performance or collection of obligations of any other of the Debtors shall be eliminated and cancelled, (iii) all joint obligations of two or more of the Debtors and all multiple Claims against such entities on account of such joint obligations, shall be considered a single Claim against the Debtors, (iv) all intercompany claims and obligations between one Debtor and any of the other Debtors, including as a result of the rejection of any executory contract or unexpired

lease, shall be eliminated, extinguished and cancelled, and (v) any Claim filed against any of the Debtors shall be deemed filed against the consolidated Debtors and shall be one Claim against and a single obligation of the consolidated Debtors.

Except as otherwise provided in the Plan (i) all property of each Debtor shall vest in each respective Reorganized Debtor, free and clear of all Claims, Liens, encumbrances, charges or other interests and (ii) each Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect before the Effective Date. Consistent with the substantive consolidation of the Debtors provided for by the Plan, on the Effective Date, the consolidation of the Debtors' Estates shall be effective and effectuated pursuant to the Confirmation Order without any further action by the stockholders or directors of any of the Debtors.

The entry of the Confirmation Order shall constitute approval by the Bankruptcy Court, pursuant to sections 105(a) and 1123(a)(5)(C) of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of the Debtors' respective Estates, solely for purposes of voting on, confirmation of and Distributions hereunder, and for no other purpose.

Notwithstanding the substantive consolidation of the Debtors, respectively, as provided herein, the substantive consolidation shall be solely for purposes of voting on, confirmation of and Distributions hereunder and specifically shall not:

(a)     affect the treatment proposed by a Debtor to any holder of an Allowed Secured Claim of Regions Bank or Allowed Other Secured Claim against such Debtor, and after the Effective Date, such claim shall be unaffected by such substantive consolidation;

(b)     affect any Liens that are maintained, recognized, or preserved hereunder shall be unaffected by the substantive consolidation;

(c)     affect any claims under or with respect to any insurance policy of any Debtor (or any right to the proceeds of any such policy or policies) which shall be unaffected by the substantive consolidation,

(d)     affect the legal and organizational structure of each such Debtor from and after the Effective Date;

(e)     destroy or otherwise affect the separate corporate existence of each Debtor and the ownership interest in each Debtor; or

(f)     affect or change any Cause of Action or other claim that any Debtor would possess had any of the Chapter 11 Cases not been substantively consolidated as provided herein or any defenses that any defendant in respect of such Causes of Action would have in connection therewith; provided, however, that the Debtors believe that they do not have the legal right to, and therefore, the Debtors do not intend to pursue so-called "wrong payor" constructive fraudulent causes of action;

(g)     divest any Debtor of any tax attributes; or

(h)     affect any Statutory Fees paid by, or accrued in respect of, any Debtor to the U.S. Trustee or the Clerk of the Bankruptcy Court from the Petition Date through the Effective Date.

The Plan shall be deemed to be a motion, pursuant to Bankruptcy Rule 9013, by the Debtors for limited and partial substantive consolidation with respect to the Plan as set forth herein. Any objection by an affected Creditor to such consolidation shall be treated as an objection to Confirmation and shall be determined by the Bankruptcy Court at the Confirmation Hearing. Failure to timely object to substantive consolidation may result in consolidation of the Debtors in accordance herewith, without further hearing.

A detailed discussion of the facts and circumstances supporting substantive consolidation is contained in the Disclosure Statement.

6.2.     **_Source of Funding for Plan Distributions._**  The Debtors or the Reorganized Debtors, as the case may be, will use the (i) Duart Contribution, (ii) available Cash on the Effective Date, (iii) Cash Flow on and after the Effective Date, or, where applicable, and (iv) Disputed Claims Reserve, to make all Distributions required to be made by the Debtors or the Reorganized Debtors, as the case may be, on and after the Effective Date under the Plan. In addition, the Distributions to certain holders of Allowed Claims under the Plan are guaranteed by the Duart Guaranty.

6.3.     **_Section 1146 Exemption._**  Pursuant to section 1146 of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any equity security or notes, or the creation, making, assignment delivery or recording of any mortgage, deed of trust, instrument of transfer, pursuant to, in implementation of or as contemplated by the Plan or any Plan Document, or the vesting, re-vesting, transfer or sale of any property of, by or in the Debtors or their Estates or Reorganized Debtors pursuant to, in implementation of or as contemplated by the Plan or any Plan Document, or any transaction arising out of, contemplated by or in any way related to the foregoing, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, sales and use Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall, by the Confirmation Order, be directed to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

6.4.     **_Corporate Action._**  All actions contemplated to be performed by the Debtors or the Reorganized Debtors pursuant to the Plan, or any corporate action to be taken by or required of the Debtors or the Reorganized Debtors, shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by the shareholders, partners, members or managers of the Debtors or the Reorganized Debtors.    All Persons, the Reorganized Debtors, Governmental Units, title agencies, licensing agencies and offices of recordation may rely upon

the authority vested in the Debtors' officers, or managers to act on the Debtors' behalf in order to effectuate the Plan and the transactions contemplated herein.

6.5.  ***Vesting of Assets in the Reorganized Debtors***.  Except as otherwise provided in the Plan or the other Plan Documents, pursuant to sections 1123(a)(5), 1123(b)(3) and 1141(b) and (c) of the Bankruptcy Code, on the Effective Date, all property of each Estate shall vest in the in each respective Reorganized Debtor free and clear of all Liens, Claims, charges, or other encumbrances.  As of the Effective Date, the Reorganized Debtors may operate their businesses and use, acquire, and dispose of their property, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.  All privileges with respect to the property of the Estates, including the attorney/client privilege, to which the Debtors are entitled shall automatically vest in, and may be asserted by or waived on behalf of, the Reorganized Debtors.

6.6.  ***Distributions.***  The Distributions will be made in accordance with the Plan by the Debtors, the Reorganized Debtors, and/or the Distribution Agent.

6.7.  ***Surrender and Cancellation of Notes, Instruments, Certificates and Other Documents Evidencing Claims or Equity Interests.***  On the Effective Date, except to the extent otherwise provided in the Plan, all notes, instruments, certificates, and other documents evidencing Claims or Equity Interests will be cancelled and the obligations of the Debtors discharged in accordance with section 1141(d)(1) of the Bankruptcy Code.

6.8.  ***Issuance of New Equity.***  On the Effective Date, all existing Equity Interests of the Debtors will be extinguished and terminate for all purposes whatsoever, and no right, title, claim or interest arising out of or in connection with the existing Equity Interests in the Debtors shall survive the Effective Date or be asserted against the Debtors, Reorganized Debtors, Plan Proponents or otherwise.  On the Effective Date, the Reorganized Debtors will issue 100% of their equity interests to the Plan Proponents or their designee(s) free and clear of all Liens, Claims, interests and encumbrances in exchange for the consideration of: (a) the Duart Contribution; (b) the subordination and consent to extinguishment of Mr. Duart's asserted General Unsecured Claim in the amount of $338,500 (which is classified as a Claim in Class 6 ("Subordinated Unsecured Claims") by the Plan); and (c) the furnishing by Duart of the Duart Guarantee.  Carlos Duart will not receive any salary from the Reorganized Debtors, or any dividends or distributions from the Reorganized Debtors (other than customary tax distributions) until (i) all Allowed Claims in Class 4 ("General Unsecured Claims Necessary for the Continued Operation of the Reorganized Debtors") are paid in full to the extent provided in the Plan, and Disputed Claims in such Class 4 are resolved, and (ii) the Class 5 Claims Distribution has been fully funded.

6.9.  ***Continued Corporate Existence of the Reorganized Debtors***.  Except as otherwise provided in the Plan, each of the Reorganized Debtors will exist after the Effective Date as a reorganized, separate corporate entity or other business entity form, with all of the powers of a corporation or other business form under applicable law in the jurisdiction in which such Debtor is incorporated or otherwise formed and pursuant to its certificate of incorporation and bylaws or other organizational documents in effect before the Effective Date, except to the extent such certificate of incorporation or bylaws (or other formation documents in the case of a

limited liability company or limited partnership) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be authorized pursuant hereto and without the need for any other approvals, authorizations, actions or consents. Notwithstanding, each of the Debtors or Reorganized Debtors may change its status of incorporation or alter its corporate structure or business form (either through a merger, consolidation, restructuring, conversion, disposition, liquidation, dissolution, or otherwise) on or after the Effective Date as may be determined by the Debtors to be appropriate. In each case in which the surviving, resulting, or acquiring company in any such transaction is a successor to a Debtor, such successor company shall perform the obligations of the applicable Debtor under the Plan, if any, including, to pay or otherwise satisfy the Allowed Claims against such Debtor.

6.10. ***Amendment of the Reorganized Debtors' Governance Documents***. As of the Effective Date, and without any further action by the stockholders, directors or members of each Debtor or Reorganized Debtor, and to the extent necessary to comply with section 1123(a)(6) of the Bankruptcy Code, the Debtors' articles of incorporation and by-laws (or analogous governance documents) shall be amended and restated, in form and substance consistent with the Plan, to provide for, among other things, (i) to provide for such provisions, terms, and conditions necessary to comply, conform with, authorize and implement the terms, conditions, requirements, and all acts necessary to implement the Plan, including the issuance of the common stock or similar equity interests in the Reorganized Debtors (constituting 100% of the issued and outstanding capital stock of the Reorganized Debtors, to be issued under the Plan) and (ii) to prohibit the issuance of nonvoting equity securities. The officers of the Reorganized Debtors are authorized to file such articles of incorporation and by-laws (or analogous governance documents) with the appropriate authority(ies) without shareholder approval or any other action. After the Effective Date, the Reorganized Debtors may amend and/or restate their articles of incorporation and by-laws as permitted under applicable law.

6.11. ***Directors, Officers, Members and Managers of the Reorganized Debtors***. Subject to any requirement of Bankruptcy Court approval pursuant to section 1129(a)(5) of the Bankruptcy Code, as of the Effective Date, the directors, officers, partners, members and managers, as the case may be, of each of the Debtors immediately prior to the Effective Date shall be deemed to be the directors, officers, partners, members and managers, as the case may be, of each of the Reorganized Debtors without any further action by any party. Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors have disclosed, in the Disclosure Statement or the Plan Supplement, the identity and affiliation of any individuals proposed to serve as the initial partners, members and managers of the Reorganized Debtors.

On and after the Effective Date, the operations of the Reorganized Debtors shall continue to be the responsibility of their directors, officers, partners, members and managers, as the case may be, or as set forth in the applicable existing organizational or operational documents of each of the Debtors. Each director, officer, partner, member and manager, as applicable, of the Reorganized Debtors shall serve from and after the Effective Date until his or her successor is duly elected or appointed and qualified or until his or her earlier death, resignation or removal in accordance with the applicable articles or certificate of incorporation, operating agreement or other organizational documents of the Reorganized Debtors.

From and after the Confirmation Date, the directors, officers, partners, members and managers, as applicable, of the Debtors and the Reorganized Debtors, as the case may be, shall have all powers accorded by law to put into effect and carry out the Plan and the Confirmation Order.

6.12.  ***Effectuating Documents and Further Transactions***.  On or before the Effective Date, and without the need for any further order or authority, the Debtors shall file with the Bankruptcy Court or execute, as appropriate, such agreements and other documents that are in form and substance satisfactory to the Plan Proponents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors, the Reorganized Debtors, and any other necessary party, as applicable, shall perform all actions reasonably contemplated regarding the implementation of the Plan.  Each of the directors, officers, partners, members and managers, as the case may be, of the Debtors and the Reorganized Debtors is authorized, without the need for any further order or authority, (i) to execute, deliver, file, or record such contracts, instruments, releases, indentures, mortgages, and other agreements or documents and take such actions as may be necessary or appropriate to implement or consummate the Plan, notes or securities issued pursuant to the Plan, and (ii) to undertake any other action on behalf of the Debtors to implement or consummate the Plan.  Each of the matters provided for under the Plan involving the corporate structure of the Debtors or corporate action to be taken by or required of any Debtor will, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized, approved, and (to the extent taken before the Effective Date) ratified in all respects without any requirement of further action by any stockholder, creditor, or director of the Debtor

6.13.  ***Section 1145 Determination***.  The Plan Proponents believe that the offer, purchase, sale and issuance of securities under the Plan is exempt from the registration requirements under state and federal securities laws.

6.14.  ***Preservation of Causes of Action***.  Except as provided in Section 11.10 ("Releases"), the Debtors (prior to the Effective Date) and the Reorganized Debtors (on and after the Effective Date) shall retain all Causes of Action.  On the Effective Date, the Causes of Action shall be preserved and vested in the Reorganized Debtors for the benefit of holders of Allowed Claims in Class 5 ("General Unsecured Claims Not Necessary for the Continued Operation of the Reorganized Debtors").  The Reorganized Debtors will have the right, in their sole and absolute discretion, to pursue, not pursue, enforce, file, settle, compromise, release, withdraw, arbitrate or litigate any Cause of Action without seeking any approval from the Bankruptcy Court except as provided in Section 6.15 ("Prosecution and Settlement of Causes of Action").  Any net recovery obtained by the Reorganized Debtors from Causes of Action shall be distributed by the Reorganized Debtors in Pro Rata Shares to the holders of Allowed Claims in Class 5 ("General Unsecured Claims Not Necessary for the Continued Operation of the Reorganized Debtors").

The Debtors are currently not in a position to express an opinion on the merits of any of the Causes of Action or on the recoverability of any amounts as a result of any such Causes of Action.  **FOR PURPOSES OF PROVIDING NOTICE, THE DEBTORS STATE THAT ANY PARTY IN INTEREST THAT ENGAGED IN BUSINESS OR OTHER TRANSACTIONS WITH ANY OF THE DEBTORS PREPETITION OR THAT**

**RECEIVED PAYMENTS FROM ANY OF THE DEBTORS PREPETITION MAY BE SUBJECT TO LITIGATION TO THE EXTENT THAT APPLICABLE BANKRUPTCY OR NON-BANKRUPTCY LAW SUPPORTS SUCH LITIGATION.** Unless otherwise covered by insurance, the Reorganized Debtors will fund the costs and expenses (including legal fees) to pursue the Causes of Action.

No Creditor or other party should vote for the Plan or otherwise rely on the Confirmation of the Plan or the entry of the Confirmation Order in order to obtain, or on the belief that it will obtain, any defense to any Cause of Action. No Creditor or other party should act or refrain from acting on the belief that it will obtain any defense to any Cause of Action. **ADDITIONALLY, THE PLAN DOES NOT, AND IS NOT INTENDED TO, RELEASE ANY CAUSE OF ACTION OR OBJECTIONS TO CLAIMS, AND ALL SUCH RIGHTS ARE SPECIFICALLY RESERVED IN FAVOR OF THE DEBTORS AND THE REORGANIZED DEBTORS.** Creditors are advised that legal rights, claims and rights of action the Debtors may have against them, if they exist, are retained under the Plan for prosecution unless a specific order of the Bankruptcy Court authorizes the Debtors to release such claims. As such, Creditors are cautioned not to rely on (i) the absence of the listing of any legal right, claim or right of action against a particular Creditor in the Disclosure Statement, the Plan, or the Schedules, or (ii) the absence of litigation or demand prior to the Effective Date of the Plan as any indication that the Debtors or Reorganized Debtors do not possess or do not intend to prosecute a particular claim or Litigation Claim if a particular Creditor votes to accept the Plan. It is the expressed intention of the Plan to preserve rights, objections to Claims, and rights of action of the Debtors, whether now known or unknown, for the benefit of Reorganized Debtors. A Cause of Action shall not, under any circumstances, be waived as a result of the failure of the Debtors to describe such Cause of Action with specificity in the Plan or in the Disclosure Statement; nor shall the Reorganized Debtors, as a result of such failure, be estopped or precluded under any theory from pursuing any such Cause of Action. Nothing in the Plan operates as a release of any Cause of Action.

The Debtors do not presently know the full extent of the Causes of Action and, for purposes of voting on the Plan, all Creditors are advised that the Reorganized Debtors will have substantially the same rights that a Chapter 7 trustee would have with respect to the Causes of Action. Accordingly, neither a vote to accept the Plan by any Creditor nor the entry of the Confirmation Order will act as a release, waiver, bar or estoppel of any Cause of Action against such Creditor or any other Person or Entity, unless such Creditor, Person or Entity is specifically identified by name as a Released Party in the Plan, in the Confirmation Order, or in any other Final Order of the Bankruptcy Court. Confirmation of the Plan and entry of the Confirmation Order is not intended to and shall not be deemed to have any res judicata or collateral estoppel or other preclusive effect that would precede, preclude, or inhibit prosecution of such Cause of Action following Confirmation of the Plan.

The Estates shall remain open, even if the Bankruptcy Cases shall have been closed, as to any and all Causes of Action until such time as the Causes of Action have been fully administered and the recoveries therefrom have been received by Reorganized Debtors.

