

**ORDERED in the Southern District of Florida on April 1, 2014.**

Robert A. Mark, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MAGUIRE GROUP HOLDINGS, INC., | ) | Case No. 11-39347-BKC-RAM |
| *et al.*, | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO MODIFY PLAN DISCHARGE**
**INJUNCTION AND MOTION TO REOPEN CHAPTER 11 CASES**

The Debtors in these chapter 11 cases successfully reorganized under a plan confirmed in

July 2012.  HDR Architecture P.C. ("HDR"),  a creditor whose claim was discharged, now seeks

to reopen the cases to obtain an order modifying the discharge injunction.  HDR wants to pursue

a claim against the reorganized Debtors, but agrees to seek relief only against Chartis Specialty

Insurance Company ("Chartis"), the insurer under a policy insuring HDR's claim. HDR is not

seeking any relief against the reorganized Debtors directly.  However, because the reorganized

Debtors have an obligation to reimburse Chartis for monies Chartis will spend to defend HDR's

claims, allowing HDR relief from the discharge injunction will impair the reorganized Debtors' fresh start. Therefore, HDR's motions will be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    *The Pending Motions*

On May 15, 2013, HDR Architecture P.C. ("HDR") filed (i) [HDR's] Motion to Reopen Case for Actions Effecting the Discharge of the Debtor [DE #792] (the "Motion to Reopen") and (ii) the Motion to Amend the Plan Discharge Injunction to Allow [HDR] to Proceed with Litigation in the State of Connecticut Superior Court [DE #793] (the "Motion to Modify Plan Discharge Injunction").  The Motion to Reopen seeks entry of an Order reopening the chapter 11 cases of Maguire Group Holdings, Inc. and its affiliated debtors (the "Debtors") for the limited purpose of allowing HDR to prosecute the Motion to Modify Plan Discharge Injunction.  The Motion to Modify Discharge Plan Injunction seeks to modify the plan discharge injunction (i) to allow HDR to bring claims (collectively, the "HDR Indemnification Claim") against Debtor Maguire Group, Inc. ("Maguire") in *State of Connecticut v. Bacon Construction Company, Inc., et al.*, Case No. UWY-CV08-5014967-S (the "Bacon Action"), a Connecticut state court litigation, and (ii) to prosecute the HDR Indemnification Claim against Maguire through final judgment, without enforcing the final judgment against Maguire directly.  By pursuing the HDR Indemnification Claim, HDR seeks to access the proceeds of a professional liability insurance policy maintained by Maguire with Chartis.  The reorganized Debtors and Chartis oppose the relief sought by HDR in its motions.

### B.    *The Prepetition Claims and the Chartis Insurance Policy*

The Bacon Action began on February 14, 2013 when the State of Connecticut filed a signed writ, summons, and complaint against HDR and a number of other defendants to recover

2

damages resulting from alleged construction and design defects at the York Correctional Facility, a Connecticut public works project located in Niantic, Connecticut (the "York Project"). HDR and Maguire each provided architectural, design, and related services at the York Project, with Maguire acting as a sub-consultant of HDR.

The HDR Indemnification Claim arises under a March 1990 contract between Henningson, Durham & Richardson, Inc.[1], and Maguire (the "Agreement"). In the Agreement, Maguire agreed to indemnify HDR for negligent acts, errors, and omissions attributable to Maguire and to maintain a professional liability insurance policy to protect HDR from liability arising out of Maguire's performance of professional services at the York Project. The particular policy that HDR seeks to access is a "claims-made" architects and engineers professional liability and contractors pollution liability policy (the "Chartis Policy"). The Chartis Policy, which contains no retroactive date limitation, was in effect from January 1, 2008 to January 1, 2009. The liability limits under the Chartis Policy are $3 million for each claim and $3 million in the aggregate. The reorganized Debtors acknowledge that the Chartis Policy provides Maguire with liability coverage for the HDR Indemnification Claim.