6.15. ***Prosecution and Settlement of Causes of Action***. The Reorganized Debtors (a) may commence or continue in any appropriate court, tribunal or any other appropriate setting

(e.g., American Arbitration Association or other arbitration association) any suit or other proceeding for the enforcement of any Cause of Action which the Debtors had or had power to assert immediately prior to the Effective Date, and (b) may settle or adjust such Cause of Action; provided, however, that from and after the Effective Date, the Reorganized Debtors shall be authorized to compromise and settle any Cause of Action or objection to a Claim upon approval by the Bankruptcy Court after notice and a hearing.

## ARTICLE VII

### DISTRIBUTIONS

7.1.    ***Manner of Distributions Under the Plan***.  Any Distribution pursuant to the Plan, to the extent posted in the United States mail, shall be deemed made when deposited by the Debtors or the Reorganized Debtors (or their respective agent(s)), as applicable, into the United States mail.  At the option of the Debtors or the Reorganized Debtors, as the case may be, any Cash payment to be made pursuant to the Plan shall be made, at the election of the Debtors or the Reorganized Debtors, as the case may be, by check drawn on a domestic bank, by wire transfer, or by ACH, from a domestic bank, or other method mutually agreed upon by the holder of the Allowed Claim and the Debtors or the Reorganized Debtors.  Whenever any Distribution to be made under the Plan shall be due on a day other than a Business Day, such Distribution shall instead be made, without interest, on the immediately succeeding Business Day, but shall be deemed to have been made on that due date.

7.2.    ***Timing of Distributions***.  Except for Distributions made on the initial Distribution date, any Distribution to be made by any Debtor or the Reorganized Debtors (or their respective agent(s)), as the case may be, pursuant to the Plan shall be deemed to have been timely made if made within ten (10) days after the time therefore specified in the Plan.

7.3.    ***Entity Making Distributions***.    Except as otherwise provided in the Plan, Distributions to holders of Allowed Claims shall be made, and the responsibility for holding the Disputed Claims Reserve will be, by the Debtors, if before the Effective Date, or the Reorganized Debtors or the Distribution Agent, as the case may be, if on or after the Effective Date.  The Debtors, the Reorganized Debtors and the Distribution Agent shall not be required to give any bond or surety or other security for the performance of their duties, unless otherwise ordered by the Bankruptcy Court.

7.4.    ***Record Date***.  As of the close of business on the Record Date, the various transfer and claims registers for each of the Classes of Claims as maintained by the Debtors or their respective agents shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims.  The Debtors and the Reorganized Debtors, as applicable, shall have no obligation to recognize any transfer of the Claims occurring after the close of business on the Record Date.  The Debtors and the Reorganized Debtors, as applicable, shall be entitled to recognize and deal hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Record Date, to the extent applicable.

7.5.    ***Delivery of Distributions***.  Except as otherwise provided in the Plan, Distributions to holders of Allowed Claims shall be made, (i) at the addresses set forth on any proof of claim

filed by such holder (or at the last known addresses of such holder if no motion requesting payment or proof of claim is filed or the Debtors, Reorganized Debtors or Distribution Agent, as the case may be, have been notified in writing of a change of address), (ii) at the addresses set forth in any written notices of address changes filed with the Bankruptcy Court and served on the Debtors, the Reorganized Debtors or the Distribution Agent, as the case may be, by such holder after the date of any related proof of claim, or (iii) at the addresses reflected in the Schedules if no proof of claim has been filed and no written notice of address change has been filed by such holder with the Bankruptcy Court and served on the Debtors, the Reorganized Debtors or the Distribution Agent, as the case may be. Nothing set forth herein will be deemed a waiver of the Debtors' statutory or common law setoff rights.

7.6.    ***No Interest Unless Otherwise Provided***.  Other than to the extent allowed by the Bankruptcy Court, or as otherwise provided in the Plan, no interest shall accrue or be paid on any Claim.

7.7.    ***De Minimis Distributions***.  No Distribution of less than fifty ($50) dollars shall be made to any holder of an Allowed Claim.  Such undistributed amount will be retained by the Reorganized Debtors to be distributed in Pro Rata Shares to holders of Allowed Claims in Class 5 ("General Unsecured Claims Not Necessary for the Continued Operation of the Reorganized Debtors").

7.8.    ***Fractional Cents***.  Notwithstanding any other provisions of the Plan to the contrary, no fractional cents will be made under the Plan. Any Distribution or payments will be issued to holders in whole cents (rounded to the nearest whole cent when and as necessary).

7.9.    ***Taxpayer Identification Number***.  The Reorganized Debtors may require any holder with an Allowed Claim entitled to a Distribution hereunder to furnish its, his or her employer or taxpayer identification number (the "TIN") assigned by the Internal Revenue Service.  Any Distribution hereunder may be conditioned on the receipt of such TIN.  If any such holder entitled to a Distribution hereunder fails to provide a requested TIN within ninety (90) days after the request thereof, then such failure shall be deemed to be a waiver of such holder's interest in any future Distributions, including the right to receive any future Distributions.

7.10.    ***Compliance with Tax Requirements***.    In connection with the Plan, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed by federal, state, local and foreign taxing authorities, if applicable, and all Distributions hereunder shall be subject to such withholding and reporting requirements.  Notwithstanding the above, each holder of an Allowed Claim that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the reporting of, and the satisfaction and payment of any tax obligations imposed by, any Governmental Unit, including income, withholding, and other tax obligations, on account of such Distribution.

7.11.    ***Effect of Pre-Confirmation Distributions***.  Nothing in the Plan shall be deemed to entitle the holder of a Claim that received, prior to the Effective Date, full or partial payment of such holder's Claim, by way of settlement or otherwise, pursuant to an order of the Bankruptcy Court (including, but not limited to any orders approving critical vendor motions filed by the Debtors), provision of the Bankruptcy Code, or other means, to receive a duplicate

payment in full or in part pursuant to the Plan; and all such full or partial payments shall be deemed to be payments made under the Plan for purposes of satisfying the obligations of the Debtors or the Reorganized Debtors to such holder under the Plan.

7.12. ***Setoffs and Recoupments***. The Debtors, if before the Effective Date, or the Reorganized Debtors, if on or after the Effective Date, may, to the extent permitted by sections 502(h), 553, and 558 of the Bankruptcy Code or applicable non-bankruptcy law, but shall not be required to, set off against or recoup from any Claim on which payments are to be made pursuant to the Plan, any Causes of Action of any nature whatsoever that the Debtors or their Estates may have against the holder of such Claim; provided, however, that neither the failure to effect such offset or recoupment nor the allowance of any Claim shall constitute a waiver or release by the Debtors or their Estates of any right of setoff or recoupment that the Debtors or their Estates may have against the holder of such Claim, nor of any other Cause of Action.

7.13. ***Distributions in Satisfaction; Allocation***. Except for the obligations expressly imposed by the Plan and the property and rights expressly retained under the Plan, if any, the Distributions and rights that are provided in the Plan shall be in complete satisfaction and release of all Claims against, liabilities in, Liens on, obligations of and Interests in the Debtors and their Estates, whether known or unknown, that arose or existed prior to the Effective Date. Distributions received in respect of Allowed Claims will be allocated first to the principal amount of such Claims, with any excess allocated to unpaid accrued interest (if any).

7.14. ***Unclaimed Property***. Unclaimed Property shall be dealt with as follows: If the combined total of Unclaimed Property related to Allowed Claims in Class 5 ("General Unsecured Claims Not Necessary for the Continued Operation of the Reorganized Debtors") totals (i) $5,000 or more, the Unclaimed Property shall, subject to Section 7.7 ("De Minimis Distributions") and other provisions hereof, be distributed, at the time of final Distributions, in Pro Rata Shares to all holders of Allowed Claims in Class 5 ("General Unsecured Claims Not Necessary for the Continued Operation of the Reorganized Debtors"), or (ii) less than $5,000, the Unclaimed Property shall be donated to the Bankruptcy Bar Foundation, a not-for-profit, non-religious organization dedicated to, among other things, promoting the pro bono legal representation of the indigent; provided that the Claim of any holder or successor to such holder with respect to any Unclaimed Property shall be forever forfeited by such holder, and barred, notwithstanding any federal or state escheat laws to the contrary. Any other Unclaimed Property will vest in the Reorganized Debtors pursuant to Article XI hereof ("Effect of Confirmation").

## ARTICLE VIII

## PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS

8.1. ***Objections to Claims; Prosecution of Disputed Claims***. Before the Effective Date, the Debtor or any other party in interest will be entitled to object to any Claim (in whole or in part) appearing on the Schedules, filed in the Chapter 11 Cases or estimated by the Bankruptcy Court with respect to which the Debtors dispute liability in whole or in part. After the Effective Date, the Reorganized Debtors shall object to the allowance of any Claim appearing on the Schedules, filed in the Chapter 11 Cases or estimated by the Bankruptcy Court with respect to which the Reorganized Debtors dispute liability in whole or in part. All

objections that are filed and prosecuted by the Debtors or the Reorganized Debtors, as the case may be, as provided herein shall be litigated to Final Order or settled. Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections by the Debtors or the Reorganized Debtors, as the case may be, to Claims shall be served and filed no later than one-hundred and eighty (180) days after the Effective Date, or such other deadline established by separate order of the Bankruptcy Court.

8.2.    ***Administration of Disputed Claims; Disputed Claims Reserve***.

(a)    <u>No Distribution of Disputed Claims</u>.  Notwithstanding any other provision of the Plan, no Distribution shall be made with respect to any Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim.

(b)    <u>Estimates in Aid of the Plan</u>.  In determining the amount of Distributions to be made hereunder to holders of Allowed Claims, the appropriate Distributions required by the Plan shall be made according to estimates and subject to the provisions of the Plan.  For purposes of effectuating the provisions of this section and the Distributions to holders of Allowed Claims, the Bankruptcy Court may set, fix or liquidate the amount of Disputed Claims pursuant to section 502(c) of the Bankruptcy Code, in which event the amounts so fixed or liquidated will be deemed the amounts of the Disputed Claim for purposes of Distribution under this Amended Plan.  In lieu of fixing or liquidating the amount of any Disputed Claim, the Debtors or Reorganized Debtors, as the case may be, may request that the Bankruptcy Court determine the amount to be reserved for such Disputed Claim or such amount may be fixed by agreement in writing between the Debtors or the Reorganized Debtors, as the case may be, and the holder of a Disputed Claim.

(c)    <u>Disputed Claims Reserve</u>.  To protect the interests of holders of Disputed Claims in each of <u>Class 4</u> ("General Unsecured Claims Necessary for the Continued Operation of the Reorganized Debtors") and <u>Class 5</u> ("General Unsecured Claims Not Necessary for the Continued Operation of the Reorganized Debtors"), the Reorganized Debtors shall establish a Disputed Claims Reserve for such Disputed Claims in <u>Classes 4</u> and <u>5</u>.  Although the Debtors believe that there does not exist any claims in the other Classes of Claims (<u>Classes 1</u>, <u>2</u> and <u>3</u>), in the event that a Claim is asserted in one of the other Classes of Claims, and is Disputed by the Debtors or the Reorganized Debtors, as the case may be, the terms of this Section shall apply to such Disputed Claim in the other Classes of Claims (<u>Classes 1</u>, <u>2</u> and <u>3</u>).  On the Effective Date, the Reorganized Debtors shall fund the Disputed Claims Reserve with Cash in an amount that represents the Cash that would otherwise be distributed to the holder of each such Disputed Claim on the Effective Date if (i) such Claim was Allowed in the amount set forth in the Schedules, on the holder's proof of claim, or as estimated by the Bankruptcy Court, and (ii) was entitled to receive the particular Distribution as described in <u>Article IV</u> hereto ("Impairment and Treatment of Claims and Equity Interests").  In addition, the Reorganized Debtors will fully fund the Disputed Claims Reserve for <u>Class 4</u> ("General Unsecured Claims Necessary for the Continued Operation of the Reorganized Debtors") on each Class 4 Payment Date with the amount of all subsequent Distributions to which holders of

Disputed Class 4 Claims would be entitled, if such Disputed Class 4 Claims were Allowed Class 4 Claims on such date.

(d)     Administration of Disputed Claims that Become Allowed Claims. As soon as practicable after a Disputed Claim in Classes 4 or 5 becomes an Allowed Claim, the holder of such Allowed Claim shall receive from the Disputed Claims Reserve a Distribution in an amount equal to the Distribution that such holder would have received had such Disputed Claim been an Allowed Claim on the Effective Date. Distributions to each holder of a Disputed Claim in Class 4 or 5, to the extent that such Claim becomes an Allowed Claim, shall be made, without interest, in accordance with the Class of Claims to which such Claim belongs.

(e)     Disallowed Claims. When a Disputed Claim in Class 5 ("General Unsecured Claims Not Necessary for the Continued Operation of the Reorganized Debtors") or any portion thereof becomes a Disallowed Claim, the Distribution(s) to which such holder of a Disallowed Claim in Class 5 would be entitled, shall be distributed, at the time of final Distributions, to other holders of Allowed Claims in Class 5 pursuant to the terms of this Plan. When a Disputed Claim in all other Classes or any portion thereof becomes a Disallowed Claim, the Distribution(s) to which such holder of a Disallowed Claim would be entitled, shall be distributed to the Reorganized Debtors at the time of final Distributions or any other time provided by order of the Bankruptcy Court.

8.3.     **_Estimation_**. The Debtors, or following the Effective Date, the Reorganized Debtors may at any time request that the Bankruptcy Court estimate any contingent, unliquidated or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors may pursue supplementary proceedings to object to the allowance of such Claim. All objection, estimation and Claim resolution procedures are intended to be cumulative and not exclusive of one another.

8.4.     **_Objections to Impaired Claims_**. Certain Claims and all Equity Interests are Impaired hereunder and not entitled to any Distribution hereunder. As a result, the Debtors do not intend to object to any such Claims or Equity Interests since the allowance or disallowance of such Claims or Equity Interests will have no impact on the Debtors or their Estates. However, the Debtors (and after the Effective Date, the Reorganized Debtors) reserve the right to file objections to such Claims and Equity Interests at any time they deem appropriate, if ever, until the closing of these Chapter 11 Cases.

8.5.     **_Disallowance of Claims_**. Under section 502(d) of the Bankruptcy Code, any Claim asserted by a Creditor shall be Disallowed in its entirety if such Creditor has received a transfer that is voidable under the Bankruptcy Code and has failed to repay such transfer.

## ARTICLE IX

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

9.1.    ***General Treatment; Rejected if not Previously Assumed***.  On the Effective Date, all executory contracts and unexpired leases to which any Debtor is a party shall be deemed automatically rejected in accordance with the provisions and requirements of sections 365 and 1123(b)(2) of the Bankruptcy Code as of the Effective Date, unless any such executory contract or unexpired lease: (i) has been previously subject to a Final Order of the Bankruptcy Court authorizing assumption or rejection, as the case may be, entered prior to the Effective Date; (ii) is the subject of a motion to assume or reject pending as of the Effective Date; or (iii) is listed on the Schedule of Assumed Executory Contracts and Unexpired Leases which will be an Exhibit to the Plan Supplement to be filed by the Debtors.  The Confirmation Order shall constitute an order of the Bankruptcy Court approving such assumptions or rejections pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code as of the Effective Date.

9.2.    ***Bar to Claims Arising from Rejection, Termination or Expiration***.  Claims created by the rejection of executory contracts or unexpired leases (including, without limitation, the rejection provided in Section 9.1 hereof ("General Treatment; Rejected if not Previously Assumed") or the expiration or termination of any executory contract or unexpired lease prior to the Confirmation Date must be filed with the Bankruptcy Court and served on the Debtors no later than thirty (30) days after: (a) *the Confirmation Date*, with respect to any executory contract or unexpired lease that was terminated or expired by its own terms prior to the Confirmation Date, (b) *the date of the entry of any order of the Bankruptcy Court authorizing rejection*, with respect to any executory contract or unexpired lease rejected by the Debtors, or (c) *the Confirmation Date*, with respect to any executory contract or unexpired lease that is deemed rejected pursuant to Section 9.1 hereof ("General Treatment; Rejected if not Previously Assumed").  Any rejection claim for which a proof of claim is not filed and served within the time provided herein will be forever barred from assertion and shall not be enforceable against the Debtors, or their estates, assets, properties, or interests in property, or the Reorganized Debtors, or their estate, assets, properties, or interests in property.  Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided in this Section shall be treated as a Claim under Class 5 ("General Unsecured Claims Not Necessary for the Continued Operation of the Reorganized Debtors") and shall be subject to the provisions of the treatment of Disputed Claims covered by Article VIII hereof ("Procedures for Resolving and Treating Disputed Claims").  Nothing contained herein shall be deemed an admission by the Debtors or any of them that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Debtors or the Reorganized Debtors of any objections to such Claim if asserted.

9.3.    ***Assumption of Executory Contracts and Unexpired Leases***.