Although the Bacon Action was not filed until 2013, the State of Connecticut initiated a prejudgment remedy proceeding (the "PJR Proceeding") in Connecticut state court against HDR, Maguire, and certain other defendants nearly five years earlier, on February 25, 2008. A copy of the Complaint is attached as Exhibit B to the reorganized Debtors' omnibus objection to the pending motions [DE# 802-2]. In the PJR Proceeding, the State of Connecticut asserted substantially the same claims as those now asserted in the Bacon Action. Therefore, as early as

---

[1] HDR is the successor in interest to Henningson, Durham & Richardson, Inc.

2008, HDR was on notice that it might be liable to the State of Connecticut and therefore on notice of a potential indemnification claim against Maguire.

### C.    The Chapter 11 Cases and Subsequent Events

On October 24, 2011, the Debtors filed chapter 11 petitions.  The Debtors' cases were jointly administered pursuant to an Order [DE #24] entered one day later.  On April 12, 2012, the Debtors filed their Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code [DE #300] (the "Plan") and a related disclosure statement [DE #299].  The confirmation hearing on the Plan, as later amended, was held on July 11, 2012 (the "Confirmation Hearing"). At the conclusion of the hearing, the Court ruled that the Plan would be confirmed and, on July 25, 2012, the Court entered its Order confirming the Plan (the "Confirmation Order") [DE #701]. The Confirmation Order and the Plan provide for the discharge of all prepetition claims against the Debtors and a broad injunction in favor of the reorganized Debtors.  On August 28, 2012, the Debtors filed a notice [DE #720] indicating that the effective date of the Plan had occurred one day earlier.  On May 6, 2013, the Court entered the Final Decree [DE #788] and ordered the closing of the Debtors' chapter 11 cases.

It is undisputed that all of the HDR entities received timely notices of all relevant pleadings in these chapter 11 cases.  Henningson, Durham and Richardson, Inc. (the predecessor in interest to HDR) and HDR Engineering, Inc., had allowed unsecured claims in Class 4 of the Plan and distributions were made on those claims under the Plan.  HDR did not file a proof of claim asserting the claims in the HDR Indemnification Claim at issue here and HDR agrees that unless the discharge injunction is modified, the HDR Indemnification Claim has been discharged.

## Chapter 11 Events Relating to the
## York Project and Insurance Issues

During the bankruptcy and prior to confirmation, the Debtors reached two key settlements – one with the State of Connecticut and one with Chartis – that paved the way for confirmation of the Plan.  On June 29, 2012, the Debtors filed a motion [DE #638] seeking approval of a settlement with the State of Connecticut to resolve Maguire's liability arising out of the alleged construction and design defects at the York Project (the "Connecticut Settlement Agreement").  The motion to approve the Connecticut Settlement Agreement was served on all creditors, including HDR, and approved in an Order entered on July 17, 2012 [DE #686] (the "Connecticut Settlement Order").  No party sought relief from the Connecticut Settlement Order, and the Order became final and non-appealable.  The Connecticut Settlement Order provided, among other things, that the State of Connecticut was precluded from recovering from the Debtors or the reorganized Debtors on any existing claim, specifically including those claims related to the York Project.

The second key settlement, between the Debtors and Chartis (the "Chartis Settlement Agreement"), was reached at the Confirmation Hearing.  Among other things, the Chartis Settlement Agreement resolved the Debtors' disputed liability on a $1,000,000 administrative expense claim asserted by Chartis [DE# 678].  Chartis' claim was based on the Debtor's self-insured retention obligations to Chartis under various insurance policies.  Chartis anticipated incurring attorney's fees in connection with potential claims that would trigger payment of the $250,000 self-insured retention on at least four separate claims.  At the time of the Confirmation Hearing, Chartis' $1,000,000 administrative expense claim and its opposition to the proposed Plan posed a significant roadblock to the Plan's confirmation.  Under the Chartis Settlement Agreement, Chartis was granted an administrative expense claim in an amount not to exceed

$150,000 for amounts that would have been payable by the Debtors, but for the Debtors' bankruptcies, under the terms of any insurance policy issued to the Debtors that had expired as of the petition date (a "Prior Policy"). The reorganized Debtors' obligation to pay amounts under the administrative expense claim provision arises only if Chartis incurs obligations attributable to a Prior Policy. Although called an administrative expense claim, the $150,000 obligation is better described as a contingent obligation of the reorganized Debtors.