(a)    Assumption of Executory Contracts and Unexpired Leases; Schedule of Assumed Executory Contracts and Unexpired Leases.  On the Effective Date, the Debtors will assume all of the executory contracts and unexpired leases listed on the Schedule of Assumed Executory Contracts and Unexpired Leases attached as an Exhibit to the Disclosure Statement and/or the Plan Supplement.  With respect to the executory contracts and unexpired leases listed on the Schedule of Assumed Executory Contracts

and Unexpired Leases, the Debtors will designate a proposed Cure on the Schedule of Assumed Executory Contracts and Unexpired Leases. Unless subject to separate motion and order of the Bankruptcy Court, the Confirmation Order will constitute an order of the Bankruptcy Court approving assumption of all of the executory contracts and unexpired leases listed on the Schedule of Assumed Executory Contracts and Unexpired Leases attached to the Plan Supplement pursuant to sections 365(a) and 1123 of the Bankruptcy Code and the listed amount of Cure Claims.

(b)    Modifications, Amendments, Supplements, Restatements, or Other Agreements.  Unless otherwise provided in the Plan, each executory contract or unexpired lease that is assumed pursuant to the Plan will include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such executory contract or unexpired lease, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated, or is rejected or repudiated pursuant to the Plan or separate motion and Final Order of the Bankruptcy Court.

(c)    Modification of the Schedule of Assumed Executory Contracts and Unexpired Leases.  The Schedule of Assumed Executory Contracts and Unexpired Leases may be modified by either of the Plan Proponents to add or delete contracts and leases up to three (3) days prior to the scheduled Confirmation Hearing.

(d)    Proof of Claim Based on Executory Contracts or Unexpired Leases that Have Been Assumed.  Any and all proofs of claim relating to executory contracts or unexpired leases that have been assumed in the Chapter 11 Cases will be deemed amended and superseded by the amount of Cure Claim identified in the Plan, the Confirmation Order or other order of the Bankruptcy Court authorizing assumption of executory contracts to the Debtors or the Reorganized Debtors.

(e)    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. With respect to each of the executory contracts or unexpired leases listed on the Schedule of Assumed Executory Contracts and Unexpired Leases, the Debtors will designate a proposed Cure and the assumption or assumption and assignment of such executory contract or unexpired lease will be conditioned on the disposition of all issues with respect to Cure. All Allowed Cure Claims will be satisfied by the Debtors by payment of the Cure in Cash to (i) holders of Allowed General Unsecured Claims Necessary for the Continued Operation of the Reorganized Debtors pursuant to Section 4.4 of the Plan ("Class 4") per the terms of such section of the Plan, or (ii) holders of other Claims, or on the Effective Date or as soon as reasonably practicable thereafter, or (iii) on such other terms as may be either ordered by the Bankruptcy Court or agreed by the Debtors and the applicable contract counter-party without any further notice to or action, order, or approval of the Bankruptcy Court. Any provisions or terms of the Debtors' executory contracts or unexpired leases to be assumed and assigned pursuant to the Plan that are, or may be, alleged to be in default, shall be satisfied solely by the Cure, or by an agreed-upon waiver of the Cure.

(f)    Confirmation Order. Entry of the Confirmation Order will constitute a finding of adequate assurance of future performance by the Reorganized Debtors within the meaning of section 365 of the Bankruptcy Code. Any objections relating to adequate assurance of future performance, or any other matters relating to the assumption and assignment of executory contracts and unexpired leases (other than Cure Claim disputes) must be asserted as an objection to confirmation of the Plan. Assumption of any executory contract or unexpired lease pursuant to the Confirmation Order or other order of the Bankruptcy Court will limit the Claims of any such contract counter-party to the (i) Allowed Cure Claim and (ii) Claims for ongoing performance under the unexpired lease or executory contract by Reorganized Debtor pursuant to section 365(k) of the Bankruptcy Code.

9.4.    *Insurance Policies and Agreements*. Notwithstanding anything contained in the Plan to the contrary, unless specifically rejected by order of the Bankruptcy Court, all of the Debtors' insurance policies and any agreements, documents or instruments relating thereto, are treated as executory contracts under the Plan and will be assumed by the applicable Reorganized Debtor, effective as of the Effective Date. Nothing contained in this Section shall constitute or be deemed a waiver of any cause of action that the Debtors may hold against any entity, including, without limitation, the insurer, under any of the Debtors' policies of insurance.

## ARTICLE X

## CONDITIONS PRECEDENT

10.1.    *Conditions Precedent to Effectiveness of Plan*. The Effective Date of the Plan shall not occur unless and until the following conditions shall have been satisfied or waived by the Plan Proponents, as determined in their sole discretion: (a) the Bankruptcy Court shall have entered the Confirmation Order in form and substance acceptable to the Plan Proponents, and such Confirmation Order shall be non-appealable, shall not have been appealed within fourteen (14) calendar days of entry or, if such Confirmation Order is appealed, shall not have been stayed pending appeal, and there shall not have been entered by any court of competent jurisdiction any reversal, modification or vacation, in whole or in part, of such Confirmation Order; (b) the Bankruptcy Court shall have approved the information contained in the Disclosure Statement as adequate pursuant to section 1125 of the Bankruptcy Code; (c) all documents, instruments and agreements provided for hereunder or necessary to implement the Plan shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the parties benefited thereby, in form and substance satisfactory to the Plan Proponents; (d) the date shall be on or after April 23, 2012 (the Bar Date for Governmental Units to file proofs of claim); (e) there is sufficient available Cash of the Debtors to pay all Allowed Administrative Claims (including Allowed Professional Claims), Allowed Priority Claims and Allowed Priority Tax Claims; and (f) no order of a court restraining the Debtors from consummating the Plan shall have been entered and shall remain in effect.

The conditions precedent specified above may be waived in whole or in part by the Plan Proponents, as determined in their sole discretion. Subject to the foregoing, any such written waiver of a condition precedent set forth in this Section may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than

proceeding to consummate the Plan. Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action. If the Plan Proponents decide that one of the foregoing conditions cannot be satisfied, and the occurrence of such condition is not waived in writing by the Plan Proponents, then the Debtors shall file a notice of the failure of the Effective Date with the Bankruptcy Court, at which time the Plan and the Confirmation Order shall be deemed null and void.

10.2.  ***Effect of Failure of Conditions to Effective Date***.  If all the conditions to effectiveness and the occurrence of the Effective Date have not been satisfied or duly waived on or before the first Business Day that is more than 120 days after the Confirmation Date, or by such later date as is proposed by the Plan Proponents, then upon motion by the Debtors made before the time that all of the conditions have been satisfied or duly waived, the Confirmation Order will be vacated by the Bankruptcy Court; provided, however, that notwithstanding the filing of such a motion, the Confirmation Order will not be vacated if each of the conditions to consummation is either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated pursuant to this Section, the Plan will be null and void in all respects, and (i) no Distributions under the Plan shall be made, (ii) the Debtors and all holders of Claims and Equity Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (iii) all of the Debtors' obligations with respect to the Claims and Equity Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors or any other entity or to prejudice in any manner the rights of the Debtors or any other entity in any further proceedings involving the Debtors.

10.3.  ***Notice of Confirmation of the Plan***.  Notice of entry of the Confirmation Order shall be provided as required by Bankruptcy Rule 3020(c)(2).

## ARTICLE XI

## EFFECT OF CONFIRMATION

11.1.  ***Vesting of Assets***.  Upon the Effective Date, pursuant to section 1141(b) and (c) of the Bankruptcy Code, all property of the Debtors shall vest in the Reorganized Debtors free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as provided in the Plan or the Confirmation Order. From and after the Effective Date, the Reorganized Debtors may operate the Debtors' business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code.

11.2.  ***Title to Assets; Discharge of Liabilities***.  Except as otherwise provided in the Plan, on the Effective Date, title to all assets and properties and interests in property dealt with by the Plan shall vest in the Reorganized Debtors free and clear of all Claims, Equity Interests, Liens, encumbrances, charges, and other interests, and the Confirmation Order shall be a judicial determination of discharge of the liabilities of the Debtors arising prior to the Effective Date, except as may be otherwise provided in the Plan.

11.3.   ***Binding Effect***.  Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind the Debtors, the Reorganized Debtors, and any holder of a Claim against, or Equity Interest in, the Debtors and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is Impaired under the Plan and whether or not such holder has accepted the Plan.

11.4.   ***Discharge of Claims and Termination of Equity Interests***.  Except as provided herein, the rights afforded in the Plan and the payments and Distributions to be made hereunder shall discharge all existing debts and Claims, and shall terminate all Equity Interests, of any kind, nature, or description whatsoever against or in the Debtors or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code.  Except as provided herein, upon the Effective Date, all existing Claims against the Debtors and Equity Interests in the Debtors shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims and Equity Interests shall be precluded and enjoined from asserting against the Reorganized Debtors, their respective successors or assignees, or any of their respective assets or properties, any other or further Claim or Equity Interest based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of claim or proof of equity interest, and whether or not the facts or legal bases therefore were known or existed prior to the Effective Date.  Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Equity Interest in the Debtors.  Nothing in this Section should be interpreted as a discharge of the Debtors' or Reorganized Debtors' rights or obligations under the Plan.

11.5.   ***Discharge of the Debtors***.  Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in the Confirmation Order, the Distributions and rights that are provided in the Plan will be in complete satisfaction, discharge, and release, of any and all Claims, whether known or unknown, against the Debtors or Reorganized Debtors or any of their assets or properties, regardless of whether the property has been distributed or retained pursuant to the Plan and termination of all Equity Interests.  Without limiting the generality of the foregoing, the Debtors or Reorganized Debtors will be discharged from any and all Claims and debts of the kind specified in sections 502(g), 502(h) of 502(i) of the Bankruptcy Code, in each case whether or not (a) a proof of claim is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim is allowed under section 502 of the Bankruptcy Code, or (c) the holder of such a Claim accepted the Plan.  Except as otherwise provided in the Plan, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtors arising before the Effective Date.  Under section 524 of the Bankruptcy Code, the discharge granted under this section shall avoid any judgment against the Debtors at any time obtained (to the extent it relates to a discharged Claim), and operates as an injunction against the prosecution of any action against the Debtors or the Estates (to the extent such action relates to a discharged claim).  Nothing in this Section should be interpreted as a discharge of the Debtors' or Reorganized Debtors' rights or obligations under the Plan.

11.6.   ***Injunction***.  **Except as otherwise expressly provided in the Plan, all Persons who have held, hold or may hold Claims or Equity Interests and all Persons who have held, hold or may hold claims or causes of action that have been released pursuant to <u>Section 11.10</u> hereof ("Releases") or are subject to exculpation pursuant to <u>Section 11.9</u> hereof**

("**Exculpation**"), **and all other parties in interest, along with their respective present or former employees, agents, officers, managers, directors, principals and Affiliates, are permanently enjoined, from and after the Effective Date, from (a) commencing, conducting or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Equity Interest, or such released or exculpated claim or cause of action, against the Debtors, the Reorganized Debtors, or the Released Parties or any of their respective property or assets or any interest therein, (b) the enforcement, attachment, levying, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors, the Reorganized Debtors, or the Released Parties or any of their respective property or assets or any interest therein, (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against the Debtors, the Reorganized Debtors, or the Released Parties or any of their respective property or assets or any interest therein, or (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors, the Reorganized Debtors, the Released Parties or against any of their respective property or assets, or any interest therein, with respect to any such Claim or Equity Interest, or such released or exculpated claim or cause of action. Such injunction shall be included in the Confirmation Order and shall extend to any successors of the Debtors, the Reorganized Debtors, and the Released Parties and their respective properties and interest in properties.**

11.7.    ***Term of Injunctions or Stays***.    Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, other than injunctions issued pursuant to the Plan (including injunctions under <u>Section 11.6</u> ("Injunction"), shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

11.8.    ***Injunction Against Interference With Plan of Reorganization***.    Upon the entry of the Confirmation Order, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, managers, directors, principals and Affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

11.9.    ***Exculpation***.    Notwithstanding anything herein to the contrary, as of the Effective Date, none of (a) the Debtors or the Reorganized Debtors, (b) the Plan Proponents, and (c) any present director, manager, officer, member, equity holder, employee, agent, financial advisor, partner, attorney, other professional advisor or representative of the persons or parties described in clauses (a) through (c) of this Section (but solely in their capacities as such) shall have or incur any liability for any claim, cause of action or other assertion of liability for any act taken or omitted to be taken since the Petition Date in connection with, related to, or otherwise arising out of, the Chapter 11 Cases, the formulation, negotiation, preparation, dissemination, implementation, confirmation, consummation, or administration of the Plan, property to be distributed under the Plan, or any other act or omission in connection with the Chapter 11 Cases, the Plan, the Disclosure Statement or, in each case, any contract, instrument, document or other agreement related thereto, including; provided, however, that the foregoing shall not affect the liability of any person that otherwise would result from any such act or omission to the extent such act or omission is determined by a final order of a court of competent jurisdiction to have

constituted willful misconduct or gross negligence; provided, further, that each Released Party shall be entitled to rely upon the advice of counsel concerning its duties pursuant to, or in connection with, the above referenced documents, actions or inactions.

11.10. *Releases*. **As of the Effective Date, in consideration of (a) the services provided by the present directors, managers, officers, employees, agents, financial advisors, attorneys, and representatives of the Debtors to the Debtors who acted in such capacities after the Petition Date; and (b) the substantial contribution of the Plan Proponents: (i) the Debtors or the Reorganized Debtors; and (ii) each holder of a Claim or Equity Interest that votes to accept the Plan, or accepts a Distribution under the Plan, or is deemed to accept the Plan, or abstains from voting on the Plan, shall release unconditionally and forever each Released Party from any and all Claims, demands, causes of action and the like, relating to the Debtors existing as of the Effective Date or thereafter arising from any act, omission, event or other occurrence that occurred on or prior to the Effective Date; provided, however, that (i) nothing in this Section shall be construed as a release of any claims against any such Released Party resulting from an act or omission determined by a final order of a court of competent jurisdiction to have constituted willful misconduct or gross negligence, provided that each such Released Party shall be entitled to rely upon the advice of counsel concerning its duties pursuant to, or in connection with, its actions or inactions, and (ii) there are no personal guarantee obligations subject to the releases.**

11.11. *Government Releases*. Except for the Claims described in Articles II, III and IV (including, but not limited to Exhibits 4.4, 4.5 and 4.6) that are discharged and released under this Plan, nothing in the Plan or the Confirmation Order shall (i) effect a release of any other claim by the United States Government or any of its agencies or any state and local authority whatsoever against the Released Parties, including without limitation any claim arising under the Internal Revenue Code, securities laws, the environmental laws or any criminal laws of the United States or any state and local authority, (ii) enjoin the United States Government or any of its agencies or any state and local authority whatsoever from bringing any claim, suit, action or other proceedings against the Released Parties asserting any other liability, including without limitation any claim, suit or action arising under the Internal Revenue Code, securities laws, environmental laws or any criminal laws of the United States or any state or local authority, and (iii) exculpate any of the Released Parties from any other liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, securities laws, environmental laws or any criminal laws of the United States or any state and local authority.

11.12. *Limitations on Exculpation and Releases of and Releases of Representatives*. Nothing in Section 11.9 ("Exculpation") or Section 11.10 ("Releases") hereof shall (i) be construed to release or exculpate any person from, or require indemnification of any Person against losses arising from, the fraud, malpractice, criminal conduct, intentional unauthorized misuse of confidential information that causes damages, or ultra vires acts of such Person, or (ii) limit the liability of the professionals of the Debtors, the Reorganized Debtors, to their respective clients pursuant to Rule 4-1.8(f) of the Florida Rules of Professional Conduct ("Limiting Liability for Malpractice").