At the Confirmation Hearing, Chartis' counsel stated that the Debtors had reported forty (40) claims that had "a potential for a claim" under one of the Prior Policies (the "Potential Insurance Claim Universe") Transcript of July 11, 2013 Confirmation Hearing [DE# 702]. Under the Chartis Settlement Agreement, Chartis was permitted to elect one claim from the Potential Insurance Claim Universe under a single Prior Policy to receive "assumed status." Upon Chartis' designation of the "assumed" claim, the Debtors were required to comply with all obligations related to the "assumed" claim under that Prior Policy, including all payment obligations. Upon being read into the record at the Confirmation Hearing, the Chartis Settlement Agreement was approved by the Court and was subsequently incorporated into the Court's Order Granting Expedited Amended Request and Application of [Chartis] for Payment of Administrative Expense Claim [DE #692] (the "Chartis Settlement Order"). Chartis elected to treat a claim  wholly unrelated to the HDR Indemnification Claim as the "assumed" claim (the "Maynard Claim").

As noted earlier, HDR received copies of the proposed Plan and disclosure statement and was given notice of the Confirmation Hearing. Counsel for HDR did not appear at the Confirmation Hearing, HDR did not object to the Chartis Settlement Agreement, HDR did not seek relief from the Chartis Settlement Order, HDR did not assert its indemnification rights

against Maguire in a proof of claim, and HDR did not otherwise attempt to assert or preserve its indemnification rights in any other manner whatsoever. Thus, the Confirmation Order, the Plan, and the Connecticut Settlement Agreement, resulted in a complete discharge of any claims against the reorganized Debtors related to the York Project, including a potential indemnification claim by HDR.

### Hearings and Filings on the Pending Motions

The Court conducted hearings on the Motion to Reopen and the Motion to Modify Discharge Plan Injunction on June 13, 2013, July 24, 2013, and September 24, 2013. In their responsive pleadings to the Motion to Reopen and the Motion to Modify Plan Injunction, and at the July 24th hearing, the reorganized Debtors and Chartis argued and proffered the following:

(i) Chartis has not incurred any expenses under Prior Policies that would permit Chartis to seek payment from the reorganized Debtors pursuant to the $150,000 administrative expense provision of the Chartis Settlement Order, and does not anticipate incurring such expenses, unless the Motion to Modify Plan Discharge Injunction is granted;

(ii) By contrast, if the Court grants relief from the plan discharge injunction and allows HDR to pursue the HDR Indemnification Claim in the state court case, Chartis expects to incur fees and cost in excess of $150,000 in defense of that claim, and the Debtors will then be required to pay Chartis $150,000 under the Chartis Settlement Order;

(iii) At the time of the Confirmation Hearing, the Debtors and Chartis did not believe, and had no reason to believe, that the HDR Indemnification Claim could be pursued against Maguire and derivatively against Chartis;

(iv) None of the claims in the Potential Insurance Claim Universe are currently being pursued by any of the claimants;

(v)     If HDR had asserted the HDR Indemnification Claim in the Debtors' bankruptcy cases, Chartis would have negotiated more favorable terms for the Chartis Settlement Agreement and would have elected to treat the HDR Indemnification Claim, rather than the Maynard Claim, as the "assumed" claim under the Chartis Settlement Agreement and Chartis Settlement Order; and

(vi)    Chartis has incurred no expenses and the Debtors have incurred only nominal expenses in connection with the Maynard Claim.