## ARTICLE XII

## RETENTION OF JURISDICTION

12.1. ***Retention of Jurisdiction***.  Pursuant to sections 1334 and 157 of title 28 of the United States Code, the Bankruptcy Court shall retain jurisdiction of all matters arising in, arising under, and related to the Chapter 11 Cases and the Plan, for the purposes of sections 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

(a)    to hear and to determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan, any documents related to the Plan, including the Plan Documents, the Confirmation Order, or in connection with the enforcement of any remedies made available hereunder;

(b)    to take any action and issue such orders as may be necessary to construe, enforce, implement, execute and consummate the Plan or to maintain the integrity of the Plan following consummation;

(c)    to enforce the terms of any settlement approved as a part of this Plan or otherwise in the Chapter 11 Cases;

(d)    to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(e)    to enter, enforce and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(f)    to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court;

(g)    to hear and determine any application or motion to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(h)    to recover all property of the Estate, wherever located, which jurisdiction shall not be limited;

(i)    to hear and to determine any and all objections to or applications concerning the allowance of Claims or Equity Interests or the allowance, classification, priority, compromise, estimation, or payment of any Claim or Equity Interest;

(j)    to hear and determine any objections to the allowance of Claims or Equity Interests arising prior to the Effective Date, whether filed, asserted, or made before or after the

Effective Date, including, without express or implied limitation, to hear and determine any objections to the classification, priority, compromise, estimation, or payment of any Claim or Equity Interest in whole or in part;

(k)     to liquidate any Disputed, contingent, or Unliquidated Claims or to estimate any Disputed Claims;

(l)     to hear and determine all motions or applications pending on the Confirmation Date for the rejection, assumption, or assumption and assignment of unexpired leases and executory contracts to which any Debtor is a party or with respect to which any Debtor may be liable, and the allowance of Claims resulting therefrom or from the expiration or termination prior to the Confirmation Date of any executory contract or unexpired lease;

(m)     to hear and determine any disputes relating to the Distributions to holders of Allowed Claims as provided herein;

(n)     to hear and determine all applications for allowances of compensation and reimbursement of expenses of Professional Claims and any other fees and expenses authorized to be paid or reimbursed under the Plan;

(o)     to hear and determine any and all motions for the use, sale or lease of property pursuant to section 363 of the Bankruptcy Code and all issues related thereto, which transactions completed after the Confirmation Date shall be deemed to have been made pursuant to the Plan and therefore, exempt from recording and other taxes under section 1146 of the Bankruptcy Code;

(p)     to hear and determine any and all adversary proceedings, applications, motions, and contested or litigated matters, including the Causes of Action, and any other litigated matter, as well as any remands from any appeals, that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Reorganized Debtors after the Effective Date, including, without express or implied limitation, any claims to avoid any preferences, fraudulent transfers, or other voidable transfers, or otherwise to recover assets for the benefit of the Debtors' estates;

(q)     to enable the Reorganized Debtors to prosecute any and all Causes of Action, including proceedings which may be brought to set aside Liens or encumbrances and to recover any transfers, assets, properties or damages to which the Reorganized Debtors may be entitled under applicable provisions of the Plan, the Bankruptcy Code or any federal, state or local laws, including controversies, disputes and conflicts between the Debtors and any other party, including but not limited to any objections to Claims, motions for subordination on any grounds and claims preserved hereunder and pursuant to the Confirmation Order;

(r)     to the extent that Bankruptcy Court approval is required, to consider and act on the compromise and settlement of any Claim or cause of action by or against any Debtors' Estate;

(s)     to hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which the Debtors, as Debtors or Debtors in Possession,

may be liable, directly or indirectly, in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any request for expedited determination under section 505(b)(2) of the Bankruptcy Code);

(t)    to enter, enforce and implement such orders (including orders entered prior to the Confirmation Date) as may be necessary or appropriate to execute, interpret, implement, consummate or enforce the terms and conditions of the Plan and the transactions contemplated hereunder;

(u)    to issue such orders in aid of execution of the Plan to the extent authorized or contemplated by section 1142 of the Bankruptcy Code;

(v)    to hear and to determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to the Plan; and

(w)    to enter a final decree closing any and all of the Chapter 11 Cases.

12.2.  ***Abstention and Other Courts.***  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to the Chapter 11 Cases, Article XII of the Plan ("Retention of Jurisdiction") shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XIII

### MISCELLANEOUS PROVISIONS

13.1.  ***Modification of the Plan***.  The Plan may be altered, amended or modified by the Debtors, before or after the Confirmation Date, as provided in section 1127 of the Bankruptcy Code; provided, however, that no such alterations, amendments or modifications that are material shall be made without the consent of the Plan Proponents; provided further, however that the Plan Proponents may, with the approval of the Bankruptcy Court and without notice to holders of Claims and Equity Interests, correct any nonmaterial defect, omission, or inconsistency herein in such manner and to such extent as may be necessary or desirable. A holder of an Allowed Claim that has accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim of such holder.

13.2.  ***Rights of Action***.  Any rights, claims, or causes of action accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any statute or legal theory, and any rights to, claims or causes of action for recovery under any policies of insurance issued to or on behalf of the Debtors shall remain assets of the Debtors' estates and, on the Effective Date, shall be transferred to the Reorganized Debtors.

13.3.  ***Notices***.  Any notice required or permitted to be provided hereunder shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) prepaid overnight delivery service and addressed as follows:

(1)     Berger Singerman LLP
        1450 Brickell Avenue, Suite 1900
        Miami, Florida 33131
        Attention:  James D. Gassenheimer, Esq.
                    Christopher A. Jarvinen, Esq.
        Tel: (305) 755-9500
        Fax: (305) 714-4340

13.4.  ***Severability***.  If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, unless agreed otherwise by the, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

13.5.  ***Headings***.  The headings used in the Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

13.6.  ***Governing Law***.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Florida, without giving effect to the conflicts of laws principles thereof, shall govern the construction of the Plan and any agreements, documents, and instruments executed in connection with the Plan, except as otherwise expressly provided in such instruments, agreements or documents.

13.7.  ***Plan Documents***.  All Plan Documents, including, but not limited to the exhibits and schedules to the Plan, the Plan Supplement and the schedules and exhibits to the Plan Supplement, are incorporated into and are a part of the Plan as set forth in full herein.

13.8.  ***Compliance with Tax Requirements***.  In connection with the Plan, the Debtors and the Reorganized Debtors will comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities, and all Distributions hereunder shall be subject to such withholding and reporting requirements.

13.9.  ***Expedited Determination of Postpetition Taxes***.  The Debtors and the Reorganized Debtors are authorized (but not required) to request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Debtors for all taxable periods (or portions thereof) from the Petition Date through (and including) the Effective Date.

13.10. ***Sections 1125 and 1126 of the Bankruptcy Code***. As of and subject to the occurrence of the Confirmation Date: (a) the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation; and (b) the Plan Proponents, and each of their respective Affiliates, agents, directors, managers, officers, employees, advisors, and attorneys, shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale and purchase (as applicable) of securities, offered or sold under the Plan, of the Reorganized Debtors, and therefore, are not liable, on account of such participation, for violation of any applicable law, rule, or regulation governing the offer, issuance, sale or purchase of securities.

13.11. ***Time***. In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006, as amended effective December 1, 2009, shall apply.

13.12. ***Binding Effect***. Upon the entry of the Confirmation Order, all provisions of the Plan shall be binding upon, and shall inure to the benefit of, the Debtors, the Reorganized Debtors, the holders of Claims and Equity Interests, and such Persons' respective successors and assigns.

13.13. ***No Res Judicata Effect***. Notwithstanding anything to the contrary herein or in the Disclosure Statement, the provisions of the Disclosure Statement and the Plan that permit the Debtors or Reorganized Debtors to enter into settlements and compromises of any Cause of Action, shall not have, and are not intended to have, any res judicata or collateral estoppel effect with respect to any Cause of Action, as the case may be, that are not otherwise treated hereunder and shall not be deemed a bar to asserting such Cause of Action, regardless of whether or to what extent such Cause of Action is specifically described herein or Disclosure Statement relating hereto. Unless any of the Causes of Action are expressly waived, relinquished, exculpated, released, compromised or settled herein or by Final Order of the Bankruptcy Court, all such Causes of Action are expressly reserved and preserved for later adjudication and, therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after Confirmation or consummation of the Plan. Furthermore, notwithstanding any provision or interpretation to the contrary, nothing herein or the Confirmation Order, including the entry thereof, shall be deemed to constitute a release, waiver, impediment, relinquishment or bar, in whole or in part, of or to any recovery rights or any other claim, right or cause of action possessed by the Debtors prior to the Effective Date.

13.14. ***Bankruptcy Rule 9019 Request; Impact***. The Plan, including the Plan Supplement or other Plan Document, may provide for one or more compromises or settlements. Pursuant to Bankruptcy Rule 9019, the Debtors hereby request approval of all compromises and settlements included in the Plan, and entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of any such compromise or settlement.

43

13.15. ***Cramdown***.  This section shall constitute the Plan Proponents' request, pursuant to section 1129(b)(1) of the Bankruptcy Code, that the Bankruptcy Court confirm the Plan notwithstanding the fact that the requirements of section 1129(a)(8) of the Bankruptcy Code may not be met.

[INTENTIONALLY LEFT BLANK]

44

13.16. ***Successors and Assigns.***  The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Person.

Dated:    April 12, 2012

Respectfully Submitted

MAGUIRE GROUP HOLDINGS, INC.
THE MAGUIRE CORPORATION
MAGUIRE GROUP INC.
EAST ATLANTIC CASUALTY COMPANY, LTD.
MAGUIRE GROUP, ARCHITECTS, ENGINEERS,
PLANNERS, LTD.

_____

By:  Carlos Duart, as president of Maguire Group Holdings,
      Inc., Maguire Group Inc., East Atlantic Casualty
      Company, Ltd. and Maguire Group, Architects,
      Engineers, Planners, Ltd. and President and CEO of The
      Maguire Corporation

CARLOS DUART

_____

By:  Carlos Duart, in his individual capacity

Exhibit 4.4

List of Allowed General Unsecured Claims Necessary
for the Continued Operation of the Reorganized Debtors

| Debtor | Case Number | CreditorID | Name | Contact Information | Claim Number | General Unsecured Claim / Claim Amount | Order Docket Entry - Debtors' Objections (If Applicable) | Class |
|---|---|---|---|---|---|---|---|---|
| Maguire Group, Inc. | 11-39350 | 20902098 | A & A CONSULTANTS INC | 810 RIVER AVE STE 220 PITTSBURGH, PA 15212-0000 | | $10,545.00 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901862 | ACKENHEIL ENGINEERS INC | 1000 BANKSVILLE RD PITTSBURGH, PA 15216-0000 | 77 194 | $520.24 | DE 528 | 4 |
| Maguire Group, Inc. | 11-39350 | 20902103 | ADVANCED REPROGRAPHICS LLC | 50 CORPORATE AVE PLAINVILLE, CT 06062-0000 | 34 193 | $1,912.82 | DE 528 | 4 |
| Maguire Group, Inc. | 11-39350 | 20901817 | AEROTEK INC | PO BOX 198531 ATLANTA, GA 30384-8531 | 1 | $20,141.49 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20902011 | ALLEGHENY ASBESTOS ANALYSIS INC | 416 ANTHONY ST CARNEGIE, PA 15106-0000 | | $2,664.00 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901771 | ALPHA ANALYTICAL INC | 8 WALKUP DR WESTBOROUGH, MA 01581- | | $2,373.40 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901942 | AMERICAN GEOTECHNICAL & ENVIRONMENTAL SE | 4 GRANDVIEW CIR SOUTHPOINTE BUSINESS | | $8,767.68 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20902032 | ANTONIO P FRANCO & ASSOCIATES | ELECTRICAL ENGINEERS 17 SUSAN DR | | $283.66 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901889 | ARCHAEOLOGICAL & HISTORICAL CONSULTANTS | PO BOX 482 CENTRE HALL, PA 16828-0000 | 44 | $1,325.54 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901740 | ARROW LAND SOLUTIONS LLC | 961 OLD SIXTH AVENUE RD ALTONA, PA 16601-0000 | 95 | $2,020.13 | DE 541 | 4 |
| Maguire Group, Inc. | 11-39350 | 20902077 | ASBESTOS CONSULTANTS INC | 61 UNITY AVE BELMONT, MA 02478-0000 | | $695.00 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901971 | AWK CONSULTING ENGINEERS INC | 1225 RODI RD TURTLE CREEK, PA 15145- | 148 | $75,153.07 | DE 541 | 4 |
| Maguire Group, Inc. | 11-39350 | 20901923 | AXIOM PARTNERS INC | 979 MAIN ST WAKEFIELD, MA 01880-0000 | | $4,569.00 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901924 | BLUELEAF INCORPORTED | 57 DRESSER HILL RD CHARLTON, MA 01507-0000 | | $1,377.50 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20902058 | BRADFORD ASSOCIATES ARCHITECTURE/LANDSCA | 25 CREIGHTON ST PROVIDENCE, RI 02906-1518 | | $909.49 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20902005 | BRIGGS ENGINEERING & TESTING | PO BOX 369 ROCKLAND, MA 02370-0000 | 15 185 | $5,079.88 | DE 528 541 | 4 |
| Maguire Group, Inc. | 11-39350 | 20901788 | BROWN RICHARDSON & ROWE INC | 3 POST OFFICE SQ BOSTON, MA 02110-0000 | 155 178 | $49,536.05 | DE 526 539 | 4 |
| Maguire Group, Inc. | 11-39350 | 20902112 | BRYANT ASSOCIATES INC | 14 BREAKNECK HILL RD STE 200 | 100 198 | $174,237.22 | DE 528 | 4 |
| Maguire Group, Inc. | 11-39350 | 20901798 | CHRONICLE CONSULTING LLC | PO BOX 100093 PITTSBURGH, PA 15233-0000 | 29 177 | $11,907.00 | DE 528 | 4 |

| Debtor | Case | ID | Creditor | Address | | Amount | | |
|---|---|---|---|---|---|---|---|---|
| Maguire Group, Inc. | 11-39350 | 20902040 | CHRS INC | KEN BASALIK, 451 N CANNON AVE, SUITE | 37 | $2,567.01 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901980 | COMPASS LAND SURVEYING LLC | 14 JEFFERSON CT, WETHERSFIELD, CT 06109- | | $75.00 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901789 | CONSTRUCTION CONSULTANT SER INC | SAINT CLAIRE PLZ, 1121 BOYCE RD STE 1200A | 99, 183 | $48,850.71 | DE 528 | 4 |
| Maguire Group, Inc. | 11-39350 | 20901935 | CONSTRUCTION COST ENGINEERING OF BOSTON | 156 TILDEN RD, MARSHFIELD, MA 02050-0000 | 36 | $22,700.00 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901902 | CONTEST ANALYTICAL LAB | 39 SPRUCE ST 2ND FL, EAST LONGMEADOW, MA | 73 | $6,339.00 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901849 | CORVEN ENGINEERING INC | 2882 REMINGTON GREEN CIR, TALLAHASSEE, FL 32308-0000 | 74 | $79,213.91 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901954 | CROSSMAN ENGINEERING INC | 151 CENTERVILLE RD, WARWICK, RI 02886-4335 | 41, 189 | $8,333.35 | DE 528 | 4 |
| Maguire Group, Inc. | 11-39350 | 20901808 | CULLINAN ENGINEERING CO INC | 200 AUBURN ST, PO BOX 983112 | | $1,218.00 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901864 | DAVID COATE CONSULTING | 22 BARTLETT ST, PEMBROKE, MA 02359-0000 | | $8,554.00 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20800436 | DAWOOD ENGINEERING INC | 2020 GOOD HOPE ROAD, ENOLA, PA 17025-1237 | 35 | $556.83 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901941 | DIANE C SOULE & ASSOC ASLA | 422 FARNUM PIKE, SMITHFIELD, RI 02917-0000 | | $1,072.21 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901743 | DYSON ENGINEERING | 35 PALL MALL, EAST WALPOLE, MA 02032- | 101 | $8,945.15 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901835 | EDWARD CONNORS & ASSOCIATES | 39 DYER AVE, RIVERSIDE, RI 02915-0000 | | $402.14 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901970 | EXCELSIOR BLOWER SYSTEMS INC | PO BOX 15126, READING, PA 19612-5126 | | $17,762.00 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20902023 | FIRSTSEARCH TECHNOLOGY CORP | 10 COTTAGE ST, NORWOOD, MA 02062-0000 | | $290.00 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901925 | FRENCH ENGINEERINGLLC | 7 NORTH MORGANTOWN ST, FAIRCHANCE, PA 15436-0000 | 113 | $1,233.99 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20902056 | GANNETT FLEMING INC | FOSTER PLAZA III STE 200, 601 HOLIDAY DR | 140 | $5,386.89 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20902025 | GARRITY AND KNISELY | 21 MERCHANT'S ROW STE 3B, BOSTON, MA 02109-0000 | | $1,050.00 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901878 | GATES LEIGHTON & ASSOC INC | 865A WATERMAN AVE, EAST PROVIDENCE, RI 02914-0000 | 97, 191, 195 | $43,016.70 | DE 528 539 | 4 |
| Maguire Group, Inc. | 11-39350 | 20902120 | GATEWAY ENGINEERS INC | 400 HOLIDAY DR STE 300, PITTSBURGH, PA 15220-2727 | | $2,196.36 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901976 | GEOSCIENCES TESTING AND RESEARCH INC | 55 MIDDLESEX ST STE 225, NORTH CHELMSFORD, MA | | $64.04 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20800608 | GERSHMAN BRICKNER & BRATTON INC | 8550 ARLINGTON BOULEVARD, SUITE 304 | 11 | $4,573.17 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20902018 | GIFFORD DESIGN GROUP INC | 4096 MENDON RD, CUMBERLAND, RI 02864-0000 | | $318.50 | | 4 |