Following the July 24, 2013 hearing, the Court entered its July 30, 2013 Order (1) Requiring Supplementation of Record, (II) Setting Further Hearing, and (III) Allowing Further Briefing (the "Supplemental Scheduling Order") [DE #816].   Among other things, the Supplemental Scheduling Order required the reorganized Debtors and Chartis to submit evidence to support their representations.   In particular, the Supplemental Scheduling Order directed the Debtors to produce a chart showing the claims on the Potential Insurance Claim Universe and an affidavit supporting the Debtors' proffer that the Debtors did not anticipate incurring any expenses under the Prior Policies that would require them to pay Chartis any portion of the $150,000 contingent obligation under the Chartis Settlement Order.   The Supplemental Scheduling Order also set a further hearing on August 26, 2013, which, by subsequent Order, was rescheduled to September 24, 2013.

On August 27, 2013, the reorganized Debtors filed the affidavit of Dorothy Davison [DE #825] (the "Davison Affidavit") under seal.  In the Davison Affidavit, Ms. Davison stated that (i) the reorganized Debtors and Chartis have not incurred any expenses under Prior Policies that would permit Chartis to seek payment from the reorganized Debtors pursuant to the contingent administrative expense provision of the Chartis Settlement Order, (ii) the reorganized Debtors do

not anticipate the incurring of any such expenses in the future, (iii) if HDR's motions are granted, it is "highly probable" that Chartis would incur significant expenses, likely up to $150,000, thereby permitting Chartis to seek reimbursement from the reorganized Debtors pursuant to the contingent administrative expense provision of the Chartis Settlement Order, and (iv) at the time the Chartis Settlement Agreement was negotiated, the Debtors "had no information regarding the existence[] of the alleged HDR Indemnification Claim[.]"  Davison Affidavit at ¶¶ 15, 16, 19, 22.

On August 27, 2013, Chartis filed the declaration of Richard Barry [DE #826] (the "Barry Declaration").  The Barry Declaration confirmed that (i) Chartis has not incurred any expenses under Prior Policies that would permit Chartis to seek payment from the reorganized Debtors pursuant to the contingent administrative expense provision of the Chartis Admin Expense Order, (ii) at the time the Chartis Settlement Agreement was negotiated, Chartis "had no information regarding the HDR Indemnification Claim[,]" (iii) if HDR had asserted the HDR Indemnification Claim in the Debtors' bankruptcies, Chartis would have negotiated more favorable terms for the Chartis Settlement Agreement, and (iv) if HDR had asserted the HDR Indemnification Claim in the Debtors' bankruptcies and if more favorable terms could not have been negotiated, Chartis would have elected to treat the HDR Indemnification Claim, rather than the Maynard Claim, as the "assumed" claim under the Chartis Admin Expense Order.  Barry Declaration at ¶¶ 7, 10-12.

In response to the Supplemental Scheduling Order, HDR filed its Omnibus Supplemental Memorandum in Support of [the Motion to Reopen and Motion to Modify Discharge Injunction] (the "Supplemental Memorandum") [DE# 829].  In both its Supplemental Memorandum and at the September 24, 2013 hearing, HDR attempted to impeach the Davison Affidavit.  First, HDR

argued that the reorganized Debtors were incurring expenses in defense of a lawsuit in Connecticut, *Fox, et al. v. Town of Stratford, et al.*, Doc. No. UWY-CV-10-6020015-S (the "Stratford Action"). HDR also suggested that by paying attorney's fees directly, the reorganized Debtors were avoiding the reimbursement obligation under the Chartis Settlement Order in order to strengthen their defense of the pending motions.

The record reflects otherwise. The Fox claims asserted in the Stratford Action were previously asserted in a proof of claim filed in these bankruptcy cases. Fox's claim was disallowed, stricken, and discharged. The Court is satisfied that the reorganized Debtors are paying nominal legal fees to get the Stratford Action dismissed and that this limited defense will not trigger any reimbursement claims. The Court also finds that the reorganized Debtors are not trying to avoid draws by Chartis against the $150,000 by paying these nominal expenses directly.

HDR also argues that although certain claims described by Ms. Davison as having no potential to become active are old, they are not barred by any applicable statute of limitations. While that may be true, it does not impeach the reorganized Debtors' conclusion that it is not expecting to incur any reimbursement obligations based on old claims that have not been pursued and will likely not be pursued.