| Debtor | Case | Claim # | Creditor | Address | No. | Amount | DE | |
|---|---|---|---|---|---|---|---|---|
| Maguire Group, Inc. | 11-39347 | 20800613 | GILBERT & MALONEY | 170 RHODES STREET PROVIDENCE, RI 02903 | 59 196 | $4,179.77 | DE 528 | 4 |
| Maguire Group, Inc. | 11-39350 | 2092084 | GREEN INTERNATIONAL AFFILIATES INC | 239 LITTLETON ROAD STE 3 WESTFORD, MA 01886-0000 | 60 190 | $27,480.06 | DE 528 | 4 |
| Maguire Group, Inc. | 11-39350 | 20802742 | Greenhorne & O'Mara, Inc. | 6110 Frost Place Laurel, MD 20707 | 4 | $71,623.15 | DE 532 | 4 |
| Maguire Group, Inc. | 11-39350 | 20902028 | HADLYME ENVIRONMENTAL ENGINEERS LLC | 39 BONE MILL RD EAST HADDAM, CT 06423-1409 | | $300.00 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901896 | HALEY & ALDRICH INC | PO BOX 846026 BOSTON, MA 02884-0000 | 66 187 | $16,494.14 | DE 528 | 4 |
| Maguire Group, Inc. | 11-39350 | 20901985 | HDR ENGINEERING INC | 695 ATLANTIC AVE 2ND FL BOSTON, MA 02111-0000 | 102 | $1,327.30 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901842 | HENNINGSON DURHAM & RICHARDSON | 500 SEVENTH AVE 15TH FL NEW YORK, NY 10018-0000 | | $15,000.00 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901804 | HORSLEY WITTEN GROUP | 90 ROUTE 6A SANDWICH, MA 02563-0000 | | $0.00 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20902047 | INFOMAP TECHNOLOGIES | 105 EAST EVANS ST WEST CHESTER, PA 19380- | 42 | $2,250.00 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901999 | INFORM | 235 E MAIN ST STE 102B NORTHVILLE, MI 48167-0000 | | $87,366.06 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20902107 | INNOVATIVE DATA LLC | 50 ALDEN AVE BELCHERTOWN, MA 01007- | 25 | $959.13 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901950 | J MILLETT & SONS INC | 1 HASTINGS AVE MILLBURY, MA 01527-0000 | | $800.00 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901810 | JEFF ZELL CONSULTANTS INC | 1031 FOURTH AVE CORAOPOLIS, PA 15108-0000 | | $12,267.14 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20902044 | JOHNSON CHARLES D | 50 LOVELACE LN NORTH BRIDGE, MA 01534- | | $1,788.30 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901839 | KEVILLE ENTERPRISES INC | 475 SCHOOL ST STE 11 MARSHFIELD, MA 02050-0000 | | $9,366.74 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901793 | KEVIN WITZELL | 475 UNDERWOOD ST HOLLISTON, MA 01746-0000 | 64 | $5,172.44 | DE 541 | 4 |
| Maguire Group, Inc. | 11-39350 | 20901881 | KTA TATOR INC | 115 TECHNOLOGY DR PITTSBURGH, PA 15275-0000 | 124 | $8,338.21 | DE 539 | 4 |
| Maguire Group, Inc. | 11-39350 | 20901991 | LEFTFIELD LLC | 96 JACOBS LANCE NORWELL, MA 02061-0000 | 90 | $31,379.39 | DE 541 | 4 |
| Maguire Group, Inc. | 11-39350 | | LERCH BATES INC. | 8089 SOUTH LINCOLN SUITE 300 LITTLETON, CO 80122 | 87 | $1,500.00 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901840 | LIN ASSOCIATES INC | CONSULTING ENGINEERS 2001 BEACON ST | 171-174 | $0.00 | DE 520 | 4 |
| Maguire Group, Inc. | 11-39350 | 20902088 | LINCOLN ENVIRONMENTAL INC | 333 WASHINGTON HWY SMITHFIELD, RI 02917-1946 | | $475.39 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901967 | LITTLE BULMAN MEDEIROS & WHITNEY PC | 72 PINE ST PROVIDENCE, RI 02903-0000 | | $876.00 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901917 | LOGICAL ENVIRONMENTAL SOLUTIONS LLC | 354 SOUTH RIVER RD TOLLAND, CT 06084-0000 | 28 | $14,121.00 | DE 542 | 4 |
| Maguire Group, Inc. | 11-39350 | 20901879 | LUCHS CONSULTING ENGINEERS LLC | 1952 WHITNEY AVE HAMDEN, CT 06514-1209 | | $2,100.00 | | 4 |

| Debtor | Case | Claim No. | Creditor | Address | No. | Amount | Code | |
|---|---|---|---|---|---|---|---|---|
| Maguire Group, Inc. | 11-39350 | 20901815 | MA BORZA CONSULTING LLC | 2624 MIDDLE RD GLENSHAW, PA 15116-0000 | 128 | $1,196.00 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901769 | MAPPING AND PLANNING SERVICES | 21 HAMILTON AVE JAMESTOWN, RI 02835-0000 | 107 182 | $617.50 | DE 528 | 4 |
| Maguire Group, Inc. | 11-39350 | 20901968 | MASON & ASSOCIATES INC | 771 PLAINFIELD PIKE NORTH SCITUATE, RI 02857- | 133 | $2,476.25 | DE 539 | 4 |
| Maguire Group, Inc. | 11-39350 | 20901893 | MAYO CONSULTING GROUP | PO BOX 2145 SOUTH HAMILTON, MA 01945-0000 | 56 179 180 | $0.00 | DE 528 | 4 |
| Maguire Group, Inc. | 11-39350 | 20823473 | MERIDEN COOPER CORPORATION | 112 GOLDEN STREET PARK MERIDEN, CT 06450-0692 | 12 | $461.10 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20902078 | MICHAEL BAKER JR INC | PO BOX 360451 PITTSBURGH, PA 15251-6451 | 93 | $162,504.69 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20800028 | MONALOH BASIN ENGINEERS INC | PO BOX 3500 PITTSBURGH, PA 15230-3500 | 2 188 | $38,746.92 | DE 528 | 4 |
| Maguire Group, Inc. | 11-39350 | 20902034 | NEW ENGLAND GEOTECH INC | PO BOX 91 JAMESTOWN, RI 02835-0000 | 23 | $1,280.35 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901998 | NEW ENGLAND TESTING LAB INC | 1254 DOUGLAS AVE NORTH PROVIDENCE, RI | 58 181 | $1,580.00 | DE 528 | 4 |
| Maguire Group, Inc. | 11-39350 | 20901755 | NEW HAMPSHIRE BORING INC | PO BOX 165 DERRY, NH 03038-0000 | 111 | $2,397.00 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901812 | OBRIEN & GERE ENGINEERS INC | DEPT 956 PO BOX 8000 BUFFALO, NY 14267-0000 | 109 | $40,437.21 | DE 541 | 4 |
| Maguire Group, Inc. | 11-39350 | 20901760 | P3I INCORPORATED | 77 MAIN ST HOPKINTON, MA 01748-0000 | | $7,250.00 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20902057 | PANAMERICAN ENGINEERING CONTRACTORS COR | 7681 BELMONTE BLVD MARGATE, FL 33063-0000 | 31 | $13,200.00 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901909 | PARE CORP | 8 BLACKSTONE VALLEY PL LINCOLN, RI 02865-0000 | 16 175 | $33,730.36 | DE 528 | 4 |
| Maguire Group, Inc. | 11-39350 | 20901767 | PAUL B ALDINGER & ASSOC INC | 860A WATERMAN AVE STE 9 EAST PROVIDENCE, RI 02914- | | $72,555.05 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20902223 | PB AMERICAS INC (A/K/A PARSONS BRINCKERHOFF, INC.) | CHURCH STREET STATION PO BOX 6241 PO BOX 6241 | 162 199 | $121,404.89 | DE 528 | 4 |
| Maguire Group, Inc. | 11-39350 | 20902000 | PHOENIX ENVIRONMENTAL LAB | 587 E MIDDLE TURNPIKE PO BOX 418 | | $10.75 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901853 | PINE ENVIRONMENTAL SERVICES INC | PO BOX 943 HIGHTSTOWN, NJ 08520-0000 | 47 | $11,293.36 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901946 | PLACES ASSOCIATES INC | 510 KING ST STE 9 LITTLETON, MA 01460-0000 | | $2,833.18 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901900 | PLEXUS CORPORATION | 434 SMITH ST PROVIDENCE, RI 02908-0000 | | $13,251.24 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901986 | PREMIER LABORATORY INC | 61 LOUISA VIENS DR DAYVILLE, CT 06241-0000 | | $45.00 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20801703 | PUBLIC ARCHAEOLOGY LAB INC | 210 LONSDALE AVENUE PAWTUCKET, RI 02860 | 67 | $2,301.23 | DE 539 | 4 |

| Debtor | Case No. | Claim No. | Creditor | Address | No. | Amount | DE | |
|---|---|---|---|---|---|---|---|---|
| Maguire Group, Inc. | 11-39350 | 20902037 | RAUDENBUSH ENGINEERING INC | 29 SOUTH UNION ST MIDDLETOWN, PA 17057-1446 | 96 | $20,243.60 | DE 541 | 4 |
| Maguire Group, Inc. | 11-39350 | 20901921 | ROBERT W HUNT COMPANY | DEPT 77 3125 CHICAGO, IL 60678-3125 | | $1,908.99 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901784 | SAI CONSULTING ENGRS INC | 1350 PENN AVE SUITE 300 PITTSBURGH, PA 15222-0000 | 6 112 | $253,556.38 | DE 409 | 4 |
| Maguire Group, Inc. | 11-39350 | 20901816 | SO DEEP INC | 8397 EUCLID AVE MANASSAS PARK, VA 20111- | 5 | $11,635.48 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901922 | SOIL EXPLORATION CORP | 148 PIONEER DR LEOMINSTER, MA 01453-0000 | | $2,883.00 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20902072 | SOLTEC INTERNATIONAL INC | PO BOX 267011 WESTON, FL 33326-0000 | 110 | $15,640.00 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901871 | SPECTRUM ANALYTICAL INC | 11 ALMGREN DR AGAWAM, MA 01001-0000 | 127 | $6,508.00 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20801793 | STRATEGIC BUILDING SOLUTIONS LLC | STEWART CYNDEE 135 NEW ROAD | 72 | $44,644.00 | DE 385 | 4 |
| Maguire Group, Inc. | 11-39350 | 20902096 | SUCEVIC PICCOLOMINI & KUCHAR ENGINEERIN | 120 KAIDER ROAD UNIONTOWN, PA 15401-0000 | 121 | $32,063.28 | DE 541 | 4 |
| Maguire Group, Inc. | 11-39350 | 20901802 | TAVARES DESIGN ASSOCIATES INC | 319 MASSACHUSETTS AVE ARLINGTON, MA 02476-0002 | | $2,100.00 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20802307 | TESTAMERICA LABORATORIES | 4101 SHUFFEL ST NW NORTH CANTON, OH 44720 | 84 | $18,452.00 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20802312 | THIELSCH ENGINEERING INC | PO BOX 845327 BOSTON, MA 02284-5327 | 52 | $325.00 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901758 | THOMAS BRYDA | 77 STURBRIDGE DR WARWICK, RI 02886-0000 | 69 | $400.00 | DE 542 | 4 |
| Maguire Group, Inc. | 11-39350 | 20902002 | THOMAS J KRAVITZ | 55 REMINGTON AVE OAKLAND, RI 02858-0000 | | $1,037.50 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901854 | TW CONSULTANTS INC | ONE CORPORATE CTR 5500 CORPORATE DR | 19 184 | $31,419.15 | DE 528 | 4 |
| Maguire Group, Inc. | 11-39350 | 20902003 | TW ENGINEERING INCORPORATED | 5500 CORPORATE DR STE 300 PITTSBURGH, PA 15238-0000 | 18 | $3,601.26 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901856 | U T S OF MASSACHUSETTS INC | 5 RICHARDSON LN STONEHAM, MA 02180-0000 | | $387.00 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901949 | UNDERGROUND SERVICES | 24 HAGERTY BLVD STE 11 WEST CHESTER, PA 19382- | | $27,830.38 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901807 | UNITED INTERNATIONAL CORP | 35 THORPE AVE STE 102 WALLINGFORD, CT 06492- | | $27,964.86 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901747 | URS CORPORATION | FOSTER PLZ 4 501 HOLIDAY DR STE 300 | | $20,640.85 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901846 | VAISALA | PO BOX 8500 53423 PHILADELPHIA, PA 19178-0000 | | $2,000.00 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20800021 | VANASSE HANGEN BRUSTLIN INC | 10 DORRANCE ST STE 400 PROVIDENCE, RI 02903-0000 | 132 | $111,765.20 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20902042 | VIRGIN FOREST RESTORATIONS | 9901 EMMAUS ST. JOHN, VI 00830-0000 | | $1,353.68 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20802448 | VN ENGINEERS INC | 116 WASHINGTON AVE NORTH HAVEN, CT 06473- | 10 | $1,131.63 | DE 525 | 4 |

| Maguire Group, Inc. | 11-39350 | 20901748 | VOLKERT INC | TWO NORTH TWENTIETH BLDG<br>220TH ST NORTH STE 300<br>220TH ST NORTH STE 300<br>BIRMINGHAM, AL 35203-0000 | | $16,320.00 | | 4 |
|---|---|---|---|---|---|---|---|---|
| Maguire Group, Inc. | 11-39350 | 20902087 | WILBUR SMITH ASSOCIATES (n/k/a CDM SMITH) | PO BOX 7993<br>COLUMBIA, SC 29202-0000 | | $21,217.44 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20901918 | WILLIAM D WARNER ARCHITECTS & PLANNERS | 595 TEN ROD RD<br>EXETER, RI 02822-0000 | 146<br>156<br>192 | $307,650.52 | DE 528 | 4 |
| Maguire Group, Inc. | 11-39350 | 20901775 | WILLIAM F MCCOMB PE | PO BOX 303408<br>ST. THOMAS, VI 00803-3408 | | $4,545.00 | | 4 |
| Maguire Group, Inc. | 11-39350 | 20902021 | WRIGHT PIERCE | 99 MAIN ST<br>TOPSHAM, ME 04086-1204 | 38 | $608.26 | DE 541 | 4 |
| Maguire Group, Inc. | 11-39350 | 20901876 | WSP FLACK KURTZ | 88 BLACK FALCON AVE STE 210 | | $15,741.50 | | 4 |

Note: The claims listed on this Exhibit 4.4 are subject to further adjustment and objection by the Debtors

$2,489,047.39

Exhibit 4.5

List of General Unsecured Claims Not Necessary
for the Continued Operation of the Reorganized Debtors

Exhibit [X]
Page 1 of 18

| Debtor | Case Number | Name | Contact Information | Claim Number | General Unsecured Claim / Claim Amount | Order Docket Entry - Debtors' Objection or Settlement (if Applicable) | Class |
|---|---|---|---|---|---|---|---|
| Maguire Group Holdings, Inc. | 11-39347 | BARBIERI LEONARD | 46 BIRCH STREET WESTWOOD, MA 02090 | 68 | $0.00 | DE 527 | 5 |
| Maguire Group Holdings, Inc. | 11-39347 | BAYPORT CONSTRUCTION CORPORATION | 8 LAUREL CIRCLE MALVERN, PA 19355 | 40 | $0.00 | | 5 |
| Maguire Group Holdings, Inc. | 11-39347 | Chartis Specialty Insurance Company, Lexington Insurance Company, National Union Fire Insurance Company et al | Michelle A. Levitt, Authorized Representative Chartis Inc. 175 Water Street, 18th Floor 175 Water Street, 18th Floor New York, NY 10038 | 80 | $0.00 | DE 692 | 5 |
| Maguire Group Holdings, Inc. | 11-39347 | DANIEL MEADE | 888 POMFRET ROAD HAMPTON, CT 06247 | 13 | $45.00 | DE 525 | 5 |
| Maguire Group Holdings, Inc. | 11-39347 | DE LAGE LANDEN FINANCIAL SERVICES dba RICOH BUSINESS SOLUTIONS | 111 OLD EAGLE SCHOOL ROAD WAYNE, PA 19087 | 117 | $2,743.00 | DE 540 | 5 |
| Maguire Group Holdings, Inc. | 11-39347 | JAMES B. FRITZ | 39 CARRIER COURT SOUTHINGTON, CT 06489 | 176 | $0.00 | DE 654 | 5 |
| Maguire Group Holdings, Inc. | 11-39347 | LEONARDO TOIBERMAN | C O ALBERTO GUZMAN CPA 9130 S DADELAND BLVD STE 1600 MIAMI, FL 33156 | | $140,000.00 | | 5 |
| Maguire Group Holdings, Inc. | 11-39347 | LIN ASSOCIATES | 2001 BEACON STREET SUITE 310 BRIGHTON, MA 02135 | 171/172 173/174 | $0.00 | DE 520 | 5 |
| Maguire Group Holdings, Inc. | 11-39347 | MAURICE FOX AND LAURENCE V. PARNOFF | 3392 HUNTINGTON ROAD STRATFORD, CT 06614 | 151 | $0.00 | DE 540 | 5 |
| Maguire Group Holdings, Inc. | 11-39347 | PETER MORRISON | 80 DOWNER ROAD NORTH FALMOUTH, MA 02556-0000 | 89 91 | $2,450.00 | DE 519, 525 | 5 |
| Maguire Group Holdings, Inc. | 11-39347 | Richard Repeta | c/o Vincent F. Alexander, Esq. Kozyak Tropin & Throckmorton, P.A. 2525 Ponce de Leon, 9th Floor Miami, FL 33134 | 161 | $0.00 | DE 684 | 5 |
| Maguire Group Holdings, Inc. | 11-39347 | US NATIONAL BANK ASSOCIATION | 1310 MADRID STREET MARSHALL, MN 56258 | 122/123 | $0.00 | DE 519, 540 | 5 |
| The Maguire Corporation | 11-39348 | ALAN P ASIKAINEN | 48 NUTHATCH KNOB GLASTONBURY, CT 06033-0000 | 134 | $18,000.00 | DE 507 | 5 |
| The Maguire Corporation | 11-39348 | BARRY W KIMBALL | ONE PENINSULA DR STRATHAM, NH 03885-0000 | 33 | $15,741.00 | DE 543 | 5 |
| The Maguire Corporation | 11-39348 | BENJAMIN A PEZZI | 127 EDEN CREST DR CRANSTON, RI 02920-0000 | 152 | $4,640.00 | | 5 |
| The Maguire Corporation | 11-39348 | BRIAN A STERNER | 303 EDGEWOOD DR SARVER, PA 16055-0000 | | $11,136.00 | | 5 |