Following the September 24, 2013 hearing, the Court took the matters under advisement. After a thorough review of the record, consideration of the arguments presented at the hearings, and a review of applicable law, the Motion to Modify Plan Discharge Injunction and Motion to Reopen will be denied.

**DISCUSSION**

**A.    *Granting HDR's Motions Would Impair the Reorganized Debtors' Fresh Start***

Section 524(a)(2) provides that a discharge obtained in a chapter 11 case "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]" As the Eleventh Circuit has stated, "[a] bankruptcy discharge and the concomitant injunction against subsequent actions [provided by section 524(a)] are designed to give the debtor a financial 'fresh start.'" *Owaski v. Jet Fla. Sys., Inc. (In re Jet Fla. Sys., Inc.)*, 883 F.2d 970, 972 (11th Cir. 1989); *see also Walker v. Wilde (In re Walker)*, 927 F.2d 1138, 1142 (10th Cir. 1991) ("The intent of this post-discharge injunction is to protect debtors . . . in their financial 'fresh start' following discharge."). Although section 524(a)(2) prevents a creditor from prosecuting a prepetition action to recover a debt as a personal liability of the debtor, the statute does not preclude the determination of a debtor's liability for the purpose of aiding a creditor's recovery from a non-debtor party. *In re Jet Fla. Sys., Inc.*, 883 F.2d at 973.

Indeed, section 524(e) provides that the "discharge of a debt of the debtor does not affect the liability of any other entity on . . . such debt." Courts recognize that section 524(e) "permits a creditor to bring or continue an action directly against the debtor for the purpose of establishing the debtor's liability when . . . establishment of that liability is a prerequisite to recovery from another entity." *In re Walker*, 927 F.2d at 1142. Thus, pursuant to section 524(e), a creditor may seek to establish a debtor's nominal liability in order to collect on an insurance policy maintained by the debtor. *See In re Jet Fla. Sys., Inc.*, 883 F.2d at 973 ("[A] surety, who is secondarily liable to the obligee, is not shielded by the obligor's bankruptcy or section 524 injunction."); *In*

11

*re Hayden*, 477 B.R. 260, 263 (Bankr. N.D. Ga. 2012) ("[A] creditor may establish the debtor's nominal liability for a claim solely for the purpose of collecting the debt from a third party, such as an insurer or guarantor.").

The applicable case law imposes an important condition on a creditor's right to bring an action against a discharged debtor to facilitate its recovery from another entity.  The creditor's right to prosecute a discharged claim is limited to situations where prosecution of the post-discharge action does not interfere with the debtor's fresh start.  *In re Jet Fla. Sys., Inc.*, 883 F.2d at 973 (The applicability of section 524(e) to the post-discharge injunction provided by section 524(a) hinges "upon the condition that the debtor not be personally liable in a way that would interfere with the debtor's fresh start in economic life."); *In re Walker*, 927 F.2d at 1142 (same).  Moreover, courts have consistently held that "[a]ny economic loss" incurred by a debtor due to the post-discharge prosecution of a prepetition action would result in a violation of the section 524(a) injunction.  *Perez v. Cumberland Farms, Inc.*, 213 B.R. 622, 624 (D. Mass. 1997);  *see also Greiner v. Columbia Gas Transmission Corp. (In re Columbia Gas Transmission Corp.)*, 219 B.R. 716, 721 (Bankr. W.D. La. 1998) (denying relief from the discharge injunction because the reorganized  debtor would incur expenses); *In re Hayden*, 477 B.R. at 265 (granting relief from discharge injunction where court found that debtor would not be required to pay any defense cost); *Deippo v. Kmart Corp.*, 335 B.R. 290, 298 (S.D.N.Y. 2005) ("[T]he plaintiff can maintain the action against the debtor only if the debtor bears none of the expense of the defense."); *In re Catania*, 94 B.R. 250, 253 (Bankr. D. Mass. 1989) (A court will grant modification of a plan discharge injunction "only if the debtor bears *none* of the costs of the defense.") (emphasis added).