Exhibit [X]
Page 2 of 18

| Debtor | Case Number | Name | Contact Information | Claim Number | General Unsecured Claim / Claim Amount | Order Docket Entry - Debtors' Objection or Settlement (if Applicable) | Class |
|---|---|---|---|---|---|---|---|
| The Maguire Corporation | 11-39348 | Chartis Specialty Insurance Company, Lexington Insurance Company, National Union Fire Insurance Company et al | Michelle A. Levitt, Authorized Representative Chartis Inc. 175 Water Street, 18th Floor 175 Water Street, 18th Floor New York, NY 10038 | 81 | $0.00 | DE 692 | 5 |
| The Maguire Corporation | 11-39348 | DAVID B FREEMAN | 75 PROSPECT LN PORTSMOUTH, RI 02871-0000 | 147 | $11,136.00 | | 5 |
| The Maguire Corporation | 11-39348 | DAVID R STOCK | 135 BRICK KILN PL CHESHIRE, CT 06410-0000 | 46 | $13,920.00 | | 5 |
| The Maguire Corporation | 11-39348 | DAVID R WESTCOTT | 439 ANGELL RD PROVIDENCE, RI 02904-0000 | 118 | $12,064.00 | | 5 |
| The Maguire Corporation | 11-39348 | DAVID W MORROW | 135 ROCKY RD WHITINSVILLE, MA 01588-0000 | 22 | $0.00 | DE 543 | 5 |
| The Maguire Corporation | 11-39348 | EDWARD J SPINARD | 35 DARTMOUTH ST BRISTOL, RI 02809-0000 | | $12,064.00 | | 5 |
| The Maguire Corporation | 11-39348 | HAROLD MORSILLI | 2478 SUMMERVILLE AVE. THE VILLAGES, FL 32162 | 149/154 | $10,156.00 | DE 529 | 5 |
| The Maguire Corporation | 11-39348 | JAMES B FRITZ | 39 CARRIER CT SOUTHINGTON, CT 06489-0000 | 63 | $273,600.00 | DE 654 | 5 |
| The Maguire Corporation | 11-39348 | JOHN K MAYNARD | 42 TANSY AVE STRATHAM, NH 03885-0000 | 106 | $13,920.00 | | 5 |
| The Maguire Corporation | 11-39348 | JOHN TREICHEL | 39 CT ST CROMWELL, CT 06416-0000 | | $25,536.00 | | 5 |
| The Maguire Corporation | 11-39348 | KIMBALL BARRY | 1 PENINSULA DRIVE STRATHAM, NH 03885 | 33 | $0.00 | DE 543 | 5 |
| The Maguire Corporation | 11-39348 | LOUIS D ROCCHINI | 1506 OAK ST OAKMONT, PA 15139-0000 | 20 | $14,400.00 | | 5 |
| The Maguire Corporation | 11-39348 | PATRICIA D STEERE | 355 LOG RD SMITHFIELD, RI 02917-0000 | 130 | $10,440.00 | | 5 |
| The Maguire Corporation | 11-39348 | PAUL T CARVER | 82 WATERSIDE LN WEST HARTFORD, CT 06107-0000 | | $51,660.00 | | 5 |
| The Maguire Corporation | 11-39348 | PETER MORRISON | 80 DOWNER RD NORTH FALMOUTH, MA 02556-0000 | | $36,000.00 | | 5 |
| The Maguire Corporation | 11-39348 | Richard Repeta | c/o Vincent F. Alexander, Esq. Kozyak Tropin & Throckmorton, P.A. 2525 Ponce de Leon, 9th Floor Miami, FL 33134 | 160 | $0.00 | DE 684 | 5 |
| The Maguire Corporation | 11-39348 | SEBASTIAN AMENTA | 1166 WOODRUFF ST SOUTHINGTON, CT 06489-0000 | | $6,639.00 | | 5 |

Exhibit [X]
Page 3 of 18

| Debtor | Case Number | Name | Contact Information | Claim Number | General Unsecured Claim / Claim Amount | Order Docket Entry - Debtors' Objection or Settlement (If Applicable) | Class |
|---|---|---|---|---|---|---|---|
| The Maguire Corporation | 11-39348 | SHERRILL T PAPALIA | 113 PRENDVILLE WAY MARLBOROUGH, MA 01752-0000 | 45 | $18,000.00 | | 5 |
| The Maguire Corporation | 11-39348 | SHERYL A KRETZER | FOUR ROGERS WAY NORTH ATTLEBORO, MA 02760-0000 | 105 | $0.00 | SEPARATION AGREEMENT | 5 |
| The Maguire Corporation | 11-39348 | TERRY D MCCARTHY | 63 MERLINE RD VERNON ROCKVILLE, CT 06066-0000 | | $5,184.00 | | 5 |
| The Maguire Corporation | 11-39348 | THOMAS STOCKHAUSEN | 203 ALLENBERRY CIR PITTSBURGH, PA 15234-0000 | 27 | $118,800.00 | DE 506 | 5 |
| The Maguire Corporation | 11-39348 | VICTOR V CALABRETTA | 11 AMERICA WAY JAMESTOWN, RI 02835-0000 | 115 | $0.00 | DE 605 | 5 |
| The Maguire Corporation | 11-39348 | WILLIAM H YOST JR | 13 BROADVIEW DR BARRINGTON, RI 02806 | | $0.00 | | 5 |
| The Maguire Corporation | 11-39348 | WILLIAM J NUNNERY | 12 COTTAGE ST NATICK, MA 01760-5892 | | $6,574.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | 200 MAIN STREET ASSOCIATES LLC | C O CAPSTONE PROPERTIES, INC. 5 BURLINGTON WOOD STE 103 BURLINGTON, MA 01803-0000 | | $333,514.79 | CLAIM OBJECTED TO IN FULL; SETTLEMENT PENDING | 5 |
| Maguire Group, Inc. | 11-39350 | ACEC MA | THE ENGINEERING CENTER ACEC MA ONE WALNUT ST BOSTON, MA 02108-3616 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | ADP INC | PO BOX 9001006 LOUISVILLE, KY 40290-1006 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | ADVANTICOM | 1010 WESTERN AVE STE 700 PITTSBURGH, PA 15233-0000 | 39 | $387.88 | | 5 |
| Maguire Group, Inc. | 11-39350 | AIA | AIA CONTRACT DOCUMENTS LOCKBOX 64499 BALTIMORE, MD 21264-0000 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | ALAN P ASIKAINEN | 48 NUTHATCH KNOB GLASTONBURY, CT 06033-0000 | 129 | $250,000.00 | DE 507 | 5 |
| Maguire Group, Inc. | 11-39350 | AMCOM OFFICE SYSTEMS | 3600 MCCLARENN WOODS DRIVE CORAOPOLIS, PA 15108 | 126 | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | AMERICAN BENEFIT PARTNERS INC | 1700 N DIXIE HWY NO 154 BOCA RATON, FL 33432-0000 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | ANTONIAS INTERNATIONAL FOODS INC | 369 CENTRAL ST FOXBORO, MA 02035-0000 | | $239.16 | | 5 |
| Maguire Group, Inc. | 11-39350 | ASCENDANT LLC | 1499 SILAS DEAN HWY ROCKY HILL, CT 06067-0000 | | $125,000.00 | | 5 |

Exhibit [X]
Page 4 of 18

| Debtor | Case Number | Name | Contact Information | Claim Number | General Unsecured Claim / Claim Amount | Order Docket Entry - Debtors' Objection or Settlement (if Applicable) | Class |
|---|---|---|---|---|---|---|---|
| Maguire Group, Inc. | 11-39350 | AT&T | ACCT 860 224 9141 744 PO BOX 8110 AURORA, IL 60507-8110 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | AVAYA INC | c/o RMS Bankruptcy Recovery Services PO Box 5126 Timonium, MD 21094 | 75 | $229.14 | DE 542 | 5 |
| Maguire Group, Inc. | 11-39350 | BAY RING COMMUNICATIONS | 359 CORPORATE DR PORTSMOUTH, NH 03801-0000 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | BENTLEY SYSTEMS INC | 685 STOCKTON DR EXTON, PA 19341-1151 | | $394.33 | | 5 |
| Maguire Group, Inc. | 11-39350 | BETTER LEASING | 13940 SW 136 ST MIAMI, FL 33186-0000 | | $19,159.29 | | 5 |
| Maguire Group, Inc. | 11-39350 | BL MAKEPEACE INC | WILLIAM R JOYCE PRESIDENT 125 GUEST STREET | 9 | $2,196.91 | | 5 |
| Maguire Group, Inc. | 11-39350 | BLUE CROSS AND BLUE SHIELD OF FLORIDA | PO BOX 660299 DALLAS, TX 75266-0000 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | BRAGAN REPORTING ASSOCIATES INC | PO BOX 1387 MANCHESTER, NH 03105-1387 | | $502.06 | | 5 |
| Maguire Group, Inc. | 11-39350 | CAPSTONE PROPERTIES LLC | PAUL GRIESINGER PRESIDENT 5 BURLINGTON WOODS STE 103 BURLINGTON, MA 01803-0000 | 164 | $0.00 | DUPLICATE CLAIM; CLAIM OBJECTED TO IN FULL; SETTLEMENT PENDING | 5 |
| Maguire Group, Inc. | 11-39350 | CERIDIAN BENEFIT SERVICES | 3201 34TH ST SOUTH SAINT PETERSBURG, FL 33711-0000 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | Chartis Specialty Insurance Company, Lexington Insurance Company, National Union Fire Insurance Company et al | Michelle A. Levitt, Authorized Representative Chartis Inc. 175 Water Street, 18th Floor 175 Water Street, 18th Floor New York, NY 10038 | 82 | $0.00 | DE 692 | 5 |
| Maguire Group, Inc. | 11-39350 | CINNNABAR SERVICE COMPANY | 5109 SOUTH WHEELING AVE. TULSA, OK 74105-6421 LANSDALE, PA 19446-2256 | 143 | $30,666.38 | | 5 |
| Maguire Group, Inc. | 11-39350 | CINTAS DOCUMENT MANAGEMENT | 200 N CARY ST BROCKTON, MA 02302-2351 | | $285.71 | | 5 |
| Maguire Group, Inc. | 11-39350 | CIT TECHNOLOGY FIN SEV INC | 21146 NEWORK PL CHICAGO, IL 60673-1211 | 203 204 205 | $0.00 | DE 552 | 5 |

Exhibit [X]
Page 5 of 18

| Debtor | Case Number | Name | Contact Information | Claim Number | General Unsecured Claim / Claim Amount | Order Docket Entry - Debtors' Objection or Settlement (If Applicable) | Class |
|---|---|---|---|---|---|---|---|
| Maguire Group, Inc. | 11-39350 | COFFEE BREAK CORP | 20 CONNECTICUT SOUTH DR<br>PO BOX 1300<br>PO BOX 1300<br>EAST GRANBY, CT 06026-0000 | 125 | $158.86 | | 5 |
| Maguire Group, Inc. | 11-39350 | COMPUCOM SYTEMS INC | CLAUDIA VENTURA<br>7171 FOREST LN<br>DALLAS, TX 75230 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | CONTRACTORS SUPPLY INC | 3340 PAWTUCKET AVE<br>PO BOX 15086<br>PO BOX 15086<br>EAST PROVIDENCE, RI 02915-0000 | | $420.62 | | 5 |
| Maguire Group, Inc. | 11-39350 | CORE BUSINESS TECHNOLOGIES | 2224 PAWTUCKET AVE<br>EAST PROVIDENCE, RI 02914-0000 | 116 | $82.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | COX COMMUNICATIONS | PO BOX 182318<br>COLUMBUS, OH 43218-2318 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | CRANMORE FITZGERALD & MEANEY | 49 WETHERSFIELD AVE<br>HARTFORD, CT 06114-1102 | | $3,477.63 | | 5 |
| Maguire Group, Inc. | 11-39350 | CRYSTAL SPRINGS | PO BOX 660579<br>DALLAS, TX 75266-0579 | | $115.63 | | 5 |
| Maguire Group, Inc. | 11-39350 | CUTLER ASSOCIATES | 43 HARVARD ST<br>PO BOX 15049<br>PO BOX 15049<br>WORCESTER, MA 01615-0000 | | $7,500.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | CUTLER ASSOCIATES | ERNEST OBRIEN PRESIDENT<br>43 HARVARD ST<br>WORCESTER, MA 01609-0000 | | $97,500.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | CWPAA | RAY BAHR PE<br>WATER & WASTE EQUIPMENT INC<br>CROMWELL, CT 06416-0000 | | $305.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | DANE & HOWE COUNSELLORS AT LAW | 45 SCHOOL ST<br>BOSTON, MA 02108-3204 | 131 | $8,220.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | DBIA NEW ENGLAND | 530 SOUTH MAIN ST<br>WOONSOCKET, RI 02895-0000 | | $1,449.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | DELL FINANCIAL SERVICES | PAYMENT PROCESSING CENTER<br>PO BOX 5292<br>CAROL STREAM, IL 60197-5292 | | $78.80 | | 5 |
| Maguire Group, Inc. | 11-39350 | DELL FINANCIAL SERVICES | PAYMENT PROCESSING CENTER<br>PO BOX 5292<br>CAROL STREAM, IL 60197-5292 | | $111.51 | | 5 |

Exhibit [X]
Page 6 of 18

| Debtor | Case Number | Name | Contact Information | Claim Number | General Unsecured Claim / Claim Amount | Order Docket Entry - Debtors' Objection or Settlement (If Applicable) | Class |
|---|---|---|---|---|---|---|---|
| Maguire Group, Inc. | 11-39350 | DELL FINANCIAL SERVICES | PAYMENT PROCESSING CENTER PO BOX 5292 CAROL STREAM, IL 60197-5292 | | $142.76 | | 5 |
| Maguire Group, Inc. | 11-39350 | DELL FINANCIAL SERVICES | PAYMENT PROCESSING CENTER PO BOX 5292 CAROL STREAM, IL 60197-5292 | | $157.60 | | 5 |
| Maguire Group, Inc. | 11-39350 | DELL FINANCIAL SERVICES | PAYMENT PROCESSING CENTER PO BOX 5292 CAROL STREAM, IL 60197-5292 | | $157.60 | | 5 |
| Maguire Group, Inc. | 11-39350 | DELL FINANCIAL SERVICES | PAYMENT PROCESSING CENTER PO BOX 5292 CAROL STREAM, IL 60197-5292 | | $334.96 | | 5 |
| Maguire Group, Inc. | 11-39350 | DELL FINANCIAL SERVICES | PAYMENT PROCESSING CENTER PO BOX 5292 CAROL STREAM, IL 60197-5292 | | $336.98 | | 5 |
| Maguire Group, Inc. | 11-39350 | DELL FINANCIAL SERVICES | PAYMENT PROCESSING CENTER PO BOX 5292 CAROL STREAM, IL 60197-5292 | | $336.98 | | 5 |
| Maguire Group, Inc. | 11-39350 | DELL FINANCIAL SERVICES | PAYMENT PROCESSING CENTER PO BOX 5292 CAROL STREAM, IL 60197-5292 | | $340.16 | | 5 |
| Maguire Group, Inc. | 11-39350 | DELL FINANCIAL SERVICES | PAYMENT PROCESSING CENTER PO BOX 5292 CAROL STREAM, IL 60197-5292 | | $345.44 | | 5 |
| Maguire Group, Inc. | 11-39350 | DELL FINANCIAL SERVICES | PAYMENT PROCESSING CENTER PO BOX 5292 CAROL STREAM, IL 60197-5292 | | $352.16 | | 5 |
| Maguire Group, Inc. | 11-39350 | DELL FINANCIAL SERVICES | PAYMENT PROCESSING CENTER PO BOX 5292 CAROL STREAM, IL 60197-5292 | | $486.16 | | 5 |
| Maguire Group, Inc. | 11-39350 | DELL FINANCIAL SERVICES | PAYMENT PROCESSING CENTER PO BOX 5292 CAROL STREAM, IL 60197-5292 | | $648.10 | | 5 |
| Maguire Group, Inc. | 11-39350 | DELL FINANCIAL SERVICES | PAYMENT PROCESSING CENTER PO BOX 5292 CAROL STREAM, IL 60197-5292 | | $649.50 | | 5 |
| Maguire Group, Inc. | 11-39350 | DELL FINANCIAL SERVICES | PAYMENT PROCESSING CENTER PO BOX 5292 CAROL STREAM, IL 60197-5292 | | $669.92 | | 5 |