HDR argues that the reorganized Debtors' fresh start is not imperiled by the relief it seeks because, under the Chartis Settlement Agreement, the reorganized Debtors have already agreed to a $150,000 administrative expense.  The problem with HDR's argument goes back to the nature of the $150,000 administrative expense obligation.  As discussed earlier, the $150,000 administrative expense is not a fixed, non-contingent expense that the Debtors must pay under the Plan. The fact that  Chartis and the Debtors referred to this obligation as an "administrative expense" is a misnomer. Rather, the obligation to reimburse Chartis is a contingent obligation triggered only if Chartis incurs expenses in defending any claims under the Prior Policies.

In addition to being a contingent obligation, the Debtor agreed to the $150,000 potential reimbursement amount without any contemplation that reimbursable expenses could include the costs of defending any claims relating to the York Project, including the HDR Indemnification Claim, because the Connecticut Settlement Agreement, together with the Plan's discharge injunction, resolved with finality all liability arising out of the alleged construction and design defects at the York Project, including any potential liability of the Debtors to HDR.

The record establishes that the reorganized Debtors will incur costs if HDR is granted relief.  The Davison and Barry Affidavits confirm that neither the reorganized Debtors nor Chartis have incurred any expenses under the Prior Policies that would require the Debtors to pay Chartis any portion of the $150,000 contingent obligation.  Moreover, unless Chartis has to defend the discharged HDR Indemnification Claim, the reorganized Debtors do not expect Chartis to incur any defense expenses in the future that would require the Debtors to pay Chartis any portion of the $150,000.  In short, if HDR is permitted to pursue the HDR Indemnification Claim the reorganized Debtor will be harmed.  As Ms. Davison attests, if HDR's relief is

granted, it is "highly probable" that Chartis will incur significant expenses, triggering the requirement that the reorganized Debtors reimburse Chartis up to the full $150,000.

In the *Jet Florida* case cited earlier, the Eleventh Circuit considered the possibility that the reorganized debtor might incur costs to defend a defamation claim. The court was "virtually" certain that the insurer would defend the case at no cost to the reorganized debtor. Therefore, it concluded that "the possibility that the debtor will be responsible to pay any amount associated with defending this action is so remote that the fresh-start policy is simply not defeated." *In re Jet Fla. Sys., Inc.*, 883 F.2d 970, 976 (11th Cir. 1989).

The converse is true here. The likelihood that claims, other than the HDR Indemnification Claim, will result in a significant draw on the $150,000 reimbursement obligation is speculative and remote. In turn, if the HDR Indemnification Claim is allowed to proceed, the likelihood of a draw on most, if not all, of the $150,000 is virtually certain. Thus, the fresh start policy embodied in the discharge injunction is very much at play here and relief must be denied.

**Neither Discovery Nor
<u>An Evidentiary Hearing is Necessary or Appropriate</u>**

HDR challenges the conclusions contained in the Davison Affidavit and, in order to test those conclusions, seeks leave of Court to take discovery. In particular, HDR believes that, notwithstanding the HDR Indemnification Claim, Chartis can still incur expenses under Prior Policies that would trigger the Debtors reimbursement obligations under the Chartis Settlement Order.

The Court concludes that neither discovery nor an evidentiary hearing are necessary or appropriate to resolve the pending motions. The Court does not need to quantify the reorganized Debtors' potential reimbursement obligation to Chartis if HDR's motions are denied. There is a

more than adequate record to support the Court's conclusion that the reorganized Debtors' obligations to Chartis will be substantially greater if HDR obtains relief and Chartis defends the HDR Indemnification Claim.

The reorganized Debtors have already incurred significant legal fees responding to HDR's pending motions. The reorganized Debtors' fresh start has already been impaired. Requiring the reorganized Debtors to incur additional fees and costs in discovery will further impair their fresh start. The Court will not allow this result when the record evidence already establishes that the reorganized Debtors will have greater reimbursement obligations to Chartis if HDR's motions are granted.  Thus, HDR's request to conduct further discovery and a further evidentiary hearing is denied.