Exhibit [X]
Page 7 of 18

| Debtor | Case Number | Name | Contact Information | Claim Number | General Unsecured Claim / Claim Amount | Order Docket Entry - Debtors' Objection or Settlement (If Applicable) | Class |
|---|---|---|---|---|---|---|---|
| Maguire Group, Inc. | 11-39350 | DELL FINANCIAL SERVICES | PAYMENT PROCESSING CENTER PO BOX 5292 CAROL STREAM, IL 60197-5292 | | $875.76 | | 5 |
| Maguire Group, Inc. | 11-39350 | DELL MARKETING | C O DELL USA LP PO BOX 643561 PITTSBURGH, PA 15264-3561 | | $691.86 | | 5 |
| Maguire Group, Inc. | 11-39350 | Deltek, Inc. | 2291 Wood Oak Drive Herndon, VA 20171 | 55 | $7,650.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | DONOVAN HATEM LLP | TWO SEAPORT LN BOSTON, MA 02210-0000 | | $3,560.45 | | 5 |
| Maguire Group, Inc. | 11-39350 | Dun & Bradstreet | c/o Receivable Management Services RMS PO Box 5126 Timonium, MD 21094 | 71 | $177.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | ECONOTEL BUSINESS SYSTEMS INC | 15 CIRCLE ST EAST PROVIDENCE, RI 02916-0000 | | $2,455.58 | | 5 |
| Maguire Group, Inc. | 11-39350 | ENZO RENDINI | 800 OCEAN DR APT 202 NORTH PALM BEACH, FL 33408 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | EPICOR SOFTWARE CORPORATION | DEPARTMENT 1547 LOS ANGELES, CA 90084-1547 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | ESS GROUP INC. | 401 WAMPANOAG TRAIL STE 400 EAST PROVIDENCE, RI 02915-0000 | | $47.85 | | 5 |
| Maguire Group, Inc. | 11-39350 | ESTATE OF ROBERT TASSIELLO | STEPHEN KEOUGH PERSONAL REP C O KEVIN GRECO 707 SUMMER ST 707 SUMMER ST STAMFORD, CT 06905-0000 | | $2,500.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | FEDERAL EXPRESS CORP | PO BOX 371461 PITTSBURGH, PA 15250-7461 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | FEELEY & DRISCOLL PC | CERTIFIED PUBLIC ACCOUNTANTS 200 PORTLAND ST BOSTON, MA 02114-1709 | | $20,053.71 | | 5 |
| Maguire Group, Inc. | 11-39350 | FILTERFRESH OCEAN STATE | 22 MORGAN MILL RD JOHNSTON, RI 02919-0000 | | $431.89 | | 5 |
| Maguire Group, Inc. | 11-39350 | FOUNDATION & MARINE CONTRACTORS ASSOC OF | ONE EDGEWATER DR NORWOOD, MA 02062-0000 | | $97.50 | | 5 |
| Maguire Group, Inc. | 11-39350 | FOWLER WHITE BURNETT PA | ESPIRITIO SANTO PLZ 1395 BRICKELL AVE 14TH FL 1395 BRICKELL AVE 14TH FL MIAMI, FL 33131-0000 | | $4,409.90 | | 5 |

Exhibit [X]
Page 8 of 18

| Debtor | Case Number | Name | Contact Information | Claim Number | General Unsecured Claim / Claim Amount | Order Docket Entry - Debtors' Objection or Settlement (If Applicable) | Class |
|---|---|---|---|---|---|---|---|
| Maguire Group, Inc. | 11-39350 | FRANCOTYP POSTALIA INC | PO BOX 4510<br>CAROL STREAM, IL 60197-4510 | | $54.41 | | 5 |
| Maguire Group, Inc. | 11-39350 | GIDAS FLOWERS | 3719 FORBES AVE<br>PITTSBURGH, PA 15213-0000 | | $78.43 | | 5 |
| Maguire Group, Inc. | 11-39350 | GreatAmerica Leasing Corporation | PO Box 609<br>Cedar Rapids, IA 52406 | 49 | $1,004.14 | DE 541 | 5 |
| Maguire Group, Inc. | 11-39350 | GSA FUNDING | AR COLLECTIONS AND SALES<br>PO BOX 97917<br>ST. LOUIS, MO 63197-0000 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | GUARDIAN LIFE INSURANCE CO | PO BOX 95101<br>CHICAGO, IL 60694-5101 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | HAROLD MORSILLI | 2478 SUMMERVILLE AVE.<br>THE VILLAGES, FL 32162 | 149<br>154 | $1,909.50 | | 5 |
| Maguire Group, Inc. | 11-39350 | HARTFORD FIRE INS. COMPANY | PO BOX 2907<br>HARTFORD, CT 06104-2907 | 85 | $28,776.62 | | 5 |
| Maguire Group, Inc. | 11-39350 | HYDRATEC INC | 64 HAVERHILL RD RT 111<br>WINDHAM, NH 03087-1516 | | $90.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | IMPERIAL CREDIT CORPORATION | PO BOX 9045<br>NEW YORK, NY 10087-9045 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | INFRARED DIAGNOSTIC LLC | 9 ELAINE RD<br>SUDBURY, MA 01776-0000 | | $800.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | INNOVYSE | 618 MICHILLINDA AVE STE 200<br>ARCADIA, CA 91007-0000 | | $2,400.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | INVENSYS SYSTEMS INC | C O NANCY BENJAMIN<br>MAIL STATION C42 1B<br>FOXBORO, MA 02035-0000 | | $0.00 | DE 492 | 5 |
| Maguire Group, Inc. | 11-39350 | INVENSYS SYSTEMS INC | C O PAUL R DIAMOND ESQ<br>ARNSTEIN AND LEHR LLP<br>1200 S RIVERIDE PLZ STE 1200<br>1200 S RIVERIDE PLZ STE 1200<br>CHICAGO, IL 60606-0000 | 135 | $201,000.00 | DE 492 | 5 |
| Maguire Group, Inc. | 11-39350 | IRON MOUNTAIN RECORDS MANAGEMENT INC | PO BOX 27128<br>NEW YORK, NY 10087-7128 | 167 | $4,061.75 | | 5 |
| Maguire Group, Inc. | 11-39350 | JACA & SIERRA TESTING LABORATORIES INC | PO BOX 363116<br>SAN JUAN, PR 00936 | 14 | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | JAMES B FRITZ | 39 CARRIER CT<br>SOUTHINGTON, CT 06489-0000 | | $0.00 | DE 654 | 5 |
| Maguire Group, Inc. | 11-39350 | JAMES B. FRITZ | 39 CARRIER COURT<br>SOUTHINGTON, CT 06489 | 61 | $0.00 | DE654 | 5 |

Exhibit [X]
Page 9 of 18

| Debtor | Case Number | Name | Contact Information | Claim Number | General Unsecured Claim / Claim Amount | Order Docket Entry - Debtors' Objection or Settlement (if Applicable) | Class |
|---|---|---|---|---|---|---|---|
| Maguire Group, Inc. | 11-39350 | JAMES B. FRITZ | 39 CARRIER COURT SOUTHINGTON, CT 06489 | 62 | $227,051.79 | DE 654 | 5 |
| Maguire Group, Inc. | 11-39350 | JAMES B. FRITZ | 39 CARRIER COURT SOUTHINGTON, CT 06489 | 94 | $0.00 | DE 654 | 5 |
| Maguire Group, Inc. | 11-39350 | JAMES B. FRITZ | 39 CARRIER COURT SOUTHINGTON, CT 06489 | 98 | $0.00 | DE654 | 5 |
| Maguire Group, Inc. | 11-39350 | JONES MOVING & STORAGE INC | 59 CENTRAL ST PROVIDENCE, RI 02907-2293 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | JR FAZIO JAMES | 1499 SILAS DEANE HWY ROCKY HILL, CT 06067-0000 | | $1,599.93 | | 5 |
| Maguire Group, Inc. | 11-39350 | JUDYS VILLAGE FLOWERS INC | 34 SCHOOL ST FOXBORO, MA 02035-0000 | | $131.49 | | 5 |
| Maguire Group, Inc. | 11-39350 | K&L Gates LLP (formerly, Kirkpatrick & Lockhart LLP) | Attn Glenn Graner K&L Gates LLP K&L Gates Center K&L Gates Center 210 Sixth Avenue Pittsburgh, PA 15222 | 54 | $0.00 | DE 541 | 5 |
| Maguire Group, Inc. | 11-39350 | KS ENGINEERS PC | 24 COMMERCE ST 15TH FL NEWARK, NJ 07102-0000 | 48 | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | L C ASSOCIATES INC | 1960 SILAS DEANE HWY ROCKY HILL, CT 06067-1310 | 169 | $251,302.55 | CLAIM OBJECTED IN FULL | 5 |
| Maguire Group, Inc. | 11-39350 | MARLIN LEASING CORP | PO BOX 13604 PHILADELPHIA, PA 19101-3604 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | MARY G RENDINI | 800 OCEAN DR APT 202 NORTH PALM BEACH, FL 33408 | | $0.00 | DE 646 | 5 |
| Maguire Group, Inc. | 11-39350 | MARY G RENDINI | 800 OCEAN DR UNIT 202 JUNO BEACH, FL 33408-0000 | | $0.00 | DE 646 | 5 |
| Maguire Group, Inc. | 11-39350 | MARY G RENDINI | 800 OCEAN DR UNIT 202 NORTH PALM BEACH, FL 33408-0000 | 150 | $100,000.00 | DE 646 | 5 |
| Maguire Group, Inc. | 11-39350 | MCGLYNN & MCGLYNN | 4 NORMAN ST SALEM, MA 01970-0000 | 21 | $9,000.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | MINUTEMAN PRESS | 109 GOSLING RD NEWINTON, NH 03801-3328 | | $1,239.79 | | 5 |
| Maguire Group, Inc. | 11-39350 | NEW HORIZON COMMUNICATION | 420 BEDFORD ST NO 250 LEXINGTON, MA 02420-0000 | | $0.00 | | 5 |

Exhibit [X]
Page 10 of 18

| Debtor | Case Number | Name | Contact Information | Claim Number | General Unsecured Claim / Claim Amount | Order Docket Entry - Debtors' Objection or Settlement (if Applicable) | Class |
|---|---|---|---|---|---|---|---|
| Maguire Group, Inc. | 11-39350 | NEWSTONE LLC | 915 SEA WATCH LN VERO BEACH, FL  32963 | 165 | $0.00 | DUPLICATE CLAIM; CLAIM OBJECTED TO IN FULL; SETTLEMENT PENDING DE 528 | 6 |
| Maguire Group, Inc. | 11-39350 | NORTH STAR MARKETING INC | 1130 TEN ROD ROAD SUITE D-208 NORTH KINGSTOWN, RI 02852 | 70, 186 | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | NOW DELIVERY | PO BOX 6945 PROVIDENCE, RI  02940-0000 | | $792.64 | | 5 |
| Maguire Group, Inc. | 11-39350 | OCCUPATIONAL HEALTH CENTERS OF THE SOUTH | PO BOX 20127 CRANSTON, RI  02920-0942 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | OFFICE DEPOT | PO BOX 633211 CINCINNATI, OH  45263-3211 | | $309.26 | | 5 |
| Maguire Group, Inc. | 11-39350 | OLENN & PENZA | 530 GREENWICH AVE WARWICK, RI 02886-0000 | 136 | $43,992.52 | DE 617 | 5 |
| Maguire Group, Inc. | 11-39350 | PAPALIA SHERRILL | 113 PRENDVILLE WAY MARLBOROUGH, MA  01752 | 7 | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | PC CONNECTION SALES CORP | PO BOX 382808 PITTSBURGH, PA  15250-8808 | | $1,475.80 | | 5 |
| Maguire Group, Inc. | 11-39347 | Pitney Bowes Global Financial Services | Pitney Bowes Inc. 27 Waterview Dr Shelton, CT  06484 | 79 | $0.00 | DE 539 | 5 |
| Maguire Group, Inc. | 11-39350 | PITNEY BOWES GLOBAL FINANCIAL SEVICES L | PO BOX 856460 LOUISVILLE, KY 40285-6460 | 78 | $0.00 | DE 525 | 5 |
| Maguire Group, Inc. | 11-39350 | PRECISION SIGN & AWNING | 3 GLASS ST CARNEGIE, PA  15106-0000 | | $30.38 | | 5 |
| Maguire Group, Inc. | 11-39350 | PREMIER WATER SYSTEMS INC | PO BOX 644006 CINCINATTI, OH  45264-4006 | 51 | $40.00 | DE 541 | 5 |
| Maguire Group, Inc. | 11-39350 | PRINT O STAT | PO BOX 15055 YORK, PA  17405-7055 | 57 | $289.83 | DE 541 | 5 |
| Maguire Group, Inc. | 11-39350 | PROVIDENCE ENGINEERING SOCIETY | C O ERIN GALLOGLY 21 DOUNETOS ST WEST WARWICK, RI 02893-0000 | | $550.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | PSMJ RESOURCES INC | 10 MIDLAND AVE NEWTON, MA 02458-0000 | | $100.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | PSNH | PO BOX 638 MANCHESTER, NH 03105-0638 | 53 | $0.00 | DE 541 | 5 |
| Maguire Group, Inc. | 11-39350 | PURCHASE POWER | PO BOX 856042 LOUISVILLE, KY 40285-6042 | | $25.52 | | 5 |

Exhibit [X]
Page 11 of 18

| Debtor | Case Number | Name | Contact Information | Claim Number | General Unsecured Claim / Claim Amount | Order Docket Entry - Debtors' Objection or Settlement (If Applicable) | Class |
|--------|-------------|------|---------------------|--------------|----------------------------------------|----------------------------------------------------------------------|-------|
| Maguire Group, Inc. | 11-39350 | PURCHASE POWER | PO BOX 856042<br>LOUISVILLE, KY 40285-6042 | | $82.16 | | 5 |
| Maguire Group, Inc. | 11-39350 | RAYMOND T BUSH | 3 HAYFIELD LN<br>CUMBERLAND, RI 02864-0000 | 86 | $725,083.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | REGIONS INSURANCE INC | 1465 E JOYCE BLVD STE 205<br>FAYETTEVILLE, AR 72703-0000 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | RHODE ISLAND DEPT OF TRANSPORTATION | C O LISA MARTINELLI ESQ<br>OFFICE OF LEGAL COUNSEL<br>2 CAPITAL HILL RM 251<br>2 CAPITAL HILL RM 251<br>PROVIDENCE, RI 02909-0000 | 206-210 | $0.00 | DE 627 | 5 |
| Maguire Group, Inc. | 11-39350 | RICE | GEORGE F MONAGHAN JR<br>TREASURER<br>C O BRYANT ASSOCIATES INC<br>LINCOLN, RI 02865-0000 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | Richard Repeta | c/o Vincent F. Alexander, Esq.<br>Kozyak Tropin & Throckmorton, P.A.<br>2525 Ponce de Leon, 9th Floor<br>Miami, FL 33134 | 159 | $0.00 | DE 684 | 5 |
| Maguire Group, Inc. | 11-39350 | RICOH AMERICAS CORPORATION | PO BOX 4245<br>CAROL STREAM, IL 60197-4245 | 139 | $11,369.03 | | 5 |
| Maguire Group, Inc. | 11-39350 | ROBERT E STRUCK JR AND CO | 1250 SMITH STREET<br>PROVIDENCE, RI 02908 | 8 | $0.00 | DE 539 | 5 |
| Maguire Group, Inc. | 11-39350 | SD TECHNOLOGIES | 320 S FLAMINGO RD NO282<br>PEMBROKE PINES, FL 33027-0000 | | $6,889.21 | | 5 |
| Maguire Group, Inc. | 11-39350 | SECURITY LIFE OF DENVER | 5627 INNOVATION WAY<br>CHICAGO, IL 60682-0056 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | Service Point USA | 5 Commonwealth Ave Unit 5<br>Woburn, MA 01801 | 88 | $2,241.55 | | 5 |
| Maguire Group, Inc. | 11-39350 | SIEMENS ENTERPRISE COMMUNICATIONS INC | PO BOX 99076<br>CHICAGO, IL 60693-9076 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | SIR SPEEDY LLC | 200 MAIN ST<br>NEW BRITAIN, CT 06051-0000 | 17 | $142.51 | | 5 |
| Maguire Group, Inc. | 11-39350 | SOBEL & RACITI ASSOCIATES INC | 55 CEDAR ST<br>PROVIDENCE, RI 02903-0000 | | $1,881.24 | | 5 |
| Maguire Group, Inc. | 11-39350 | SOUTH STREET CAF | 54 SOUTH ST<br>PROVIDENCE, RI 02903-0000 | | $342.25 | | 5 |
| Maguire Group, Inc. | 11-39350 | SOUTHPOINT LLC | 77 ARLINGTON STREET<br>LEOMINSTER, MA 01453-2727 | 32 | $0.00 | | 5 |