### B.    Granting HDR's Motions Would Unfairly Prejudice Chartis

This Court is aware of the case law that instructs that prejudice to a debtor's insurance company should not be considered in determining whether it is appropriate to modify a plan discharge injunction.  *See, e.g.*, *In re Jet Fla. Sys., Inc.*, 883 F.2d at 975 ("The reported cases . . . underscore that the purpose of section 524 of the Bankruptcy Code is to protect the debtor and not to shield third parties such as insurers who may be liable on behalf of the debtor.").  This follows the principle that an insurer should not evade its obligations under an insurance policy when the debtor has already paid the policy premium simply by relying on section 524's fresh start policy.  *See id.* at 975-76.  The Court agrees with this general proposition and agrees that in most cases in which a creditor seeks to pursue insurance coverage on a discharged claim, the impact on the insurer is of little or no relevance.  However, under these unusual facts, the Court finds it appropriate to consider the prejudice to Chartis.

In this case, Chartis entered into the Chartis Settlement Agreement based on its justified belief that the universe of claims it might have to defend did not include any claims arising out of the York Project, including the HDR Indemnification Claim, because all liability in connection with the alleged construction and design defects at the York Project was extinguished by the Connecticut Settlement Order and the Plan's discharge injunction. This is not a case in which Chartis is simply relying on section 524's fresh start policy to evade its obligations under an insurance policy. Allowing the HDR Indemnification Claim to proceed would materially change the risk and benefit analysis that was the foundation of the Chartis Settlement Agreement.

This change would prejudice Chartis in at least three ways. First, Chartis would be required to expend monies defending Maguire in the Bacon Action that it would not otherwise be required to expend, and these expenses could exceed the $150,000 it can recover from the reorganized Debtors. Second, Chartis would be bound by an agreement it negotiated with the Debtors in reliance on the fact that all liability in connection with the alleged construction and design defects at the York Project, including the nominal liability of Maguire, had been extinguished. Third, it is too late for Chartis to elect to treat the HDR Indemnification Claim as the "assumed" claim under the terms of the Chartis Settlement Order, despite the fact that it would incur significant costs in connection with the HDR Indemnification Claim and has incurred no expenses in connection with the "assumed" Maynard Claim. Barry Declaration at ¶¶ 9, 11-12; Davison Affidavit at ¶ 21.

The reorganized Debtors also argue that granting HDR's motions could negatively impact their relationship with Chartis. Chartis is the primary insurer of the reorganized Debtors and granting HDR's motions could provide grounds for Chartis to seek relief from the Chartis Settlement Order, or to reconsider its future business relationship with the reorganized Debtors.

Whether this will happen is uncertain. What is certain is that both the reorganized Debtors and Chartis will be harmed if the Court allows HDR to pursue claims it did not assert in the bankruptcy. This is particularly true, because the discharge of HDR's claims was relevant to the Chartis Settlement and the settlement played an important role in facilitating confirmation of the Debtors' plan. Thus, in addition to the Court's primary finding that granting the proposed relief would impair the reorganized Debtors' fresh start, the Court also finds further grounds to deny HDR's Motions, because granting HDR relief would be inequitable and unduly prejudicial to Chartis.

Therefore, it is -

**ORDERED** as follows:

1.     HDR's Motion to Modify Plan Discharge Injunction is denied.

2.     HDR's Motion to Reopen is denied as moot.

### ###

Copies Furnished To:

Christopher A. Jarvinen, Esq.
BERGER SINGERMAN LLP
1450 Brickell Avenue, Suite 1900
Miami, FL  33131
(Counsel for Reorganized Debtors)

Patrick Birney, Esq.
ROBINSON & COLE, LLP
280 Trumbull Street
Hartford, CT  06103-3597
(Counsel for HDR Architecture, P.C.)

John Eggum, Esq.
FORAN GLENNON PALENDECH PONZI
& RUDLOFF PC
222 N. LaSalle Street, Suite 1400
Chicago, IL  60601
(Counsel for Chartis)