Exhibit [X]
Page 12 of 18

| Debtor | Case Number | Name | Contact Information | Claim Number | General Unsecured Claim / Claim Amount | Order Docket Entry - Debtors' Objection or Settlement (if Applicable) | Class |
|---|---|---|---|---|---|---|---|
| Maguire Group, Inc. | 11-39350 | SPIRAL BINDING COMPANY INC | ONE MALTESE DR PO BOX 286 PO BOX 286 TOTOWA, NJ 07511-0000 | | $38.01 | | 5 |
| Maguire Group, Inc. | 11-39350 | SPRINT | PO BOX 4181 CAROL STREAM, IL 60197-4181 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | SPRINT | PO BOX 4181 CAROL STREAM, IL 60197-4181 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | SPRINT | PO BOX 4181 CAROL STREAM, IL 60197-4181 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | STAPLES BUSINESS ADVANTAGE | DEPT DET PO BOX 83689 PO BOX 83689 CHICAGO, IL 60696-3689 | | $1,162.77 | | 5 |
| Maguire Group, Inc. | 11-39350 | STATE OF CONNECTICUT | DEPT OF TRANSPORTATION AR UNIT PO DRAWER 317546 NEWINGTON, CT 06131-7546 | 197 | $0.00 | DE 686 | 5 |
| Maguire Group, Inc. | 11-39350 | STATE OF CONNECTICUT | C O RICHARD BLUMENTHAL ATTY GEN 55 ELM ST HARTFORD, CT 06106-0000 | 201, 202 | $0.00 | DE 686 | 5 |
| Maguire Group, Inc. | 11-39350 | STATE OF CONNECTICUT | DEPT OF REVENUE SERVICES 25 SIGOURNEY STREET HARTFORD, CT 06106-5032 | 201, 202 | $0.00 | DE 686 | 5 |
| Maguire Group, Inc. | 11-39350 | STATE OF RHODE ISLAND | GENERAL TREASURER PROVIDENCE, RI 02903-0000 | | $100.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | STATE OF RI AND PROVIDENCE PLANTATIONS | OFFICE OF THE SECRETARY OF STATE | | $1,000.00 | | 5 |
| Maguire Group, Inc. | 11-39347 | STEIKER FISCHER EDWARDS & COMPANY PC | 10 SHURS LANE SUITE 102 PHILADELPHIA, PA 19127 | 50 | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | THE STONEHAM INDEPENDENT | C O DAILY TIMES 1 ARROW DR WOBURN, MA 01801-0000 | | $80.30 | | 5 |
| Maguire Group, Inc. | 11-39350 | STORE EXPRESS | 200 S 22ND ST PITTSBURGH, PA 15212-0000 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | STYLEDU LLC | 9130 S DADELAND BLVD STE 1600 MIAMI, FL 33156-0000 | | $89,000.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | TB BANK NA | JOHN SHEA VP 15 MONUMENT SQ LEOMINSTER, MA 01453-0000 | | $1,218.00 | | 5 |

Exhibit [X]
Page 13 of 18

| Debtor | Case Number | Name | Contact Information | Claim Number | General Unsecured Claim / Claim Amount | Order Docket Entry - Debtors' Objection or Settlement (If Applicable) | Class |
|---|---|---|---|---|---|---|---|
| Maguire Group, Inc. | 11-39350 | THOMAS STOCKHAUSEN | 203 ALLENBERRY CR PITTSBURGH, PA 15234-0000 | 26 | $0.00 | DE 506 | 5 |
| Maguire Group, Inc. | 11-39350 | TRANE US INC | PO BOX 406469 ATLANTA, GA 30384-6469 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | TRANSOFT SOLUTIONS INC | 13575 COMMERCE PARKWAY SUITE 250 SUITE250 RICHMOND, BC V6V 2L1 CANADA | 43 | $0.00 | DE 541 | 5 |
| Maguire Group, Inc. | 11-39350 | TRINITY | PO BOX 7167 PASADENA, CA 91109-7167 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | UNITED WAY OF THE GREATER SEACOAST | 112 CORPORATE DR UNIT 3 PORTSMOUTH, NH 03801-0000 | | $26.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | UNITIL NH | PO BOX 981010 BOSTON, MA 02298-1010 | 30 | $0.00 | DE 541 | 5 |
| Maguire Group, Inc. | 11-39350 | UNIVERSITY OF SPORTS PUBLICATIONS | 1800 MINERAL SPRING AVE DEPT 211 DEPT 211 NORTH PROVIDENCE, RI 02904-0000 | | $1,980.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | US BANCORP EQUIPMENT FINANCE INC | PO BOX 790448 ST. LOUIS, MN 63179-0448 | | $2,691.68 | | 5 |
| Maguire Group, Inc. | 11-39350 | US DEPARTMENT OF TRANSPORTATION | C O US DEPARTMENT OF JUSTICE ABRAHAM A RIBICOFF FEDERAL BLDG 450 MAIN ST RM 238 450 MAIN ST RM 238 HARTFORD, CT 06103-0000 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | VERIZON CONFERENCING | PO BOX 371838 PITTSBURGH, PA 15250-7838 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | VERIZON WIRELESS | PO BOX 15062 ALBANY, NY 12212-5062 | 142 | $0.00 | DE 539 | 5 |
| Maguire Group, Inc. | 11-39350 | VICTOR CALABRETTA | 11 AMERICA WAY JAMESTOWN, RI 02835-0000 | 114 | $0.00 | DE 605 | 5 |
| Maguire Group, Inc. | 11-39350 | WB MASON INC | PO BOX 55840 BOSTON, MA 02205-5840 | 120 | $6,043.53 | DE 539 | 5 |
| Maguire Group, Inc. | 11-39350 | ZAMPELL BUILDING SERVICES | 9 STANLEY TUCKER DR NEWBURYPORT, MA 01950-0000 | 137 | $693.34 | | 5 |

Exhibit [X]
Page 14 of 18

| Debtor | Case Number | Name | Contact Information | Claim Number | General Unsecured Claim / Claim Amount | Order Docket Entry - Debtors' Objection or Settlement (if Applicable) | Class |
|---|---|---|---|---|---|---|---|
| Maguire Group, Inc. | 11-39350 | RICKY KENNETT AND SOMERSET ENTERPRISES, INC. T/D/B/A FUTURE BUILDING OF AMERICA COMPANY | C/O TRISHA GILL, ESQ. LITCHFIELD CAVO, LLP THE GULF TOWER SUITE 1400 707 GRANT STREET PITTSBURGH, PA 15219 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | TOWN OF GRAFTON | TIMOTHY P. MCINERNEY TOWN ADMINISTRATOR KEVIN J. MIZIKAR ASSISTANT TOWN ADMINISTRATOR GRAFTON MEMORIAL MUNICIPAL CENTER 30 PROVIDENCE ROAD GRAFTON, MA 01519 | 153 | $0.00 | DE 541 | 5 |
| Maguire Group, Inc. | 11-39350 | MAURICE FOX AND LAURENCE PARNOFF | MAURICE FOX AND LAURENCE PARNOFF 3392 HUNTINGTON ROAD STRATFORD, CT 06614 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | EAGLE CONCRETE PRODUCTS COMPANY | EAGLE CONCRETE PRODUCTS COMPANY 1019 E. BAKERVILLE EDIE ROAD SOMERSET, PA 15501 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | ALLIE CHAMPNEY AND SUSAN CHAMPNEY | C/O DAVID F. SLAWSKY, ESQ. NIXON, RAICHE, VOGELMAN, BARRY & SLAWSKY & SIMONEAU, P.A. 77 CENTRAL STREET MANCHESTER, NH 03101 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | PAINT TOWNSHIP BOARD OF SUPERVISORS AND PAINT TOWNSHIP MUNICIPAL WATER AUTHORITY | C/O WILLIAM E. HAGER, III, LLC ATTY FOR PAINT TWNSHP 352 BROAD STREET NEW BETHLEHEM, PA 16242 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | AT&T | LUCIA CHIOCCIO, ESQ. CUDDY & FEDER – CUDDY H. FEDER 445 HAMILTON AVE., 14TH FLOOR WHITE PLAINS, NY  10601 | | $0.00 | | 5 |

Exhibit [X]
Page 15 of 18

| Debtor | Case Number | Name | Contact Information | Claim Number | General Unsecured Claim / Claim Amount | Order Docket Entry - Debtors' Objection or Settlement (If Applicable) | Class |
|---|---|---|---|---|---|---|---|
| Maguire Group, Inc. | 11-39350 | I-90 CENTRAL ARTERY TUNNEL C09A4/C09B1 | I-90 CENTRAL ARTERY TUNNEL C09A4/C09B1 ERIC EISENBERG 28 STATE STREET BOSTON, MA 02109-1175 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | STATE OF CONNECTICUT DEPARTMENT OF TRANSPORTATION (Project: Peter Road, Town of Southbury) | JIM CONNERY STATE OF CONNECTICUT DEPARTMENT OF TRANSPORTATION 2800 BERLIN TURNPIKE P.O BOX 317546 NEWINGTON, CT 06131-7546 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | TD BANK, N.A. | JOHN SHEA, VP TD BANK, N.A. 15 MONUMENT SQUARE LEONMINSTER, MA 01453 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | ECC | BRAD CONGDON, PMP PROJECT MANAGER ECC 33 BOSTON POST RD WEST, SUITE 340 MARLBOROUGH, MA 01752-1887 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | CONNECTICUT DEPARTMENT OF TRANSPORTATION (Project: Route 66) | CONNECTICUT DEPARTMENT OF TRANSPORTATION MR. EUGENE V. FALCONE MANAGER, FINANCIAL MANAGEMENT & SUPPORT 2800 BERLIN TURNPIKE P.O BOX 317546 NEWINGTON, CT 06131-7546 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | ESTATE OF PRICE | ESTATE OF PRICE C/O LOUIS TARASI, JR. ESQUIRE 510 THIRD AVE PITTSBURGH, PA 15219 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | TERRY MCCARTHY | TERRY MCCARTHY 63 MERLINE ROAD VERNIN CT, 06066 | | $0.00 | | 5 |

Exhibit [X]
Page 16 of 18

| Debtor | Case Number | Name | Contact Information | Claim Number | General Unsecured Claim / Claim Amount | Order Docket Entry - Debtors' Objection or Settlement (if Applicable) | Class |
|---|---|---|---|---|---|---|---|
| Maguire Group, Inc. | 11-39350 | TOWN OF ENFIELD- ENFIELD ROADS PROJECT | TOWN OF ENFIELD<br>PIYA HAWKES, P.E.<br>DIRECTOR OF PUBLIC WORKS<br>40 MOODY ROAD<br>ENFIELD, CT 06082 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | MAINE DEPARTMENT OF TRANSPORTATION | MAINE DEPARTMENT OF TRANSPORTATION<br>NAOMI PETLEY<br>CONTRACT SPECIALIST<br>16 STATE HOUSE STATION<br>AUGUSTA, ME 04333-0016 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | ESTATE OF MARK BELLISARIO | ESTATE OF MARK BELLISARIO<br>C/O TURNER CONSTRUCTION<br>TWO PNC PLAZA<br>620 LIBERTY AVENUE<br>PITTSBURGH, PA 15222 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | ESTATE RICHARD PATNEK | ESTATE RICHARD PATNEK<br>C/O AGSTEN CONSTRUCTION CO.<br>110 WYOMING STREET<br>CHARLESTON, WV 25302 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | CITY OF GARDNER, MASSACHUSETTS (Lower Main Street Gateway Improvement Project) | CITY OF GARDNER, MASSACHUSETTS<br>CITY OF GARDNER –<br>DEPARTMENT OF COMMUNITY<br>DEVELOPMENT AND PLANNING<br>CITY HALL ANNEX<br>115 PLEASANT STREET, ROOM 201<br>GARDNER, MA 01440 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | TOWN OF FOSTER GLOCESTER | TOWN OF FOSTER GLOCESTER<br>PROJECT #17528<br>TOWN OF FOSTER GLOCESTER<br>1145 PUTNAM PIKE<br>P.O. BOX B<br>CHEPACHET, RI 02814-0702 | | $0.00 | | 5 |

| Debtor | Case Number | Name | Contact Information | Claim Number | General Unsecured Claim / Claim Amount | Order Docket Entry - Debtors' Objection or Settlement (if Applicable) | Class |
|---|---|---|---|---|---|---|---|
| Maguire Group, Inc. | 11-39350 | VEOLIA/US FILTER OPERATING | VEOLIA/US FILTER OPERATING SERVICES, INC. PROJECT #15515, #15694 RHIAN M. J. CULL, ESQ. HINCKLEY ALLEN & SNYDER LLP 28 STATE STREET BOSTON, MA 02109 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | TOWN OF WESTBOROUGH | TOWN OF WESTBOROUGH PROJECT #17373 CARL BALDUF TOWN ENGINEER WESTBOROUGH DEPT. OF PUBLIC WORKS 131 OAK STREET WESTBOROUGH MA 01581 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | TOWN OF SUTTON | TOWN OF SUTTON PROJECT #16086 SUTTON LLC 219 EAST MAIN STREET MILFORD, MA 01757-2823 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | SUTTON LLC | SUTTON LLC PROJECT #16086 219 EAST MAIN STREET MILFORD, MA 01757-2823 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | HANSCOM AIR FORCE BASE | HANSCOM AIR FORCE BASE PROJECT #16424.01 UNITED STATES AIR FORCE PHIL CINCOTTA 16 EGLIN STREET HANSCOM AFB, MA 01731-2107 | | $0.00 | | 5 |
| Maguire Group, Inc. | 11-39350 | COUNTY OF MERCER | COUNTY OF MERCER (MERCER BRIDGE 6-540) MCDADE ADMINISTRATION BLDG 640 SPUTH BROAD STREET PO BOX 8068 TRENTON, NJ 08650-0068 | | $0.00 | | 5 |

Exhibit [X]
Page 18 of 18

| Debtor | Case Number | Name | Contact Information | Claim Number | General Unsecured Claim / Claim Amount | Order Docket Entry - Debtors' Objection or Settlement (If Applicable) | Class |
|---|---|---|---|---|---|---|---|
| Maguire Group, Inc. | 11-39350 | DICKIE MCCAMEY | DICKIE MCCAMEY<br>STEVE HOUGHTON, ESQ<br>TWO PPG PLACE<br>SUITE 400<br>PITTSBURGH, PA 15222-5402 | | $0.00 | | 5 |
| East Atlantic Casualty Company, Ltd. | 11-39352 | AON INSURANCE MANAGERS BERMUDA LTD | AON HOUSE<br>30 WOODBOURNE AVE<br>PEMBROKE, HM 08 BERMUDA | 138 | $9,143.75 | | 5 |
| East Atlantic Casualty Company, Ltd. | 11-39352 | CODAN SERVICES | CLARENDON HOUSE<br>2 CHURCH ST<br>HAMILTON, HM 11 BERMUDA | | $1,902.50 | | 5 |
| East Atlantic Casualty Company, Ltd. | 11-39352 | Richard Repeta | c/o Vincent F. Alexander, Esq.<br>Kozyak Tropin & Throckmorton, P.A.<br>2525 Ponce de Leon, 9th Floor<br>Miami, FL 33134 | 158 | $0.00 | DE 684 | 5 |
| Maguire Group Architects, Engineers, Planners, Ltd | 11-39354 | Commonwealth of Massachusetts | Department of Revenue<br>P.O. Box 9564<br>Boston, MA 02114-9564 | 1 | $0.00 | | 5 |
| Maguire Group Architects, Engineers, Planners, Ltd | 11-39354 | FOSTER SURVEY COMPANY | 8 NORTH ROAD<br>FOSTER, RI 02825 | 108 | $0.00 | DE 544 | 5 |
| Maguire Group Architects, Engineers, Planners, Ltd | 11-39354 | HANNIGAN ENGINEERING INC | 8 MONUMENT SQUARE<br>LEOMINSTER, MA 01453-6060 | 24 | $2,260.00 | | 5 |
| Maguire Group Architects, Engineers, Planners, Ltd | 11-39354 | Richard Repeta | c/o Vincent F. Alexander, Esq.<br>Kozyak Tropin & Throckmorton, P.A.<br>2525 Ponce de Leon, 9th Floor<br>Miami, FL 33134 | 157 | $0.00 | DE 684 | 5 |
| | | | | | $3,508,229.70 | | |

Note: The claims listed on this Exhibit 4.5 are subject to further adjustment and objection by the Debtors

FileSite No. 4298675

Creditors with Allowed Claims
in Class 5 Will Share Pro Rata
from a Distribution totaling
$925,000 over four years, per
the terms of the amended plan

Exhibit 4.6

List of Subordinated Unsecured Claims

# NONE